HEATH A. HAVEY (SBN 244087)
801 K St., Ste.2300
Sacramento, CA 95814
E-mail: haveyh@jacksonlewis.com
Tel: 916-341-0404
Fax: 916-341-0141

Attorney for Plaintiff Rebecca Havey and
Minor Plaintiff Everett H.

HEATH A. HAVEY
9450 Courtney Way
Roseville, CA 95747
E-mail: haveyh@jacksonlewis.com
Tel: 916-749-4526
Fax: 916-341-0141

Plaintiff Pro Se and as Guardian ad Litem
for Minor Plaintiff Everett H.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| EVERETT H., a minor, by and through his Guardians Ad Litem REBECCA HAVEY and HEATH HAVEY; REBECCA HAVEY, an individual; and HEATH HAVEY, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> DRY CREEK JOINT ELEMENTARY SCHOOL DISTRICT; BOARD OF TRUSTEES OF DRY CREEK JOINT ELEMENTARY SCHOOL DISTRICT; MARK GEYER, individually and in his official capacity of Superintendent of Dry Creek Joint Elementary School District; EVONNE ROGERS, individually and in her official capacity as Assistant Superintendent of Educational Services; LYNN BARBARIA, individually and in her official capacity as Director of Special Education; ANDREW GIANNINI, individually and in his official capacity as Principal at Olive Grove Elementary School; CALIFORNIA DEPARTMENT OF EDUCATION; and TOM TORLAKSON, individually and in his official capacity as State Superintendent of Public Instruction for the State of California, <br><br> Defendants. | CASE NO.: <br><br> **COMPLAINT** <br><br> 1. Violations of IDEA, 20 U.S.C. § 1400 et seq. <br><br> 2. Violations of California Education Code <br><br> 3. Violations of 42 U.S.C. § 1983 <br><br> 4. Violations of Section 504 of the Rehabilitation Act of 1973 <br><br> 5. Violations of Title II of the ADA, 42 U.S.C. sections 12101 et seq <br><br> **Demand for Jury Trial** |

## JURISDICTION AND VENUE

1.      This is a civil action over which this Court has original jurisdiction under 28 U.S.C. section 1331 in that it arises under the Individuals with Disabilities Education Improvement Act of 2004 ("IDEA" or "IDEIA"), as amended 20 U.S.C. sections 1400 *et seq.* Jurisdiction is expressly vested in this Court pursuant to 20 U.S.C. section 1415(i)(2). This action also seeks redress under 42 U.S.C. section 1983 ("Section 1983") for the deprivation, under color of state law, of rights, privileges and immunities secured by federal statutes and the United States Constitution, including retaliation for the exercise of free speech rights under the First Amendment to the United States Constitution. This action also seeks to redress retaliation, discrimination and interference with rights based on disability and the right to advocate under Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. section 794 ("Section 504").   This action also seeks to address discrimination under Title II of the Americans With Disabilities Act ("ADA"), as amended 42 U.S.C. sections 12101 *et seq.*, and other laws of the United States.

2.      Accordingly, the jurisdiction of this Court also is invoked pursuant to 28 U.S.C. sections 1331, 1343(a)(3) and 1343(a)(4). This Court has supplemental pendent lite jurisdiction over all other claims under California law alleged in this action under 28 U.S.C. section 1367, because they form part of the same case or controversy as the aforementioned claims.

3.      As to the California Department of Education ("CDE"), this Court is the only appropriate forum for redress of the CDE's failure to monitor, investigate and enforce the laws designed to provide a "free and appropriate education" ("FAPE") to children with disabilities, including the alleged adoption of the CDE, as the State Educational Authority ("SEA"), of policies and practices that are in direct conflict with the mandates of the IDEA, Section 504, Title II of the ADA, and other laws designed to protect children with disabilities, including plaintiff Everett, and parents and others who advocate for children with disabilities.  As the SEA is the highest administrative body, while it has jurisdiction and authority to provide relief, it has an inherent conflict of interest, and as the complaint further contends, the CDE has failed to invoke its statutory enforcement tools available to it, even in the face of chronic, systemic noncompliance by those local education agencies under its supervision, as well as with regard to its own failure to comply with its obligations under the law.  There is accordingly no available avenue

for exhausting administrative remedies and this Court is the appropriate, and only, forum empowered to consider and grant the requested relief.

4.     Venue in this Court is proper under 20 U.S.C. section 1391(b) because some or all of the defendants reside in this judicial district and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

### DEMAND FOR JURY TRIAL

5.     Plaintiffs hereby demand a jury trial pursuant to Federal Rule of Civil Procedure 38(b).

### THE PARTIES

6.     Plaintiff EVERETT H. ("Everett") is a minor who was identified as an individual with disabilities within the meaning of that term under 20 U.S.C. section 1401(3), and is an individual with exceptional needs within the meaning of that term under California Education Code ("CEC") section 56026 and therefore is and has been entitled to general education and has received special education and related services while he was resident in the Dry Creek Joint Elementary School District, including but not limited to a free and appropriate public education.  During the relevant times mentioned herein, Everett attended Olive Grove Elementary School, a public elementary school in Dry Creek Joint Elementary School District. Everett is a person who has a physical or mental impairment that substantially limits one or more major life activities within the meaning of 34 C.F.R. section 104.3(j) and is an individual with a disability within the meaning of that term under 42 U.S.C. 12102(2). Therefore, Everett is entitled to be free of discrimination and retaliation based on a disability under Section 504 and the ADA, and is entitled to receive services, programs and activities from a public entity in the most integrated setting appropriate under Title II of the ADA.

7.     Plaintiff REBECCA HAVEY ("Mother") is the parent and Guardian ad Litem of Student, and at all times relevant herein, was, and continues to be, a resident of Placer County, California.

8.     Plaintiff HEATH HAVEY ("Father") is the parent and Guardian ad Litem of Student, and at all times relevant herein, was, and continues to be, a resident of Placer County, California.

9.     Mother and Father are referred to collectively herein as "Parents."

1   10.   Defendant DRY CREEK JOINT ELEMENTARY SCHOOL DISTRICT ("Dry Creek")

2   is a public school district duly organized and existing under the laws of the State of California and is

3   located within the borders of Placer County and Sacramento County.  At all times relevant herein, Dry

4   Creek was the local education agency ("LEA") responsible for providing school children within its

5   geographical borders full and equal access to the public education programs and activities it offers in

6   compliance with the requirements of state and federal law, and for providing students eligible for special

7   education, including Everett, with a "free, appropriate public education" ("FAPE") under the IDEA.

8   11.   Defendant BOARD OF TRUSTEES OF DRY CREEK JOINT ELEMENTARY

9   SCHOOL DISTRICT ("Dry Creek's Board") is, and at all relevant times was, the duly constituted and

10   acting governing board of Dry Creek.  Dry Creek's Board retains ultimate responsibility for the

11   education of students attending schools within Dry Creek's jurisdiction.

12   12.   Dry Creek and Dry Creek's Board are referred to collectively as "Dry Creek."

13   13.   Defendant MARK GEYER ("Superintendent Geyer") is, and at all relevant times herein

14   mentioned was, Superintendent of Dry Creek.  Superintendent Geyer was appointed by Dry Creek's

15   Board to implement policies created by Dry Creek's Board and/or mandated by federal and state laws.

16   Superintendent Geyer is responsible for ensuring that children in Dry Creek are provided equal access to

17   public education programs and activities offered in Dry Creek, that all students eligible for special

18   education and related services under the IDEA receive FAPE, for ensuring that the students and their

19   parents will be free from retaliation, and that parents will not be interfered with in their right to advocate

20   for their disabled children.  Superintendent Geyer is also responsible for supervising defendant Evonne

21   Rogers and defendant Lynn Barbaria.  Superintendent Geyer is also responsible for ensuring that Dry

22   Creek complies with all orders issued by the California Department of Education.  He is being sued

23   herein in his individual as well as in his official capacity.

24   14.   Based upon information and belief, Superintendent Geyer is a resident of Placer County,

25   California.

26   15.   Defendant EVONNE ROGERS ("Assistant Superintendent Rogers") is, and at all

27   relevant times herein mentioned was, Assistant Superintendent of Educational Services.  In that capacity

28   and as part of her duties, Assistant Superintendent Rogers has the power and obligation to provide all

students who are eligible for special education and related services under IDEA with a FAPE, for ensuring that the students and their parents will be free from retaliation, and that parents will not be interfered with in their right to advocate for their disabled children. She is also responsible for ensuring that Dry Creek complies with all orders issued by the California Department of Education.  Upon information and belief, Assistant Superintendent Rogers is also responsible for supervising defendant Lynn Barbaria.  She is being sued herein in her official and individual capacity.

16.    Based upon information and belief, Assistant Superintendent Rogers is a resident of Placer County, California.

17.    Defendant LYNN BARBARIA ("Director Barbaria") is, and at all relevant times herein mentioned was, the Director of Special Education Services at Dry Creek and she has acted, and continues to act, in that capacity.  As part of her duties, Director Barbaria has the power and obligation to provide all students who are eligible for special education and related services under IDEA with a FAPE, for ensuring that the students and their parents will be free from retaliation, and that parents will not be interfered with in their right to advocate for their disabled children.  She is also responsible for ensuring that Dry Creek complies with all orders issued by the California Department of Education as they pertain to disabled students in Dry Creek.  She is being sued herein in her official and individual capacity.

18.    Based upon information and belief, Director Barbaria is a resident of Placer County, California.

19.    Defendant ANDREW GIANNINI ("Principal Giannini") is, and at all relevant times herein mentioned was, the principal at Olive Grove Elementary School ("Olive Grove"), the school of attendance of plaintiff Everett.  In that capacity, he has acted, and continues to act, as principal over Olive Grove.  As part of his duties, Principal Giannini has the power and obligation to provide all students attending Olive Grove access to public education and those who are eligible for special education and related services under IDEA with a FAPE.  He is also responsible for ensuring that students who attend Olive Grove are free from harassment and bullying.  He is also responsible for supervising teachers and staff at Olive Grove to ensure they provide FAPE to disabled students, that the students and their parents are free from retaliation, and that parents will not be interfered with in their

right to advocate for their children.  He is also responsible for ensuring that Olive Grove complies with all orders issued by the California Department of Education as they pertain to students at Olive Grove. He is being sued herein in his official and individual capacity.

20.    Defendants Superintendent Geyer, Assistant Superintendent Rogers, Director Barbaria, and Principal Giannini are referred to collectively as "the Individual Defendants."  Dry Creek and the Individual Defendants are referred to collectively as "the Local Defendants."

21.    Defendant CALIFORNIA DEPARTMENT OF EDUCATION ("CDE") is the governmental entity created and mandated to oversee the operation of public schools in the State of California and is the "state educational authority" ("SEA").  It is the CDE's responsibility to ensure that all children in the State of California receive education services pursuant to state and federal laws, that all children with disabilities and exceptional needs in the State of California receive a FAPE as required by the IDEA and California law, and that public schools in the State of California comply with the provisions of the CEC.  The CDE has the power and obligation to ensure that all students in California and their parents will be free from retaliation and discrimination on the basis of disability pursuant to Section 504, and California law, and that parents will not be interfered with in their right to advocate for their disabled children attending schools in California, and that students in California are free from harassment and bullying.  Under Subpart F of the IDEA (34 C.F.R. 300.600 *et seq.*), the CDE as the SEA must monitor implementation of the IDEA, make determinations about the performance of the LEA, including Dry Creek, enforce the IDEA using appropriate enforcement mechanisms that must include, if applicable, technical assistance, conditions on funding of an LEA, a corrective action plan or improvement plan, and withholding of funds in whole or in part by the SEA, and the CDE must report annually on the performance of the state and each LEA.

22.    Defendant TOM TORLAKSON ("State Superintendent Torlakson") is California's State Superintendent of Public Instruction.  It is Defendant Torlakson's duty to oversee the operation of all public schools in the State of California, to execute policies implementing federal and state laws regarding the provision of education to all children with disabilities and exceptional needs in California, to monitor compliance of public schools with such laws, and to ensure that violation of such laws in public schools are promptly investigated and corrected.  Further, only the Superintendent of Public

Instruction is authorized to bring an action to enforce an order issued pursuant to California's Complaint Resolution Procedure ("CRP"). State Superintendent Torlakson is sued herein in his official and individual capacity.

23.     The CDE and State Superintendent Torlakson are referred to collectively as "the State Defendants."

24.     Plaintiffs are informed and believe and therefore allege that each of the defendants is responsible for the pattern and practice of events herein alleged, or is a necessary party for obtaining appropriate relief. In performing each of the acts alleged below, and in their failure to fulfill their legal responsibilities set forth below, each defendant acted jointly or individually as agents for each other and for all other defendants. The injuries inflicted upon plaintiffs, and each of them, occurred because of the actions and omissions of the defendants.

25.     A State is eligible for assistance under IDEA if it submits a plan providing assurances it has in effect policies and procedures to ensure certain conditions are met, including, *inter alia*: FAPE is available to all children with disabilities residing in the State, (20 U.S.C. 1412(a)(1)(A)); to the maximum extent appropriate, children with disabilities are educated with children who are not disabled, and removal from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily (20 U.S.C. 1412(a)(5)(A)); an IEP is developed, reviewed and revised for each child with a disability in accordance with Section 1414(d) (20 U.S.C. 1412(a)(4)); children with disabilities and their parents are afforded the procedural safeguards required by Section 1415 (20 U.S.C. 1412(a)(6)(A), including that a student's current educational placement is maintained during pendency of any proceedings (20 U.S.C. 1415(j)); children with disabilities are evaluated in accordance with Section 1414 (20 U.S.C. 1412(a)(7); and the State ensures the requirements of IDEA are met and that all educational programs for children with disabilities in the State, including such programs administered by any local agency are under State's general supervision and meet the educational standards of the State educational agency (20 USC 1412(a)(11)(i and ii). Based on information and belief, State Defendants have purported to submit a plan providing such assurances and assuming these obligations, and have accepted federal funds based on same. Under 20 U.S.C. section

1413 and 34 C.F.R. section 300.227, the CDE has the responsibility to provide direct services to a disabled child, including Everett, where the LEA is unable or unwilling to establish or maintain programs providing a FAPE that meet the requirements of the IDEA.

26.     An LEA, including Dry Creek, is eligible for assistance under the IDEA if it submits a plan that provides assurances to the SEA that it meets certain conditions, including that, in providing for the education of children with disabilities within its jurisdiction, it has in effect policies, procedures, and programs that are consistent with the SEA policies and procedures established under 20 U.S.C. section 1412.   Based on information and belief, Dry Creek has purported to submit a plan providing such assurances and assuming these obligations, and has accepted federal funds based on same.

27.     The IDEA creates a cause of action against the State Defendants under which a court may grant individuals such relief as it determines is appropriate for violations of the IDEA under 20 U.S.C. section 1415(i)(2)(C)(iii) and 20 U.S.C. section 1415(b)(6).

28.     This court has previously found that a private right of action exists against State Defendants in the presently pending case of *Morgan Hill Concerned Parents Assoc. v. Cal. Dep't of Educ.*, 2013 U.S. Dist. LEXIS 46325 (E.D. Cal. Mar. 29, 2013) (Hon. K. Mueller) ("Morgan Hill Case").

29.     Plaintiffs here are similarly situated to the plaintiffs in the Morgan Hill Case and allege similar questions of fact and the same questions of law against the same State Defendants.

30.     By accepting federal funds and the obligations in Paragraph 25 above, the State Defendants have waived sovereign immunity under 20 U.S.C. section 1403.

31.     To the extent the State Defendants claim they have not waived sovereign immunity or claim that the Ninth Circuit holds that sovereign immunity has not been waived under the IDEA or otherwise, this complaint seeks to bring the Ninth Circuit into congruence with the other circuits that have found that entitlement to federal financial assistance is conditioned on a state's surrender of immunity.

32.     Congress has abrogated the Eleventh Amendment immunity for the State Defendants as to claims of violations of Title II of the ADA, claims under the IDEA, and claims of violations of

Section 504 of the Rehabilitation Act of 1973, and state conduct that violates the Fourteenth Amendment to the Constitution, as well as allegations under 42 U.S.C. section 1983.

33.    The procedures provided by the State Defendants in furtherance of its obligations under Paragraph 25 do not satisfy the requirements of due process and fail to provide procedural safeguards with respect to the provision of a free and appropriate public education, and the State Defendants have promulgated and enforced policies that are in direct conflict with the provisions of the IDEA itself despite accepting federal financial assistance and the obligations of ensuring its policies conform to the IDEA.

34.    The policies and practices of the State Defendants in denying children with disabilities and their parents their rights under the IDEA and failing to enforce the rights of children with disabilities and their parents has led to a pattern and practice of unconstitutional discrimination by the State Defendants and unconstitutional enforcement of state law by the State Defendants, denying disabled children and their parents equal protection under the Fourteenth Amendment to the Constitution and a systematic deprivation of fundamental rights.

35.    Based on information and belief, State Defendants have violated the provisions alleged herein based on discriminatory animus and ill will on the basis of disability, including, but not limited to: engaging in a systematic policy and practice of denying the rights of children with disabilities and their parents, punishing parents for their advocacy for the rights of their disabled child and failing to monitor and enforce LEAs for their noncompliance in failing to ensure the rights of children, and failing to utilize its enforcement powers against noncompliant LEAs, such as withholding federal funds for systemic noncompliance that continues over the course of years, up to and including the date of filing of this complaint.   This policy and practice extends to the special education division of the Office of Administrative Hearings ("OAH") which is under State Defendants' direction and control, and to which State Defendants have delegated part of their administrative oversight, enforcement authority and obligations.

36.    CEC section 56100(b) requires the State Board of Education, the governing body of the State Defendants, to monitor LEA plans to ensure FAPE is provided to qualified individuals.   Claims against the State Defendants for violation of the California Education Code are premised on the State

1    Defendants' violations of its obligations under California Education Code section 56000, *et seq.*, and the

2    regulations promulgated under that section, 5 California Code of Regulations section 3000, *et seq.*

3         37.    Plaintiffs are unaware of the true names and capacities of defendants sued herein, as

4    DOES 1 through 25 inclusive, and therefore sues those defendants by such fictitious names.  Plaintiffs

5    will amend this complaint to allege their true names and capacities when ascertained.  Plaintiffs are

6    informed and believe, and thereon allege, that each of the fictitiously named defendants is responsible in

7    some manner for the occurrences and injuries herein alleged and were proximately caused by their acts

8    and omissions.

9                                    **ADMINISTRATIVE REMEDIES**

10        38.    Plaintiffs have timely and adequately exhausted their administrative remedies.

11        39.    To the extent any statute of limitations deadlines related to the causes of action in this

12   complaint have been exceeded, they are excused by the doctrines of equitable tolling, fraudulent

13   concealment, continuing violations, and the provisions of 20 U.S.C. sections 1415(f)(3)(D)(i) and (ii)

14   based on the specific misrepresentations from Dry Creek and the Individual Defendants that Everett was

15   mentally retarded and that they were following the last signed IEP, and their withholding from Parents

16   of required information.

17        40.    Any claims pendant, ancillary, supplemental or otherwise re-stated in amended form, to

18   the extent such claim is deemed not administratively exhausted, is thereby alleged to be excused from

19   administrative exhaustion under the doctrine of futility.

20        41.    On September 12, 2011, Dry Creek filed for due process against the Plaintiffs in the

21   Office of Administrative Hearings ("OAH"), Case Number 2011090491, regarding the provision of

22   FAPE and assessments to Everett.  That case was dismissed with prejudice on July 25, 2012.

23        42.    The OAH, under the direction of the State Defendants and pursuant to an interagency

24   agreement, conducts due process hearings and renders administrative decisions, and the State

25   Defendants are ultimately responsible for the OAH acts, omissions, and conduct in carrying out the

26   responsibilities delegated to it by the State Defendants.

27        43.    During the course of OAH Case Number 2011090491, Plaintiffs' fundamental, statutory,

28   and constitutional rights were violated by the OAH through actions including, but not limited to, an

unconstitutional "gag order;" ordering health care providers to disclose confidential medical information and upholding violations of 20 U.S.C. section 1415(h) and California Education Code section 56505; holding ex parte hearings between administrative law judges and counsel for Dry Creek despite Plaintiffs' objections and explicit requests to be present at all hearings to defend themselves against Dry Creek; making implicit threats through the presiding judge of sanctions against Parents for advocating for the rights of E.H., including if they filed any motions in support of their advocacy of Everett in defending against due process filed by Dry Creek; denying the right to a non-prejudicial venue for Plaintiffs to defend themselves; denying Plaintiffs the right to legal representation to defend themselves; improperly extending its own jurisdictional authority to claims over which it has no jurisdiction, including prospective claims related to FAPE and contrary to United States Supreme Court authority; denying disabled plaintiff Rebecca Havey accommodations for her disability despite her requests and a doctor's order; and violating provisions of the IDEA and California Education Code in favor of the Local Defendants to the prejudice of Plaintiffs.  These facts demonstrate the futility of proceeding on claims before the OAH.

44.     On September 28, 2011, Plaintiffs filed a discrimination complaint with the federal Office of Civil Rights ("OCR") regarding civil rights violations by the Local District against Plaintiffs, including but not limited to failure to follow the signed IEP, unilateral changes to the signed IEP made by the Local Defendants, failure to demonstrate that Everett's needs cannot be met in the regular education classroom, failure to consider requests and accommodations, child neglect, discrimination against Everett and parents, and destruction of educational records.

45.     In a phone conference in October 2011, the OCR informed Plaintiffs that, due to the ongoing OAH proceeding, all claims of parents, including the federal claims, should be submitted instead through the CRP process to the CDE (i.e., the State Defendants), which has near plenary authority to make decisions on all matters touching upon the education of Everett.

46.     Between January 6, 2012 to October 9, 2012, Plaintiffs filed complaints with the State Defendants utilizing the CRP process; some of the claims in these complaints were addressed by the State Defendants in CDE Case numbers S-0505-11/12, S-0547-11/12, S-0680-11/12, R-0912-11/12, S-0581-11/12, R-0823-11/12, R-1002-11/12, and S-0087-12/13.

47.     Contrary to its statutory obligations under state and federal law, the State Defendants refused to address a number of Plaintiffs' claims provided to the CDE between January 6, 2012 to August 10, 2012, including each and every federal claim alleged by Plaintiffs except for a claim under 34 CFR section 300.503(a).  Each request for reconsideration filed by Plaintiffs asking that the State Defendants address the claims that it had failed to address was denied by the State Defendants.

48.     Between April 12, 2012 and September 6, 2012, Plaintiffs attempted to exhaust administrative remedies against the State Defendants by filing CRP complaints with the CDE. However, the CDE refused to investigate claims made against the State Defendants.

49.     On September 10, 2012, Plaintiffs filed a complaint against the Local Defendants and State Defendants with the United States Department of Justice ("USDOJ"), which is responsible for ensuring that the State Defendants fulfill their statutory responsibilities related to their acceptance of federal funding, and for enforcing the laws against the Local Defendants when the State Defendants fail to do so.

50.     Although Plaintiffs do not believe it necessary based on the types of claims alleged, out of an abundance of caution, on September 11, 2012, Plaintiffs filed a Government Claims Form with respect to its claims against the Local Defendants and Individual Defendants to ensure Plaintiffs satisfy the California Tort Claims Act, California Government Code §§ 810 *et seq.*

51.     Although Plaintiffs do not believe it necessary based on the types of claims alleged, out of an abundance of caution, on September 13, 2012, Plaintiffs filed a Government Claims Form with respect to its claims against the State Defendants to ensure Plaintiffs satisfy the California Tort Claims Act, California Government Code §§ 810 *et seq.*

52.     In correspondence dated September 17, 2012, the State Defendants informed Plaintiffs that the CDE is not a "public agency;" the CDE also informed Plaintiffs that it will not produce documents to the Plaintiffs under the California Education Code because the CDE is not a "public agency."

53.     In the September 17, 2012 correspondence, the State Defendants informed Plaintiffs that it provides all documents related to a complaint and investigation under the California Public Records Act ("CPRA").  The State Defendants therefore convert confidential educational, private, and medical

records submitted on behalf of disabled minors and their parents in advocating for their rights into publicly accessible records, violating the constitutional and statutory rights of the Plaintiffs, including the right to privacy.  Among other violations contained herein, this policy renders further attempts to exhaust administrative remedies futile and would result in irreparable injury to Everett and Parents.

54.     On November 5, 2012, the USDOJ admitted it has authority to enforce the subject of the complaint but determined that the complaint should be referred to the OCR, with whom it shares enforcement authority over the ADA and Section 504 of the Rehabilitation Act of 1973.  Therefore, the complaint was referred back to the OCR, where Plaintiffs' initial complaints had been filed on September 28, 2011.

55.     On or about December 14, 2012, Plaintiffs received notice that the OCR declined to exercise its jurisdiction over the claims.

56.     Any further attempts to exhaust administrative remedies by Plaintiffs would be futile, and would result in irreparable injury and delay that could be prevented by immediate judicial relief.

57.     Plaintiffs are excused from initiating further administrative proceedings with respect to claims for which they seek only money damages, which are not available in an administrative proceeding.

58.     Plaintiffs are excused from initiating further administrative proceedings because Plaintiffs allege systemic violations of the administrative complaint process, the State Defendants have adopted policies and practices contrary to law, the severity of the State Defendants' violations threaten basic statutory goals, and the state policies are challenged in this action, and due process hearing officers are not authorized to adjudicate questions of statutory compliance.

59.     Plaintiffs further allege that the CRP process and OAH due process is itself broken, and further pursuing those processes would be futile.

60.     The State Defendants have also adopted systemic state policies contravening and in violation of the IDEA and CEC by denying FAPE to Everett, which is a violation severe enough to threaten the basic purpose of the IDEA and CEC.

///

///

## FACTUAL ALLEGATIONS

61.     The State Defendants and Dry Creek are recipients of federal funding, including but not limited to federal financial assistance related to the implementation and enforcement of federal laws such as the IDEA, the ADA, and Section 504.

62.     Everett was born on September 1, 2003, with delayed myelinization, and has been diagnosed with, e.g., Apraxia, PDD-NOS (autism spectrum), and resultant motor and neurological delays.  Everett was qualified for services under the IDEA under the primary category of Established Medical Disability with a secondary category of qualification under Speech and Language Impairment.

### Dry Creek Misrepresented That Everett Was Mentally Retarded

63.     Everett has never been mentally retarded under any professional standard of care.

64.     The LEA has known, or should have known, that Everett has never been mentally retarded under any professional standard of care or under California's education eligibility categories.

65.     The LEA willfully withheld from Parents the fact that Everett was not mentally retarded and instead represented to Parents that Everett was mentally retarded throughout all relevant times herein up until May 2011.

66.     After attending pre-school in San Diego as a qualified individual receiving an Individualized Family Service Plan ("IFSP"), Everett attended a year of preschool in defendant Dry Creek's district under an IFSP from 2007 to 2008 before entering kindergarten for the 2008 to 2009 school year.

67.     Between February 27, 2008 and May 13, 2008, Everett received Triennial assessments. In the Triennial IEP meeting on May 13, 2008, when Everett was transitioning into kindergarten, Parents asked for Everett to be fully integrated into the educational classroom to the maximum extent appropriate, asking for full "inclusion" for his IEP services, including specialized academic instruction ("SAI").

68.     In denying Parents' requests for inclusion during the May 13, 2008 IEP meeting, Dry Creek staff stated that, based on its Triennial assessments, Everett was mentally retarded and would never have a normal I.Q.

69.     In that meeting, Dry Creek staff represented that Everett could not benefit from a normal kindergarten classroom and that it would be cruel to place Everett in a general education classroom.

70.     Dry Creek told Parents that because Everett is mentally retarded, he must be placed in a separate facility for more severely handicapped children called a "Special Day Class" ("SDC"), and must receive an intra-district transfer away from his home school to Olive Grove Elementary, which has such a facility.

71.     Although Parents refused to sign an IEP that removed Everett from the general education classroom, Dry Creek unilaterally removed Everett from a general education placement and placed him in the SDC anyway, without parents signing an IEP authorizing or consenting to such a transfer.

72.     In IEP meetings held in May 2009 for Everett's annual IEP, defendant Barbaria changed Everett's classification in the IEP to "mental retardation."  She represented to Parents that Everett would never be normal or have a normal intelligence.

73.     A further IEP meeting was held on September 9, 2009, at which Dry Creek refused to include Everett in the classroom for his services, but instead required that his services be provided in the SDC environment.  Dry Creek said it would have Everett attend 30% of his school day in a kindergarten class (one grade below his official grade) and receive his SAI services in the SDC environment.

74.     Based upon Dry Creek's representation that Everett was mentally retarded and belonged in the SDC class, Parents signed an IEP on September 9, 2009 (the "09/09/09 IEP").

75.     The 09/09/09 IEP is the last signed IEP between Parents and Dry Creek.

76.     Based on Dry Creek's misrepresentations, that IEP states that Everett's classification is "mental retardation."

77.     In IEP meetings continuing throughout the 2010 to 2011 school year, including in a draft (but unsigned) IEP presented to Parents dated January 28, 2011, Dry Creek continued to represent that Everett was mentally retarded.

78.     After Triennial assessments for Everett's 2011 Triennial IEP meeting, Dry Creek disclosed on or about May 7, 2011, that Everett was not, in fact, mentally retarded.

79.     At the IEP meeting, Parents asked how Everett could no longer be mentally retarded since his I.Q. had not changed significantly over the years.  Dry Creek admitted that even under its own

Triennial assessments conducted in 2008, Everett's I.Q. was too high to be classified as "mental retardation" under the professional standards for determining mental retardation.

80.     In an independent educational assessment completed in February 2012, Dr. Ann Simun, a neuropsychologist, found that Everett was not, and never had been, mentally retarded under any objective standard of care, even under Dry Creek's own testing.  Dr. Simun further found that Everett's I.Q. was within the "normal" range, and that it was within the "normal" range in I.Q. testing done prior to Everett's transition into kindergarten.

81.     Dry Creek intentionally misclassified Everett as mentally retarded in order to mislead Parents and justify his removal from the general education classroom, Everett's least restrictive environment ("LRE"), in order to shoe-horn him into a program that met Dry Creek's service delivery needs, rather than Everett's unique needs.  In so doing, Dry Creek violated Everett's right to be in his LRE, his right to FAPE, as well as access to the general education curriculum and the benefits it provides.

### Dry Creek Failed to Comply With the 09/09/09 IEP and Improperly Retained Him

82.     In IEP meetings in May and June 2010, while Dry Creek continued to insist that Everett was mentally retarded and his eligibility classification remained "mental retardation," Dry Creek recommended moving Everett to the regular education classroom for his services through a process of grade retention (i.e., placing Everett in first grade instead of second grade).

83.     On June 10, 2010, Parents sent an e-mail to defendants Giannini and Barbaria stating: "we will not be signing an IEP that changes [Everett's] placement from the current school where he is adjusted (Olive Grove) and which is the least restrictive environment given the individualized needs of Everett with his disability, and based on his doctors' suggestions and our own knowledge of what Everett needs. … We are also not aware of any objective testing done with Everett to justify a change in his IEP or placement at this time."

84.     On June 23, 2010, Dry Creek, without concluding the IEP process, provided prior written notice to Parents of a new IEP Dry Creek wanted Parents to agree to.  That new IEP proposed changing Everett's school of attendance, unilaterally retaining him without following retention procedures, and reducing his SAI services; it stated that the District "strongly recommended that Everett be included in a

first grade classroom with pull-out academic support rather than in a more restrictive special day class placement." The description of proposed action states: "The District has proposed retaining Everett in first grade and providing academic instruction through the learning center at his home school." The proposed IEP listed a reduction in Everett's services, including a reduction in Everett's specialized academic instruction and his Designated Instructional Services ("DIS"). Parents never signed this IEP and it was never finalized.

85. Dry Creek used retention as an improper basis for reducing special education services for Everett.

86. On July 3, 2010, Parents sent a letter by certified mail and e-mail to defendants Rogers, Barbaria, and Giannini insisting that Dry Creek continue to follow Everett's last signed IEP of 09/09/09 and asserting his right to remain in his current educational placement under the most current IEP. That letter, written by plaintiff Rebecca Havey stated: "I stated verbally at the IEP meeting on June 11, 2010, that I disagree with the proposed changes to Everett's IEP. … Further, the district's offer of a FAPE proposes a reduction in services without ever discussing several key points at any of the four IEP team meetings. Further, the IEP mischaracterizes the events at the IEP meetings, and Lynn Barbaria was not present at any of the IEP meetings. This was clearly a district, administrative decision, not a team IEP decision. … [the] District's offer of a FAPE is incomplete to meet Everett's basic needs. As such, I invoke my 'stay put' rights for Everett and expect that his educational services from the last agreed upon IEP (September 9, 2009) will continue to be provided at Olive Grove Elementary…."

87. On August 10, 2010, the 2010-2011 school year began, and Parents learned that Dry Creek was refusing to provide Everett transportation despite transportation being provided in the 09/09/09 IEP.

88. On August 11, 2010, Parents sent an e-mail to defendant Giannini regarding the school unilaterally implementing only those portions of the IEP the school wanted to implement, which was resulting in problems like the denied transportation.

89. At the IEP meeting of September 1, 2010, Parents told the District that the 09/09/09 IEP was the current IEP and should be followed, and that given Everett's unique needs, a new IEP would

need to include provisions and services, including his SAI services, to "close the achievement gap" under 2004 IDEA and the CEC if the District wanted to place him in first grade instead of second grade.

90.     The District refused this request and did not provide the Haveys with any new IEP document to sign at the September 1, 2010 meeting, so no agreement could be reached to finalize a new IEP.

91.     The District failed to follow the current 09/09/09 IEP commencing August 10, 2010, and continuing until plaintiff Everett was removed by Parents from Dry Creek and placed in a charter school on March 2, 2012.

92.     In discussions at the September 1, 2010 IEP meeting, the District had misrepresented it was providing the services of the 09/09/09 IEP to Everett, including pull out time to deliver the SAI services.  Between September 2010 and January 2011, on multiple occasions, parents requested specifics as to what programs and services were being provided to Everett.  The District responded that it had no legal obligation to inform parents of the programs it uses or implements, or the types of services it provides, and refused to provide the Haveys with information about which programs and services from the 09/09/09 IEP it was implementing.

93.     In an IEP meeting held on or about January 28, 2011, plaintiff Heath Havey repeated the request for information regarding what services and programs Dry Creek was using for Everett's services.  Dry Creek disclosed that it was not providing SAI services to Everett under the 09/09/09 IEP.  Mr. Havey told Dry Creek that the 09/09/09 IEP was the last signed IEP and thus was the controlling IEP, which provided for the delivery of SAI services.

94.     Following these statements at the January 28, 2011 IEP meeting, Dry Creek still failed to follow the 09/09/09 IEP, and did not provide the SAI services to Everett specified in that IEP.

95.     Between August 10, 2010 and March 2, 2012, Dry Creek failed to comply with Everett's current IEP by failing to provide Everett's Specialized Academic Instruction (SAI) in the amount of 290 minutes per day, 5 times per week, as specified in the 09/09/09 IEP.

96.     Between August 10, 2010 and March 2, 2012, Dry Creek engaged in a de facto retention of Everett to a lower grade for all of his school day, contrary to the specifications of the 09/09/09 IEP and California statutory provisions regarding retention; this resulted in a denial of access to the

curriculum as well as a failure to provide the supplemental services designed to close the achievement gap and resulted in Dry Creek attempting to deprive Everett of his right to STAR testing under state law.

97.     Between August 10, 2010 and March 2, 2012, Dry Creek also did not comply with the 09/09/09 IEP in other ways, including but not limited to, failing to provide the trimester progress and notes, removing Everett's access to a slant board and touch math, removing his supervision during lunch, recess and unstructured times, failing to provide him with adapted assignments, use of manipulatives, and reduced assignments.

98.     On March 17, 2011, Mr. Havey sent an e-mail to defendant Giannini noting that the 09/09/09 IEP is controlling and that retention contravened the "currently effective IEP (signed 09/09/09) which establishes individual standards of promotion that Everett met."

99.     The March 17, 2011 e-mail was forwarded to defendants Rogers, Geyers, and Barbaria on March 18, 2011, along with further explanation.

100.    On March 31, 2011, Dry Creek's legal counsel sent a letter to Parents which asserted that the District was not providing SAI services because Parents would not provide the "written consent necessary."

101.    In two separate e-mails on April 1, 2011, Parents provided Dry Creek's counsel with evidence that Parents had provided written consent for SAI services through Everett's current IEP signed on 09/09/09.

102.    Despite this correspondence, Dry Creek still failed to follow the 09/09/09 IEP after April 1, 2011, and did not provide the SAI services to Everett specified in that IEP.

103.    Parents provided Dry Creek's counsel with another correspondence on May 22, 2011, stating:

> "Everett has a currently effective IEP signed on September 9, 2009. That IEP allows for specialized academic instruction through instructional pull out outside of the general education setting; it provides for "daily" "specialized academic instruction" in a separate classroom for 30 percent of the day (290 minutes x 5 times per week for a total of 1450 minutes). (See pp. 17 and 19 of IEP.) Although we had been discussing about how we can give Everett 100 percent inclusion, an IEP for 100 percent inclusion was never signed. The currently effective IEP also provides for speech therapy and occupational therapy pull out. Your letter suggests that the District is unable to provide services because we will not sign any part of the IEP to put the components in place for pull out and instruction. However, the District's proposed IEP (in addition to unilaterally changing agreements made during IEP meetings without discussion in an IEP

meeting) provided for fewer services.  I do not follow the logic of how fewer services would allow the service providers to provide more service.  The service providers have more tools and options available to them to help Everett under his September 9, 2009 IEP than in any IEP the District has since proposed."

104.   After May 22, 2011, Dry Creek still failed to follow the 09/09/09 IEP, and did not provide the SAI services to Everett specified in that IEP.

105.   On July 27, 2011, Parents sent correspondence to counsel for Dry Creek noting that the "currently operative IEP" is that of September 9, 2009, and that the IEP offered by Dry Creek in January 2011 reduced services from the "currently operative" IEP, and therefore could not be agreed to.

106.   After July 27, 2011, Dry Creek still failed to follow the 09/09/09 IEP, and did not provide the SAI services specified in that IEP when the new 2011-2012 school year began.

107.   Dry Creek initiated due process against the Plaintiffs on September 12, 2011.

108.   In briefing to the administrative law judge, Parents argued that the "District wrongly disregarded the IEP for the last 16 months," and Parents asked for an order "directing the District to inform the parents in writing within 3 business days indicating what portions of the IEP were being followed at the time of filing the complaint for due process.  This request is made because the District should not be allowed to keep parents ignorant of what portions of the current IEP the District is choosing to disregard, and to allow parents to fully determine whether Everett's stay put rights are being complied with in their efforts to advocate on Everett's behalf.  To date, District has refused to respond to parents' questions in writing."

109.   In briefing to the administrative law judge on September 21, 2011, Dry Creek argued that "the District respectfully requests OAH order Student's Stay Put placement is as described in his last consented to and implemented Individualized Education Plan ("IEP"), dated September 9, 2009."  That briefing conceded that "[s]ince spring of 2010, the District has been unable to reach an agreement with Parents regarding the appropriate placement for Student" and "the parties are unable to agree to an alternative stay put placement other than what is defined under Student's last agreed-upon IEP, dated September 9, 2009."  Dry Creek further argued that "the last agreed-upon and implemented IEP remains the September 9, 2009 IEP."

110.   On September 23, 2011, the administrative law judge ordered supplemental briefing delineating how the services of Dry Creek are different from the September 9, 2009 IEP.

111.   On September 28, 2011, Dry Creek filed its supplemental brief but did not provide the administrative law judge with how the current services differed from the 09/09/09 IEP; instead, Dry Creek argued that "stay put placement is the September 9, 2009 IEP." Dry Creek further argued that "[a]lthough the law allows a parent and district to agree to a stay put placement other than the last agreed-upon IEP, this is not the case here. The last agreement between Parents and the District is the September 9, 2009 IEP."

112.   As its exhibits to its briefing, Dry Creek provided meeting notes to support its argument that Parents did not want Dry Creek to pull out Everett for any of his SAI services. However, Dry Creek, through defendant Barbaria, had altered those meeting notes to misrepresent them to the administrative law judge to make it appear that Parents had not agreed to Everett being removed from the classroom for SAI services; the original meeting notes, which Parents had a copy of, demonstrated that Parents had, in fact, agreed that Dry Creek could remove Everett from the classroom for SAI services. Defendant Barbaria also represented falsely to the judge that she had personal knowledge of what had occurred in meetings which she did not attend. Facts and evidence regarding these events were presented to the State Defendants in the January 6, 2012 administrative complaint related to the misrepresentations of Dry Creek and perjury of the Dry Creek representatives to the administrative law judge.

113.   Despite this showing, Dry Creek never disclosed or admitted to the administrative law judge that it had altered the meeting notes to misrepresent the results of the September 1, 2010 meeting, nor did Dry Creek's counsel ever correct the facts presented to the administrative law judge, and thus sought to mislead a judge or court by artifice or false statement of fact to interfere with the administration of justice.

114.   On March 9, 2012, the CDE issued a Complaint Report with regard to one of Plaintiffs' compliance complaints. In its March 9, 2012 investigatory report in Case S-0505-11/12, at Allegation Four, the State Defendants found that the 09/09/09 IEP "is the student's operative IEP, as it is the most recent IEP to which the parent has consented."

115.    On April 3, 2012, the CDE issued a Complaint Report with regard to one of Plaintiffs' compliance complaints.  In its April 3, 2012 investigatory report in Case S-0581-11-12, at Allegation One, the State Defendants found that Dry Creek had failed to meet the requirements of the California Education Code Section 56043(i) by failing to provide "the consented SAI service, as specified in the June 9, 2009 IEP, for 290 minutes per day, 5 times per week."  The Report required corrective actions by Dry Creek of providing an offer of compensatory services reflecting the number of minutes per week that services were missed during the relevant time period.

116.    On May 30, 2012, Parents corresponded with the CDE asking if Dry Creek had filed a request for reconsideration and indicated their desire to be involved with any investigation to avoid Dry Creek submitting further altered records without Parents having the ability to respond.

117.    On May 30, 2012, State Defendants responded that they "have been informed that no reconsideration request has been filed, and it is now outside of the 35-day timeline."

118.    Based on information and belief, Dry Creek filed a request for reconsideration at some point in time but failed to provide Parents with a service copy of the request for reconsideration.

119.    The State Defendants also failed to provide Parents with a copy of the request for reconsideration or its evidence during the investigation.

120.    On June 15, 2012, the State Defendants granted Dry Creek's request for reconsideration regarding SAI services, finding a mutual agreement to change the services from the 09/09/09 IEP, despite the lack of evidence of such agreement, Parents' repeated demands that the 09/09/09 IEP be implemented and clear evidence of misrepresentations by Dry Creek.

121.    On July 5, 2012, Parents requested that the CDE reopen and reverse its grant of reconsideration and provided the CDE with facts and evidence demonstrating that Parents not only never agreed to a change in the IEP, but that Parents had in fact demanded that it be implemented and that Dry Creek had argued before the administrative law judge that the 09/09/09 IEP was the controlling IEP. Parents demonstrated how Dry Creek had altered educational records to create a false record.  Parents stated:  "How many times must parents demand in writing that a District follow an IEP before the CDE will enforce failure by a school district to follow the IEP?  What more could we have done to enforce our rights to have the District follow the signed IEP?"

122.    The State Defendants improperly treated this request as a request for reconsideration rather than evidence of misrepresentation of evidence by Dry Creek under the complaint investigation and denied Parents' request.

123.    In the July 5, 2012 correspondence to the CDE, Parents asked the CDE to produce educational records under the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. section 1232g and 34 CFR Part 99, that demonstrate: "(1) All documents relied upon in the CDE's investigation of the request for reconsideration that were generated by Parents stating that Parents revoke their consent to SAI services for Everett; and (2) All documents generated by the District constituting prior written notice to parents that the District is discontinuing SAI services or any other services under the last signed IEP."

124.    In their response to the July 5, 2012 request for documents, the State Defendants failed to produce a single responsive document, and instead only provided the administrative law judge order that was based on the meeting notes altered by Dry Creek and the false statements in a declaration by defendant Barbaria that were presented to mislead the judge and interfere with the administration of justice.

125.    Dry Creek failed to comply with Everett's last agreed upon IEP dated 09/09/09 by unilaterally changing and eliminating services in that IEP without parent consent by failing to provide such services.

126.    California Education Code section 56380.1 requires that any changes or alterations to an IEP must be made in writing and signed by the parents and the school district representative to be effective.

127.    Parents never gave written consent to any changes or alterations to Everett's last signed IEP of 09/09/09.

128.    Parents consistently requested that such services be provided according to the 09/09/09 IEP.

129.    The IDEA, in 34 CFR section 300.9(c)(3) and 300.300(b)(4), requires that revocation of consent for any special education or related services must be in writing to ensure that both the public agency and the parent have documentation that the child will no longer receive special education and

related services, and that upon revocation of consent the public agency must provide the parent with prior written notice in accordance with 34 CFR section 300.503.

130. Former State Superintendent of Public Instruction Jack O'Connell issued an official letter on January 6, 2009, confirming the requirements for effective revocation, and they are also listed in the Notice of Procedural Safeguards provided to Parents at each IEP meeting.

131. Parents never revoked consent for any special education or related services in writing related to the 09/09/09 IEP.

132. Dry Creek never provided Parents with a prior written notice adhering to the requirements of 34 CFR section 300.503 related to the discontinuation of special education services for Everett.

133. By failing to meet these procedural safeguards, Dry Creek failed to ensure the legal requirements and procedural safeguards were met before discontinuing special education services.

134. On September 6, 2012, Parents filed a complaint against the State Defendants for failing to enforce the provisions of the IDEA and its violation of FERPA that allowed the deprivation of approximately 117,450 minutes of SAI services, but the State Defendants failed to investigate the complaint against the State Defendants.

135. The September 6, 2012 complaint and correspondence to the State Defendants verified that the July 5, 2012 correspondence had requested from the State Defendants: "(1) All documents relied upon in the CDE's investigation of the request for reconsideration that were generated by Parents stating that Parents revoke their consent to SAI services for Everett; and (2) All documents generated by the District constituting prior written notice to parents that the District is discontinuing SAI services or any other services under the last signed IEP." That correspondence verified that the State Defendants did not provide either of the types of documents requested.

136. There are no documents generated by Parents or signed by Parents revoking their consent to the SAI services for Everett.

137. There are no documents generated by the District constituting prior written notice to Parents that Dry Creek was discontinuing SAI services or any other services under the 09/09/09 IEP.

138.    Dry Creek failed to offer or provide Everett with any compensatory education related to Dry Creek's failure to provide Everett with the services provided for in the 09/09/09 IEP, including SAI services.

139.    Dry Creek failed to offer or provide Everett with any compensatory education related to Dry Creek's misrepresentation to Parents that Everett was mentally retarded from 2008 to 2011, and its placement of Everett in the segregated SDC facility and a lower grade.

140.    Dry Creek failed to offer or provide Everett with any compensatory education related to its failure to offer programs of direct, systematic, and intensive supplemental instruction to Everett under California Education Code section 37252.2 during any period during or after it recommended retention for Everett.

141.    The Individual Defendants failed to take appropriate measures to provide Everett with the services provided in the 09/09/09 IEP, and to prevent discrimination and retaliation against Everett, and prevent interference with and retaliation against Parents in their advocacy of Everett's rights.

142.    The Individual Defendants failed to take appropriate measures to provide Everett with a FAPE during the time Dry Creek misrepresented to Parents that Everett was mentally retarded, and during the time Dry Creek was failing to provide the services provided in the 09/09/09 IEP.

143.    Superintendent Geyer has failed to adequately supervise and train defendants Barbaria, Giannini, and Rogers, and specifically has failed to ensure that they take appropriate measures to ensure Everett received the services provided in the 09/09/09 IEP, that Everett receive a FAPE without discrimination or retaliation while attending Olive Grove, and that Parents are not interfered with or retaliated against in their advocacy of Everett's rights.

144.    Defendant Rogers has failed to adequately supervise and train defendants Barbaria and Giannini, and specifically has failed to ensure that they take appropriate measures to ensure Everett received the services provided in the 09/09/09 IEP and that Everett receive a FAPE without discrimination or retaliation while attending Olive Grove, and that Parents are not interfered with or retaliated against in their advocacy of Everett's rights.

145.    The State Defendants have failed to adopt policies, procedures, and practices, or take appropriate measures necessary to ensure that Dry Creek complies with state and federal laws, including

1    but not limited to, Everett's denial of a FAPE and discrimination and retaliation against Everett and

2    Parents.

3         146.    The violations alleged are continuations of previous violations, which the State

4    Defendants have failed and refused to bring Dry Creek and the Individual Defendants into compliance

5    with state and federal laws related to discrimination, retaliation, interference with the right to advocate,

6    and denial of FAPE.

7                    **Dry Creek Is In Systemic and Willful Violation of the IDEA and CEC**

8         147.    Dry Creek was found to have been out of compliance with the California Education Code

9    and state and federal education laws in cases decided by the State Defendants in at least five instances

10   prior to the cases brought by Parents before the State Defendants against Dry Creek.

11        148.    Specifically, in Case Number S-0139-09/10, Dry Creek was found, through the actions of

12   defendant Barbaria, to have improperly attached parental signatures to an IEP that was not agreed to by

13   the parents in that case, and to have changed documents and numbers on documents.   The State

14   Defendants ordered Dry Creek to undergo training as its corrective order.

15        149.    Altering student educational and special education records is a policy and pattern of

16   practice for Dry Creek.

17        150.    The State Defendants' corrective order was insufficient to deter Dry Creek from

18   continuing with its systemic non-compliance.

19        151.    Based on information and belief, the State Defendants have a report finding that Dry

20   Creek's violations have been systemic, and the State Defendants have known that Dry Creek has been in

21   systemic non-compliance.

22        152.    Based on information and belief, the Department of Justice has a report that the school

23   districts in California are substantially in systemic non-compliance.

24        153.    As for Everett, Dry Creek was found by the State Defendants in Case S-0581-11/12 to

25   have failed to meet the requirements of 34 CFR section 300.503(a) by failing to include the required

26   elements in response to parental requests.

27

28

154.   Despite this finding, Dry Creek never brought itself into compliance per the State Defendants' order, as reported to the State Defendants on June 4, 2012.  The State Defendants failed to enforce their own finding in this case and failed to investigate non-compliance.

155.   Dry Creek has implemented an unlawful policy of refusing to respond in writing to parent requests for changes in placement and services under the requirements of, inter alia, 34 CFR Section 300.503(a) and the CEC.  Even where the District makes a token (yet insufficient) response, the District fails to respond to such requests within the reasonable time limit of the statutes and to provide the details required by California and federal law for prior written notice.

**Dry Creek's Discrimination, Retaliation and Interference With Rights**

156.   Dry Creek has endeavored to use the power it has over Everett's education as a means of retaliating against Everett and Parents for their criticisms of, and challenges to, Dry Creek, and Dry Creek's subsequent failure to provide the services to which Parents consented was retaliatory and made in an effort to stifle the advocacy efforts of Parents, and was made in an effort to shift the blame to Parents for Dry Creek's failure to develop an IEP and implement the agreed-upon IEP.

157.   Dry Creek and the Individual Defendants deprived Everett of meals, placing him outside of the cafeteria for not completing his meals on time, on at least one occasion denied him food for 17 hours, and then denied doing so, even though it was recorded in a phone message.  Dry Creek further refused to keep a food list of Everett's consumption and for allergy monitoring despite doctor requests after Everett's weight became very low.  Dry Creek staff sent Everett home with feces on him, causing sores and skin irritations; with his underwear hanging from his clothes, his zipper down, his buttons undone, and his clothes disheveled.  Dry Creek ignored parent reports of bullying, refused to remove Everett from a classroom with a known bully, and purposely placed Everett in a classroom with a known bully. Dry Creek also subjected Everett to repeated humiliation and physical danger, having him eat lunch near where students were playing with balls, with the result that he was hit by ball on more than one occasion.  Dry Creek also refused to send Everett to the school nurse or phone his Parents when he was sick and refused to allow plaintiff Rebecca Havey to videotape Everett on school grounds and did not allow her to act as a music docent at the school after she complained about legal violations and

failure to follow the IEP, while allowing other parents that right; and refused to test Everett on known areas of disability despite Parents' requests.

158.    Dry Creek and the Individual Defendants denied Parents the opportunity to be meaningful participants in the IEP process and engaged in calculated and strategic delays of the IEP process with conscious disregard for Everett's rights and needs, and the advocacy rights of Parents. These included, for example, failing to respond timely and adequately to Parents' requests for changes in services and placement for Everett, failing to consider the concerns of Parents for enhancing Everett's education and failing to allow parents to present information to the IEP team, including private assessments and the recommendations of the evaluating neuropsychologist and Everett's other doctors and private therapists. Dry Creek flatly rejected suggestions made by Parents at IEP meetings, refused to attach Parent documents to Everett's IEP, failed to provide prior written notice of an IEP prior to the beginning of the school year, interfered with the independent assessor's independent assessment of Everett and her observations of him at the school, placed restrictions on which staff Parents could speak to, refused to fill out teacher input forms for independent assessors to interfere with the independent assessment process.

159.    Dry Creek engaged in a policy and practice of delaying the provision of FAPE to Everett by extending IEP meetings out over the course of a school year rather than having the IEP meetings concluded within the 60 day timeline established by the CEC, and failed to have an IEP in place by the beginning of the school year.

160.    Dry Creek and the Individual Defendants also interfered with Parents' attempts to move Everett to San Juan Unified School District ("San Juan") by refusing to provide San Juan with documentation required to enroll him, even though it provides that documentation for other non-disabled children changing school districts, which resulted in Everett missing key deadlines to be moved out of Dry Creek to San Juan. Dry Creek then misrepresented to San Juan what Everett's last effective IEP is, presenting them with an unsigned version drafted by defendant Barbaria rather than the agreed-upon 09/09/09 IEP.

161.    Dry Creek and the Individual Defendants deliberately and willfully failed to follow the last signed IEP, retained Everett down a grade without following the District or State requirements and

contrary to his IEP and federal and state law, implemented a predetermined IEP in violation of state and federal law, and made unilateral changes to IEP documents and misrepresented IEP team decisions, goals and services in the draft documents to delay and mislead Parents.  Dry Creek then used its unlawful retention as a basis to threaten to deny Everett his rights to STAR testing.

162.    Dry Creek and the Individual Defendants failed to offer or provide supplemental instruction for Everett as required by the CEC and held parentless IEP meetings in violation of state and federal law, refused to timely and adequately provide Parents with special education documents.

163.    Dry Creek and the Individual Defendants destroyed and altered special education and other educational records.

164.    Dry Creek and the Individual Defendants deliberately and willfully engaged in a strategic and calculated effort of punishing Parents by filing a due process complaint in response to Parents' advocacy of Everett's rights and engaging in malicious prosecution which included misrepresenting facts and presenting falsified documents before the administrative law judge, abusing the subpoena power and improperly altering the OAH form subpoena documentation, practicing law without a license by improperly subpoenaing out of state witnesses, threatening to seek attorneys' fees and to take other frivolous actions against Parents if Parents defended themselves in due process proceedings brought by Dry Creek, misrepresenting facts and laws to Parents and the administrative law judge, threatening to disclose confidential settlement discussions if Parents continued to defend themselves in the due process proceedings brought by Dry Creek, actually disclosing confidential mediation discussions in the due process pleadings, manipulating and falsifying IEP meeting notes and other educational documents, demanding that Dry Creek's attorneys be present at mediation despite the prohibition of CEC 56500.3 under threat of filing legal action against the Haveys if they refuse, and failing to take required corrective action and follow orders of the OAH and the State Defendants.

165.    Administrative Law Judge Robert Helfand confirmed Dry Creek's bad faith.  In the due process proceedings, in an order dated May 4, 2012, the Honorable Helfand found that Dry Creek had exceeded its subpoena authority in subpoenaing private medical records of Everett and demanding their production prior to the hearing in contravention of Title 5 of the California Code of Regulations section 3082, and that Dry Creek's failure to show how the documents are "at all relevant" given the orders of

Judge Geren at the prehearing conference gives the appearance that "the District has requested such documents in less than good faith."

166.    The actions taken by Dry Creek and the Individual Defendants include but are not limited to willful violations of California Education Code sections 37252.2, 56043(i), 56341.1(a)(2), (f), (g)(2)(b)(iii), sections 56344(a) and (c), 56500.3, 56500.4, 56502(d)(2)(B), 56504; California Code of Regulations, Title 5, section 4621(a); 20 U.S.C. section 1415(b)(3) and (4) and (c)(1); 34 C.F.R section 300.323(c)(2), 34 C.F.R section 300.503, 34 C.F.R. section 300.562, 34 CFR Part 99, Subpart B; and FERPA and Section 504, and as more fully addressed in the complaints filed with the State Defendants by Parents.

167.    In an effort to willfully punish, retaliate, discriminate and interfere with Parents in their advocacy of Everett's rights, and to retaliate and discriminate against Everett based on his disability and to deny him his rights under state and federal law, Dry Creek and the Individual Defendants, themselves and through their attorneys, filed for due process against Parents for an improper purpose and engaged in frivolous filings and abuse of judicial procedures as tools for harassment, similar to the ethical violations of the firm Lozano Smith in Moser v. Bret Harte Union High Sch. Dist., 366 F.Supp.2d 944 (E.D. Cal. 2005), in which the entire law firm of Lozano Smith and the school district were sanctioned and publicly reproved for engaging in bad faith litigation tactics through systematic and repeated misstatements of the record, frivolous objections, and repeated mischaracterizations of the law, and all attorneys of Lozano Smith were ordered to receive ethics training.  Upon information and belief, counsel for Dry Creek is, at the time of filing of this action, an attorney at the sanctioned and publicly reproved firm of Lozano Smith.

168.    The acts above in Paragraphs 156 to 167, and other discriminatory and retaliatory actions, were taken against Everett even though his behaviors, including slow eating, were characteristics of his disabilities and occurred because of his disabilities, and these actions and omissions served no legitimate educational purpose.

169.    Dry Creek's purpose in engaging in the acts exemplified in Paragraphs 156 to 167 was to willfully punish, retaliate, discriminate and interfere with Parents in their advocacy on behalf of

Everett's rights, and to retaliate and discriminate against Everett based on his disability and to deny him his rights under state and federal law.

170.    As a means of interfering with the rights of Parents to advocate for Everett, and in an effort to willfully punish, retaliate, and discriminate against Parents in their advocacy of Everett's rights, and to retaliate and discriminate against Everett based on his disability and to deny him his rights under state and federal law in violation of Section 504, Dry Creek engaged in systematic, pervasive, and policy-driven actions that were willful in nature and exhibited a conscious disregard for the rights of Parents and Everett.

171.    By misrepresenting Everett's disability and removing him from the most integrated classroom, and by the acts and omissions described above, Dry Creek and the Individual Defendants treated Everett differently from his similarly situated peers, exceeding the scope of professionally acceptable choices and stemming from an improper personal motivation to punish Parents and Everett for Parents' advocacy of Everett.

172.    After her independent assessment, which included an on campus observation, Dr. Simun reported to Parents that Everett was being subjected to emotional distress from neglect by the school and failure to address very basic social issues.

173.    Based on the acts above and the recommendations of Dr. Simun, Parents removed Everett from Dry Creek to prevent him from being further subjected to repeated injury, danger, and continuing serious emotional harm.

**State Defendants' Continuing Systemic Non-Compliance**

174.    In *Porter v. Board of Trustees of Manhattan Beach Unified School District*, Case No. CV 00-8402 GAF (C.D. Cal.) (Hon. Gary Feess) (the "Porter Case"), Judge Feess granted summary judgment to a student against State Defendants and the school district.  In his order dated December 20, 2004, Judge Feess noted that State Defendants had erroneously found the school district to be in compliance and failed to act on new complaints, and that the State Defendants and school district had in some cases "blatantly" misrepresented evidence.

175.    Judge Feess found that the CDE "has the ultimate responsibility for ensuring that all children with disabilities within the State of California receive a FAPE," that "the CDE has the

obligation to monitor and enforce compliance with the IDEA, including provision of a FAPE by local educational agencies," that when the district is unable or unwilling "to establish and maintain programs in compliance with the IDEA, by law, the CDE is responsible for directly providing services to the disabled child," and that the State Defendants "may be held liable under the IDEA for its failure to thereafter ensure that the local educational agency complies with the IDEA."

176.   Judge Feess found State Defendants "allowed the District to create the impression of compliance without actually meeting [student's] educational needs as required under the IDEA," and that CDE improperly construed letters of noncompliance "as a request for reconsideration and did not open a new investigation."  Judge Feess further found that, "because of the CDE's inaction, the Court views it as equally culpable with the [school district] in denying [student] his state and federal rights to a FAPE," and that the actions the CDE did finally take were "too little too late," and that it therefore, "as a matter of law," "failed to perform its obligations under state and federal law thus contributing to the denial of [student's] right to a FAPE."

177.   Judge Feess also held that "when a child goes without special education services…there can be no one to blame but the entity in control of providing the services – the school district," and that the district "had both a right and obligation, as a matter of law, to get approval for the IEPs from the state agency to implement them, or implement at least those services to which the parents consented."

178.   Despite the holdings and admonishments of Judge Feess in the *Porter* case, the State Defendants have continued a systemic policy and practice of noncompliance with its IDEA and California Education Code obligations, which is an ongoing abdication of its responsibility.

179.   State Defendants are obligated to ensure children with disabilities and their parents are afforded the procedural safeguards set forth in 20 U.S.C. §1415 (20 U.S.C. §1412(a)(6)(A)) and as a recipient of federal funds are required to implement complaint resolution procedures ("CRP") for "[r]esolving any complaint" regarding the education of a child with a disability. (20 U.S.C.§1221e-3, 34 CFR §300.151(a)).

180.   State Defendants have adopted policies and practices in violation of 20 U.S.C. §§1411(e)(2)(B), 1415 and 1416, as well as the CEC, which require the State Defendants to investigate

1  and resolve complaints as part of its monitoring, supervision and enforcement of compliance with the

2  IDEA.

3      181.    State Defendants were informed of Parents' allegations regarding Dry Creek's

4  noncompliance through complaints Parents filed through California's CRP process, as well as through

5  numerous further communications between Parents and State Defendants which provided further

6  clarification and evidentiary support regarding such noncompliance.

7      182.    Despite being informed of and having knowledge of Dry Creek's noncompliance, State

8  Defendants, while in some instances opening complaints, failed to properly investigate and resolve these

9  complaints in accordance with their obligations under the IDEA.

10     183.    State Defendants ignored Parents' complaints regarding Dry Creek's noncompliance and

11 violations of federal law and in instances altered the subject matter of Parents' complaints to avoid

12 investigating the issues Parents complained of, including complaints presented regarding violations of

13 federal law (with the exception of a claim regarding violations related to prior written notice (34 CFR §

14 300.503(a)); State Defendants ignored the federal claims of discrimination and retaliation.

15     184.    State Defendants failed to properly investigate and enforce under the CRP, and

16 disregarded allegations and substantive violations that demonstrated District was, in fact, discriminating

17 and retaliating against Everett and Parents, by finding District in compliance simply because it was able

18 to produce a non-discrimination and non-retaliation policy, without regard to whether District was

19 actually complying with it, i.e., "paper compliance."

20     185.    State Defendants simply accepted assurances from Dry Creek that Parents' complaints

21 were baseless, and accepted Dry Creek's version of events in self-serving conclusory reports in order to

22 summarily reject Parents' complaints, even in the face of conflicting documentary evidence, including

23 but not limited to evidence that Dry Creek had altered educational documents and misled the

24 administrative law hearing officer, and a finding of the administrative law hearing officer that Dry Creek

25 was acting in less than good faith.

26     186.    Where State Defendants did make findings of and document noncompliance by Dry

27 Creek, State Defendants failed to require appropriate corrective actions or remedies in resolving the

28 complaints, to address the needs of the student (Everett), to ensure appropriate future provision of

services to students with disabilities, and to ensure future compliance as required by the IDEA. (34 CFR 300.151(b).)

187.   State Defendants not only failed to monitor, enforce or otherwise require compliance by Dry Creek, it overlooked documented violations, excluded Parents from the investigatory process, misled Parents about whether Dry Creek had filed a timely request for reconsideration, and in some cases provided Dry Creek with additional time in which to respond to violations that went beyond what the statute provides.

188.   Had State Defendants conducted a thorough and legally compliant investigation, including addressing Parents' complaints that Dry Creek was a systemic and repeat violator of both state and federal laws, State Defendants would have discovered and could have remedied Dry Creek's systemic and continuing violations of the IDEA and CEC.

189.   Even where the State Defendants found non-compliance, its enforcement model was inadequate as it failed to take steps that would bring Dry Creek into compliance, and through its own inaction and ineffective enforcement model, encouraged, condoned and emboldened Dry Creek's continued systematic non-compliance.

190.   Even though the State Defendants previously found Dry Creek to be in systemic non-compliance, they failed to include this as an aggravating factor when presented with Plaintiffs CRP complaints, even though Plaintiffs provided correspondence to the State Defendants reminding them of the systemic non-compliance and asking for it to be included as an aggravating factor in the investigation.

191.   State Defendants' failure to investigate and correct Dry Creek's systemic non-compliance pursuant to Parents' complaints as required by the IDEA and its failure to itself provide services where the LEA fails or refuses to do so, in compliance with federal and state law, demonstrates State Defendants' own non-compliance with its statutory obligation to supervise, monitor and enforce compliance by local education agencies.

192.   The State Defendants have also demonstrated an unwillingness to consider or correct systemic non-compliance of school districts, and fail to put in place effective deterrent and corrective measures to ensure compliance with the IDEA and CEC.

193.   As such, the State Defendants' inactions are also systemic and otherwise known and calculated to deny and frustrate IDEA and CEC rights to Everett, his Parents, and similarly situated students, even after the summary judgment order from Judge Feess in the Porter Case that found such a failing by the State Defendants.

194.   State Defendants' failure to maintain an effective CRP procedure not only violates the SEA's obligation to ensure students and their families receive procedural safeguards and its assurances provided as a condition of its receipt of federal funds, but State Defendants have adopted policies and practices designed to overlook LEA violations and noncompliance with the IDEA and CEC, and to misconstrue and misstate parent complaints in order to avoid monitoring LEA's in accordance with state and federal law, including 20 U.S.C. sections 1416(a)(1)(C) and 1416(a)(2), at the same time State Defendants annually provide reports and  assurances to the federal government, as a condition of its receipt of federal funds, that all such noncompliance does not continue beyond one year. Where the SEA determines an LEA is persistently out of compliance, federal funds are at risk. State Defendants control findings of noncompliance in order to give the appearance that such noncompliance does not continue past one year, as required by federal oversight, in order to ensure continued funding and to avoid jeopardizing federal funding at the same time both the LEA and SEA fail to comply with the responsibilities and obligations both have accepted as a condition of their continued receipt of federal funding.

195.   Based on information and belief, State Defendants have adopted policies and practices whereby investigators in its Focused Monitoring Department must obtain approval from CDE attorneys, outside the neutral Focused Monitoring Department, before finalizing any findings of non-compliance of a school district. This practice represents a conflict of interest and a violation of compliance because State Defendants control the federal funding the SEA and LEAs receive, based on their assurances of compliance with their obligations under the law, and thus have a vested interest in representing LEAs as in compliance, even when they are not, at the same time it is failing to undertake its statutory obligations to ensure such compliance by the LEAs State Defendants are purportedly supervising, monitoring and enforcing against.

196.    Dry Creek's continuing and persistent violation of state and federal special education laws, despite State Defendants' findings of non-compliance, demonstrates the ineffectiveness of State Defendants "supervising", "monitoring" and "enforcement" and thus demonstrate State Defendants have failed in their statutory obligations.

197.    The CDE has also failed in its obligation to enforce the provisions of the IDEA and CEC because it has failed to avail itself of any of the statutory enforcement tools available to it, even in the face of chronic, systemic non-compliance by Dry Creek and as a result, its noncompliance persists, not only with regard to Everett, but other students in the Dry Creek district.  State Defendants have provided no meaningful enforcement or scheme of effective monitoring, investigation or enforcement to ensure that such noncompliance does not persist.

**FIRST CLAIM FOR RELIEF**

**FAILURE TO PROVIDE A FREE AND APPROPRIATE PUBLIC EDUCATION**

**(Against Dry Creek and Individual Defendants (in their official capacities) for Violations of the Individuals with Disabilities Education Improvement Act, 20 U.S.C. § 1400 et seq. and the California Education Code sections 56000 et seq.)**

198.    Plaintiffs reallege and incorporate by reference as though fully set forth herein, paragraphs 1 through 197, of this Complaint.

199.    By the acts and omissions alleged herein, Dry Creek and the Individual Defendants (in their official capacity), and each of them, have denied Everett a free appropriate public education in the least restrictive environment under state and federal law, including 20 U.S.C. sections 1400 et seq., and its implementing regulations at 34 C.F.R. Part 300, and the California Education Code sections 56000 *et seq.* by failing to provide the services provided in the last agreed upon IEP (i.e., the 09/09/09 IEP), including but not limited to SAI services in the amount of 290 minutes per day, 5 times per week; and by specifically misrepresenting Everett as mentally retarded and basing his IEP on this misrepresentation, including but not limited to placing him in a lower grade without following any of the procedures to retain a student and using retention as an improper basis for reducing special education services, and contrary to his IEP.

///

**SECOND CLAIM FOR RELIEF**

**FAILURE TO PROVIDE A FREE AND APPROPRIATE PUBLIC EDUCATION**

**(Against State Defendants for Violations of the Individuals with Disabilities Education**

**Improvement Act, 20 U.S.C. § 1400 et seq.)**

200.   Plaintiffs reallege and incorporate by reference as though fully set forth herein, paragraphs 1 through 199, of this Complaint.

201.   By the acts and omissions alleged herein, the State Defendants have violated Plaintiff Everett's rights under the Individual with Disabilities Education Improvement Act, 20 U.S.C. sections 1400 *et seq*., and its implementing regulations at 34 C.F.R. Part 300, and the California Education Code sections 5600 et seq. to receive a free appropriate public education in the least restrictive environment.

202.   The State Defendants failed to ensure the provision of, or directly provide, FAPE to Everett; failed to appropriately and effectively monitor Dry Creek's compliance with special education mandates and ensure timely correction of noncompliance once identified; failed to appropriately, timely, and effectively investigate the complaints made by Parents regarding the provision of FAPE to Everett; and failed to appropriate and effectively enforce the educational mandates of the IDEA to ensure Everett was receiving a FAPE.

**THIRD CLAIM FOR RELIEF**

**FAILURE TO OFFER SUPPLEMENTAL INSTRUCTION**

**(Against Dry Creek, State Defendants, and the Individual Defendants (in their Official Capacities**

**for Violation of California Education Code section 37252.2)**

203.   Plaintiffs reallege and incorporate by reference as though fully set forth herein, paragraphs 1 through 202, of this Complaint.

204.   Under CEC section 37252.2, Dry Creek had a duty to offer programs of direct, systematic, and intensive supplemental instruction outside of normal school hours to pupils in grades 2 to 9, including Everett, who have been recommended for retention or have been retained.

205.   In violation of this duty, Dry Creek failed to offer any programs of direct, systematic and intensive supplemental instruction to Everett outside of normal school hours despite recommending retention and engaging in a de facto retention of Everett from August 2010 through March 2012.

206.    Dry Creek also failed to seek the active involvement of Parents and Everett's teachers in the development and implementation of a supplemental instruction program for Everett, in violation of its duty under CEC section 37252.2(f).

207.    By the acts and omissions alleged herein, and by its failure to adequately monitor, investigate and enforce CEC section 37252.2(f), or to offer or provide supplemental services themselves, the State Defendants have violated Everett's rights under CEC section 37252.2(f), and the State Defendants may not waive Everett's rights, as provided in CEC section 37252.2(h).

**FOURTH CLAIM FOR RELIEF**

**(Against Dry Creek and Individual Defendants (in their official capacity) for Discrimination in Violation of Section 504)**

208.    Plaintiffs reallege and incorporate by reference as though fully set forth herein, paragraphs 1 through 207, of this Complaint.

209.    By the acts and omissions alleged herein, Dry Creek and the Individual Defendants (in their official capacity), and each of them, have acted in bad faith, with gross misjudgment and deliberate indifference and have intentionally discriminated against Everett based on his disability by denying him the benefits of school, of FAPE, and subjecting him to discrimination at school in violation of Section 504.

**FIFTH CLAIM FOR RELIEF**

**(Against Dry Creek and the Individual Defendants (in their official capacity) for Retaliation in Violation of Section 504)**

210.    Plaintiffs reallege and incorporate by reference as though fully set forth herein, paragraphs 1 through 209, of this Complaint.

211.    By the acts and omissions alleged herein, Dry Creek and the Individual Defendants (in their official capacity), and each of them, have acted in bad faith, with gross misjudgment and deliberate indifference and have intentionally retaliated against Everett based on his disability by denying him the benefits of school, of FAPE, and subjecting him to discrimination at school in violation of Section 504.

212.    By the acts and omissions alleged herein, Dry Creek and the Individual Defendants (in their official capacity), and each of them, have acted in bad faith, with gross misjudgment and deliberate

indifference and have intentionally retaliated against Parents based on their exercise of their rights to advocate for Everett in violation of Section 504.

## SIXTH CLAIM FOR RELIEF

**(Against Dry Creek and the Individual Defendants (in their official capacity) for Interference with Advocacy Rights in Violation of Section 504)**

213.    Plaintiffs reallege and incorporate by reference as though fully set forth herein, paragraphs 1 through 212, of this Complaint.

214.    By the acts and omissions alleged herein, Dry Creek and the Individual Defendants (in their official capacity), and each of them, have acted in bad faith, with gross misjudgment and deliberate indifference and have intentionally interfered with Parents in their advocacy rights in violation of Section 504.

## SEVENTH CLAIM FOR RELIEF

**(Against State Defendants for Violation of Section 504)**

215.    Plaintiffs reallege and incorporate by reference as though fully set forth herein, paragraphs 1 through 214, of this Complaint.

216.    By the acts and omissions alleged herein, the State Defendants, and each of them, have acted in bad faith, with gross misjudgment and deliberate indifference and have intentionally discriminated against Everett based on his disability by denying him the benefits of school, of FAPE, and subjecting him to discrimination at school in violation of Section 504 by refusing and failing to adopt policies, procedures, and practices, or take appropriate measures necessary to ensure that Dry Creek complies with state and federal laws.

## EIGHTH CLAIM FOR RELIEF

**(Against State Defendants for Violation of Section 504)**

217.    Plaintiffs reallege and incorporate by reference as though fully set forth herein, paragraphs 1 through 216, of this Complaint.

218.    By the acts and omissions alleged herein, the State Defendants, and each of them, have acted in bad faith, with gross misjudgment and deliberate indifference and have intentionally discriminated against Parents based on their right to advocate for Everett in violation of Section 504, and

have failed to monitor, investigate, or enforce the interference with those rights by Dry Creek, by refusing and failing to adopt policies, procedures, and practices, or take appropriate measures necessary to ensure that Dry Creek complies with state and federal laws preventing interference with advocacy rights, discrimination, and retaliation against Parents in exercising those rights.

### NINTH CLAIM FOR RELIEF

**(Against State Defendants for Failure to Monitor, Investigate and Enforce the IDEA)**

219.   Plaintiffs reallege and incorporate by reference as though fully set forth herein, paragraphs 1 through 218, of this Complaint.

220.   In carrying out their responsibilities under the IDEA, State Defendants are required to "monitor implementation of," investigate and enforce the IDEA.  20 U.S.C. § 1411(e)(2)(B); 20 U.S.C. § 1416; 34 C.F.R. § 300.601.

221.   By the acts and omissions alleged herein, State Defendants have violated Everett's rights under the IDEA, 20 U.S.C. sections 1400 *et seq.*, and its implementing regulations at 34 C.F.R. Part 300. State Defendants failed to appropriately and effectively monitor Dry Creek's compliance with special education mandates and ensure timely correction of noncompliance once identified, failed to appropriately and effectively investigate Parents' complaints, and failed to appropriately and effectively enforce the educational mandates of the IDEA and California Education Code.

### TENTH CLAIM FOR RELIEF

**(Against State Defendants for Violations of California Education Code §§56000, *et seq.*)**

222.   Plaintiffs reallege and incorporate by reference as though fully set forth herein, paragraphs 1 through 221, of this Complaint.

223.   By the acts and omissions alleged herein, State Defendants have violated Everett's rights to FAPE in the least restrictive environment, and to be free from discrimination and retaliation guaranteed under CEC section 56000, *et seq.*, and the regulations promulgated thereunder, 5 CCR §3000, *et seq.*

///

///

///

**ELEVENTH CLAIM FOR RELIEF**

**(Against All Defendants for Violations of Title II of the Americans With Disabilities Act)**

224.   Plaintiffs reallege and incorporate by reference as though fully set forth herein, paragraphs 1 through 223, of this Complaint.

225.   Section 12132 of the Americans With Disabilities Act of 1990 states that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

226.   The integration mandate of the Olmstead decision, contained in 28 CFR Section 35.130(d) requires that a public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities.

227.   Everett has a disability, and was perceived by Defendants at all times relevant herein as having a disability, as that term is defined in the Americans With Disabilities Act.  42 U.S.C. § 12102(2).

228.   Everett, through his Parents, requested that Everett be placed and receive his services, to the maximum extent appropriate, in the most integrated environment.

229.   Everett was removed from the most integrated environment and placed in the SDC facility based on misrepresentations of Dry Creek and the Individual Defendants that Everett was mentally retarded.

230.   Dry Creek and the Individual Defendants failed to integrate special education supports and instead removed Everett from the most integrated environment.

231.   By the acts and omissions alleged herein, contrary to the requests of Parents to avoid discrimination and to allow Everett to enjoy the full benefits of the services, programs and activities at school with accommodations, where necessary, the Local Defendants excluded Everett from participation in and was denied the benefits of the services, programs, and activities of a public entity, namely the Local Defendants, and was subjected to discrimination by the Local Defendants, in contravention of Title II of the ADA.  Everett was excluded from the regular program and required to accept special services or benefits, contrary to his rights under Title II of the ADA.

232.     These misrepresentations were made deliberately and with reckless disregard for the purposes of discriminating against a disabled child, Everett.

233.     The Local Defendants deliberately and with reckless disregard for Everett's rights to be free from discrimination ignored Parents' requests for accommodations and integration of Everett.

234.     The Local Defendants retaliated against Parents and Everett after they opposed the unlawful acts and practices of the Local Defendants under Title II of the ADA, in violation of 42 U.S.C. section 12203(a), and interfered, threatened, and intimidated Parents in their exercise of their rights to advocate for Everett and oppose the Local Defendants' unlawful policies violative of Title II of the ADA, in violation of 42 U.S.C. section 12203(b).

235.     The State Defendants failed to meet their obligation to monitor, investigate, and enforce Title II of the ADA to ensure that disabled children, including Everett, are not removed from the most integrated environment appropriate.

236.     The State Defendants' failure to meet their obligations were made deliberately and with reckless disregard for Everett's right to be protected against discrimination and retaliation.

237.     By the acts and omissions above, the Defendants intentionally violated Everett's ADA rights, and the rights of Parents to be free from retaliation.

238.     By the acts and omissions above, the Local Defendants have violated Title II of the Americans With Disabilities Act (42 U.S.C. sections 12101 *et seq.*) by discriminating against Everett because of his disability and engaging in retaliatory harassment discrimination of Everett, and failed to make reasonable accommodations in their policies and practices to account for Everett's disability.

239.     By the acts and omissions alleged herein, the State Defendants have violated Title II of the Americans With Disabilities Act (42 U.S.C. sections 12101 *et seq.*) by refusing and failing to adopt policies, procedures, and practices, or take appropriate measures necessary to ensure that the Local Defendants comply with 42 U.S.C. section 12101 *et seq.*

## TWELFTH CLAIM FOR RELIEF

### (Against Individual Defendants and Torlakson (individually) for Violation of §1983)

240.     Plaintiffs reallege and incorporate by reference as though fully set forth herein, paragraphs 1 through 239, of this Complaint.

241.     By the acts and omissions alleged herein, the Individual Defendants and defendant Torlakson (in their individual capacity), and each of them, have acted with bad faith and intentional disregard of Everett's right to equal protection and substantive due process guaranteed by the United States Constitution and Everett's rights under federal law, including his right to a FAPE under the IDEA, and his rights to be free from discrimination and retaliation under Title II of the ADA.

242.     Federal law governing the duty of the Individual Defendants not to violate Everett's rights under the IDEA and the ADA, and to equal protection and substantive due process guaranteed by the United States Constitution by engaging in the acts and omissions alleged above is unambiguous and clearly established and imposes binding obligations on the defendants.

243.     By virtue of the positions in which they are or were employed by Dry Creek, the Individual Defendants, and each of them, knew or should have known that their action or inaction constitutes a denial of Everett's right to equal protection and substantive due process guaranteed by the United States Constitution.

244.     By virtue of his position over the CDE, defendant Torlakson, in his individual capacity, undertook to disregard the oversight and enforcement required of the CDE, and is therefore individually responsible to the deprivation of rights and malfeasance of permitting the growth of systemic violations by constituent LEAs such as Dry Creek, and he knew or should have known that his action or inaction constitutes a denial of Everett's right to equal protection and substantive due process guaranteed by the United States Constitution.

245.     The Individual Defendants and defendant Torlakson, and each of them, were acting under color of state law, thereby violating Section 1983.  42. U.S.C. §1983.

246.     The acts of the Individual Defendants and Torlakson, and each of them, as herein alleged, were willful, wanton, malicious, and oppressive, and justify the awarding of punitive damages.

**DAMAGES SUSTAINED AS A RESULT OF THE ABOVE REFERENCED CLAIMS**

247.     As a direct and proximate result of the acts and omissions alleged in this Complaint, Everett has suffered substantial educational and developmental losses, causing a permanent decline in his future development, which adversely impacts his future earnings and earning potential, and which has resulted in humiliation, pain and suffering, and damage to his social development and interpersonal

relations, in an amount subject to proof at trial.  With respect to those claims based upon violations of the United States Constitution, Everett was deprived of his constitutional rights.

248.    As a direct and proximate result of the acts and omissions alleged in this Complaint, Parents have incurred costs, humiliation, pain and suffering, and will incur substantial expenses for Everett's education, development and future support, in an amount subject to proof at trial.  With respect to those claims based upon violations of the United States Constitution, Parents were deprived of their constitutional rights.

249.    As a direct and proximate result of the acts and omissions alleged in this Complaint, Everett and Parents will continue to be damaged and suffer irreparable harm unless defendants are enjoined.

**PRAYER FOR RELIEF:**

**WHEREFORE, Plaintiffs respectfully pray that this Court enter judgment in their favor and against Defendants, containing the following relief:**

1.    An injunction requiring the State Defendants to adopt policies, procedures and practices, and take appropriate measures necessary to ensure that they carry out their responsibilities under the IDEA to monitor implementation of, investigate and enforce the IDEA and Title II of the ADA, and carry out their responsibilities under the California Education Code section 56100(b), including but not limited to monitoring implementation of, investigating and enforcing the California Education Code, and directly providing services to Everett where necessary to ensure he receives a FAPE and taking appropriate and effective enforcement measures against the Local Defendants to ensure compliance with these state and federal laws;

2.    Appropriate compensatory education for plaintiff Everett H.;

3.    Appropriate compensatory damages according to proof;

4.    Punitive damages according to proof;

5.    Pre-judgment interest;

6.    Post-judgment interest;

7.    Declaratory relief;

8.   Plaintiffs' costs, disbursements, and reasonable attorney's fees pursuant to, *inter alia*, 20 U.S.C. § 1415(i)(3), 42 U.S.C. §1988, 20 and Title II of the ADA; and

9.   Any other relief as this Court may deem just and proper.

Dated:  May 6, 2013

Respectfully Submitted,

By: _/s/  *Heath A. Havey*_____
          Heath A. Havey

Attorney for Plaintiffs Rebecca F. Havey and Everett H. and as Pro Se Plaintiff and Guardian ad litem for Minor Everett H.

45
Complaint