1

2

3

4

5

6

7

8               UNITED STATES DISTRICT COURT

9               EASTERN DISTRICT OF CALIFORNIA

10

11   EVERETT H,  a minor, by and through          No.  2:13-cv-00889-MCE-DAD
     his Guardians Ad Litem REBECCA
12   HAVEY and HEATH HAVEY;
     REBECCA HAVEY, an individual; and
13   HEATH HAVEY, an individual                    **MEMORANDUM AND ORDER**

14              Plaintiffs,

15        v.

16   DRY CREEK JOINT ELEMENTARY
     SCHOOL DISTRICT, BOARD OF
17   TRUSTEES OF DRY CREEK JOINT
     ELEMENTARY SCHOOL DISTRICT;
18   MARK GEYER, individually and in his
     official capacity of Superintendent of
19   Dry Creek Joint Elementary School
     District; EVONNE ROGERS,
20   individually in in her official capacity as
     Assistant Superintendent of
21   Educational Services; LYNN
     BARBARIA, individually and in her
22   official capacity as Director of Special
     Education; ANDREW GIANNINI,
23   individually and in his official capacity
     as Principal at Olive Grove Elementary
24   School; CALIFORNIA DEPARTMENT
     OF EDUCATION; and TOM
25   TORLAKSON, individually and in his
     official capacity as State
26   Superintendent of Public Instruction for
     the State of California,
27
                Defendants.
28

1

Through the present action, Plaintiffs Heath and Rebecca Havey, both individually and on behalf of their son Everett H. (hereinafter "Plaintiffs" unless otherwise indicated) allege educational harms based on purported violations of Everett's right as a disabled student to a free and appropriate public education ("FAPE") pursuant to the provisions of the Individuals with Disabilities Education Improvement Act, 20 U.S.C. §§ 1400m et seq. ("IDEA") and various state statutes.  Plaintiffs also assert associated violations of Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. ("ADA") and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("§ 504").  Finally, Plaintiffs assert claims under the auspices of 42 U.S.C. § 1983 ("§ 1983"), which include both failure to accommodate claims and claims for civil rights discrimination and retaliation.  By way of damages, Plaintiffs seek compensatory education and reimbursement, compensatory and punitive damages and attorneys' fees.

The Dry Creek Joint Elementary School District, Everett's local school district, is named as a Defendant by Plaintiffs, along with Dry Creek's Board of Trustees and four individual Dry Creek administrators, Lynn Barbaria, Mark Geyer, Andrew Giannini and Evonne Rogers, in their official capacities.  (These Defendants will be collectively referred to as the "Local Defendants" unless otherwise specified).  In addition to the Local Defendants, the California Department of Education (the "CDE") and State Superintendent of Public Instruction Tom Torlakson are also named Defendants in the instant lawsuit (the "State Defendants").

Both the Local and State Defendants have now moved to dismiss Plaintiffs' Complaint.  Local Defendants' Motion is brought under Federal Rule of Civil Procedure 12(b)(1), 12(b)(6), and 12(f).  This Memorandum and Order will address only Local Defendants' Motion to Dismiss (ECF No. 8).  As set forth below, that Motion will be granted in part and denied in part.[1]

///

---

[1] Because oral argument was not deemed of material assistance, this matter was submitted on the briefing.  E.D. Cal. Local Rule 230(g).

1    **STATUTORY AND PROCEDURAL FRAMEWORK**

2

3         The procedural and substantive standards for educating disabled students in this

4    state are delineated within the federal IDEA and California's Education Code § 56000,

5    et seq., along with state and federal implementing regulations.  See 34 C.F.R. § 300

6    et seq.; Cal. Code Regs., tit. 5, § 3000, et seq.

7         The IDEA provides that a state must, in order to receive federal financial

8    assistance, have policies and procedures in effect that assure all students with

9    disabilities the right to a FAPE.  20 U.S.C. § 1412(a)(1).  The FAPE requirement means

10   that special education and related services must be provided at public expense, under

11   public supervision and direction, and without charge to the parent or student.  20 U.S.C.

12   §§ 1401(9); (29).  Each student's special instruction is based upon the development of

13   an Individualized Education Plan ("IEP") by the school district which, along with parental

14   input, is designed to establish both annual and short term objectives and individually

15   designed instruction and services that will enable the child to meet those objectives.

16   20 U.S.C. § 1414(d); Honig v. Doe, 484 U.S. 305, 311 (1988).

17         Under the IDEA, the CDE, as the so-called state educational agency ("SEA"), has

18   general supervisory responsibility for the overall provision of special education services

19   within California.  20 U.S.C. §§ 1412 (a)(11)(A); 1401(32).  The IDEA contemplates that

20   each individual state will devise their own systems for providing special education

21   services through local educational agencies ("LEAs").  20 U.S.C. § 1401(19).  LEAs

22   apply for SEA funding by submitting a plan that ensures compliance with the IDEA.

23   20 U.S.C. § 1413(a).  The SEA can choose, but is not required, to be a direct provider

24   for some of whatever services may be necessary.  20 U.S.C. § 1412(b).

25         California elected to participate in IDEA by adopting a state plan and enacting a

26   series of statutes and regulations designed to comply with the federal requirements.

27   Cal. Educ. Code § 56000, et seq., Cal. Code Regs. tit. 5, § 3000, et seq.  California law

28   places primary responsibility for the provision of FAPE to eligible students on the LEA,

which is defined as a "school district, a county office of education, a charter school participating as a member of a special education local plan area, or a special education local plan area." Cal. Educ. Code § 56026.3. An LEA, like Dry Creek in this instance, is generally responsible for providing the requisite FAPE to students within its jurisdictional boundaries. Cal. Educ. Code § 48200. That obligation includes both identifying students with disabilities, determining appropriate educational placements and related services through the IEP process, and providing those needed special education and related services. Cal. Educ. Code §§ 56300, 45302, 56340, 56344(c).

Where, as here, a dispute arises regarding a disabled student's education needs, federal and California law provides two distinct procedural mechanisms by which an LEA's educational decisions may be challenged. First, either the LEA or the parents can request an administrative "due process" hearing. 20 U.S.C. § 1415(b)(6)(A); (f)(1)(a); 34 C.F.R. § 300.507(a); Cal Educ. Code § 56501(a), et seq.; Wyner v. Manhattan Beach Unified Sch. Dist., 223 F.3d 1026, 1028-29 (9th Cir. 2000); cert. denied., 534 U.S. 1140 (2002). Because under the IDEA the entity conducting the due process hearing must be impartial and independent from the CDE (20 U.S.C. § 1415(f)(1)(A); (f)(3)(A)), the CDE meets this obligation in California by contracting with the Office of Administration Hearings ("OAH") for the services of Administrative Law Judges ("ALJs") to preside over due process hearings. 20 U.S.C. § 56504.5(a); Cal. Gov't Code § 27727. Those hearings are formal in nature and include, inter alia, the right to present evidence and arguments, the right to confront and cross-examine witnesses and to compel their attendance, and the right to obtain written findings of fact by the ALJ following the hearing. 20 U.S.C. § 1415(h); Cal. Educ. Code § 56505(e). The resulting OAH ruling is deemed a final administrative decision. 20 U.S.C. § 1415(i)(1)(A); Cal. Educ. Code § 56505(h). Either the parents or the LEA, if "aggrieved" by the final administrative decision, may seek de novo judicial review in a court of competent jurisdiction like this one. 20 U.S.C. § 1415(i)(2)(A); 34 C.F.R. § 300.516; Cal. Educ. Code § 56505(k). ///

4

1   The remedy represented by the administrative due process hearing must be exhausted

2   before filing a civil action in federal court.  20 U.S.C. § 1415 (1).

3        In addition to the formal due process hearing procedures outlined above, parents

4   may also initiate a more informal, and less adversarial, complaint resolution proceeding

5   (CRP") with an SEA, which, as stated above, is the CDE here in California.  34 C.F.R.

6   §§ 300.151-153; Cal. Educ. Code § 56500.2; Cal. Code Regs., tit. 5, § 4650.  Unlike the

7   due process hearings process that is both expressly provided in the IDEA and detailed in

8   the regulations, the CRP is described only in the federal regulations.  Lucht v. Molalla

9   River Sch. Dist., 225 F.3d 1023, 1026 (9th Cir. 2000).

10        A CRP and the due process hearing substantially differ.  Unlike the IDEA, which is

11   limited to the identification, evaluation, placement and provision of FAPE, a CRP can

12   contain any allegation that the LEA violated the IDEA or its implementing regulations.

13   34 C.F.R. 300.153(b)(1); Cal. Educ. Code § 56500.2(c)(1); Cal. Code Regs. tit 5,

14   § 4650(a)(7)(E).  Additionally, unlike a due process hearing request, a CRP can be

15   initiated by any individual or organization, cannot be initiated by an LEA against a

16   parent, and need not involve an allegation regarding a specific student.  34 C.F.R.

17   §§ 300.153(a); (b)(4); Cal. Code Regs. tit. 5, § 4600(c).  Additionally, the nature of the

18   proceedings differ to the extent that the CRP does not include full procedural protections

19   like the right to confront and cross-examine witnesses.

20        When a party files a CRP in California, the CDE must investigate, request all

21   documentation and other evidence relating to the allegations and issue an investigation

22   report.  Cal. Educ. Code § 56043(p); Cal. Code Regs. tit. 5, §§ 4663-64.  A parent or

23   LEA can initiate a due process hearing even when a CRP is still pending so long as the

24   issues in the due process request are timely, involve the identification, evaluation,

25   placement or provision of FAPE and are accordingly within the jurisdiction of the OAH in

26   California.  See 20 U.S.C. § 1415(b)(6)(A); (f); Cal Educ. Code § 56501(a).

27   ///

28   ///

5

1

## FACTUAL BACKGROUND[2]

2

3      Everett H. is a disabled student who, according to the Complaint, suffered from

4   delayed myeliniation and has been diagnosed with an autism spectrum disorder and

5   resulting motor and neurological delays such as language impairment.  Everett attended

6   school within the Dry Creek Elementary School District ("Dry Creek") for approximately

7   five years, from 2007 to March 2, 2012.  During that period, Plaintiffs and Dry Creek had

8   disagreements about the special education program provided by the District to Everett.

9   According to Plaintiffs, Dry Creek made various errors with respect to the provision of

10  FAPE, including in the IEP process, Everett's disability designation placement and

11  providing education to Everett in the least restrictive environment ("LRE").

12     Plaintiffs allege that in order to shoehorn Everett into its special education

13  agenda, Dry Creek intentionally misrepresented its testing as showing that he was

14  "mentally retarded" in order to remove Everett from a general education classroom into a

15  segregated classroom where severely handicapped children were warehoused and

16  where little education purportedly took place.  According to Plaintiffs, beginning in 2010,

17  they resisted Dry Creek's attempt to provide fewer services than contemplated within

18  Everett's IEP dated September 9, 2009.  Specifically, Plaintiffs claim that the district

19  withheld some 290 minutes of daily Specialized Academic Services required under the

20  IEP and failed to rectify that shortcoming even after Plaintiffs demanded that the services

21  called for under the IEP be provided.

22     Dry Creek eventually, on September 12, 2011, filed for a special education due

23  process hearing before the OAH with regard to FAPE and assessment issues.

24     According to Plaintiffs, once they began advocating for Everett's rights in the

25  Summer of 2010, the District began to engage in retaliatory activity which intensified in

26  March of 2012, when Plaintiffs claim they had to remove Everett from school for his own

27

28      [2] The allegations in this section are derived from the assertions made by Plaintiffs in their
Complaint.

6

safety.  Plaintiffs assert that the District began delaying the IEP meeting process, began misrepresenting what occurred at IEP meetings when they did take place, and began manipulating IEP documentation to delay and mislead Plaintiffs.  In addition, Plaintiffs assert that Dry Creek engaged in retaliatory behavior that endangered Everett's safety, including depriving him of food and refusing to monitor his food intake, sending him home disheveled and dirty with feces, and otherwise subjecting Everett to repeated humiliation.  Plaintiffs further claim that Dry Creek interfered with Plaintiff's attempt to move Everett to another school district.

Between January and October of 2012, when the due process hearing between Plaintiffs and Dry Creek was pending at the OAH, and for a short time thereafter, Plaintiffs filed at least five CRPs against Dry Creek with the CDE, which alleged that Cry Creek was out of compliance with special educations laws.  Plaintiffs claim that the CDE found Dry Creek out of compliance with state and federal laws in both Everett's case and others and issued a report that Dry Creek was in "systemic non-compliance."  On July 25, 2012, several months after Everett left Dry Creek, the District dismissed the OAH case it had initiated.  Given that dismissal, no final administrative due process hearing decision was ever issued on any of the alleged educational shortcomings raised by Plaintiffs.

Plaintiffs alleged that Administrative Law Judge ("ALJ") assigned to the case made errors.  They also claim the CDE itself made various errors in handling the CRPs, including, among other claimed mistakes, declining to address and/or investigate some of Plaintiffs' allegations and denying requests for reconsideration.

**STANDARD**

### A.      Rule 12(b)(1)

Federal courts are courts of limited jurisdiction, and are presumptively without jurisdiction over civil actions.  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  The burden of establishing the contrary rests upon the party asserting

1    jurisdiction.  Id.  Because subject matter jurisdiction involves a court's power to hear a

2    case, it can never be forfeited or waived.  United States v. Cotton, 535 U.S. 625, 630

3    (2002).  Accordingly, lack of subject matter jurisdiction may be raised by either party at

4    any point during the litigation, through a motion to dismiss pursuant to Federal Rule of

5    Civil Procedure 12(b)(1).[3]  Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006); see also

6    Int'l Union of Operating Eng'rs v. Cnty. of Plumas, 559 F.3d 1041, 1043-44 (9th Cir.

7    2009).  Lack of subject matter jurisdiction may also be raised by the district court

8    sua sponte.  Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999).  Indeed,

9    "courts have an independent obligation to determine whether subject matter jurisdiction

10   exists, even in the absence of a challenge from any party."  Id.; see Fed. R. Civ. P.

11   12(h)(3) (requiring the court to dismiss the action if subject matter jurisdiction is lacking).

12          There are two types of motions to dismiss for lack of subject matter jurisdiction: a

13   facial attack and a factual attack.  Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.,

14   594 F.2d 730, 733 (9th Cir. 1979).  Thus, a party may either make an attack on the

15   allegations of jurisdiction contained in the nonmoving party's complaint, or may

16   challenge the existence of subject matter jurisdiction in fact, despite the formal

17   sufficiency of the pleadings.  Id.

18          When a party makes a facial attack on a complaint, the attack is unaccompanied

19   by supporting evidence, and it challenges jurisdiction based solely on the pleadings.

20   Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  If the motion to

21   dismiss constitutes a facial attack, the Court must consider the factual allegations of the

22   complaint to be true and determine whether they establish subject matter jurisdiction.

23   Savage v. Glendale High Union Sch. Dist. No. 205, 343 F.3d 1036, 1039 n.1 (9th Cir.

24   2003).  In the case of a facial attack, the motion to dismiss is granted only if the

25   nonmoving party fails to allege an element necessary for subject matter jurisdiction.  Id.

26   However, in the case of a facial attack, district courts "may review evidence beyond the

27

28          [3] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless
     otherwise noted.

8

complaint without converting the motion to dismiss into a motion for summary judgment."

Safe Air for Everyone, 373 F.3d at 1039.

In the case of a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations." Thornill, 594 F.2d at 733 (internal citation omitted).  The party opposing the motion has the burden of proving that subject matter jurisdiction does exist and must present any necessary evidence to satisfy this burden.  St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989).  If the plaintiff's allegations of jurisdictional facts are challenged by the adversary in the appropriate manner, the plaintiff cannot rest on the mere assertion that factual issues may exist.  Trentacosta v. Frontier Pac. Aircraft Ind., Inc., 813 F.2d 1553, 1558 (9th Cir. 1987) (quoting Exch. Nat'l Bank of Chi. v. Touche Ross & Co., 544 F.2d 1126, 1131 (2d Cir. 1976)).  Furthermore, the district court may review any evidence necessary, including affidavits and testimony, in order to determine whether subject matter jurisdiction exists.  McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988); Thornhill, 594 F.2d at 733.  If the nonmoving party fails to meet its burden and the court determines that it lacks subject matter jurisdiction, the court must dismiss the action.  Fed. R. Civ. P. 12(h)(3).

**B.     Rule 12(b)(6)**

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336,337-38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. (internal citations and

1    quotations omitted).  A court is not required to accept as true a "legal conclusion

2    couched as a factual allegation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009)

3    (quoting Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a right

4    to relief above the speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles Alan

5    Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating

6    that the pleading must contain something more than "a statement of facts that merely

7    creates a suspicion [of] a legally cognizable right of action.")).

8           Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket

9    assertion, of entitlement to relief."  Twombly, 550 U.S. at 556 n.3 (internal citations and

10   quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard

11   to see how a claimant could satisfy the requirements of providing not only 'fair notice' of

12   the nature of the claim, but also 'grounds' on which the claim rests."  Id. (citing 5 Charles

13   Alan Wright & Arthur R. Miller, supra, at § 1202).  A pleading must contain "only enough

14   facts to state a claim to relief that is plausible on its face."  Id. at 570.  If the "plaintiffs . . .

15   have not nudged their claims across the line from conceivable to plausible, their

16   complaint must be dismissed."  Id.  However, "[a] well-pleaded complaint may proceed

17   even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a

18   recovery is very remote and unlikely.'"  Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S.

19   232, 236 (1974)).

20          **C.    Leave to Amend**

21          A court granting a motion to dismiss a complaint must then decide whether to

22   grant leave to amend.  Leave to amend should be "freely given" where there is no

23   "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice

24   to the opposing party by virtue of allowance of the amendment, [or] futility of the

25   amendment . . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.

26   Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to

27   be considered when deciding whether to grant leave to amend).  Not all of these factors

28   merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . .

1    carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,

2    185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that

3    "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group,

4    Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006,

5    1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir.

6    1989) ("Leave need not be granted where the amendment of the complaint . . .

7    constitutes an exercise in futility . . . .")).

8        **D.    Rule 12(f)**

9        The Court may also strike "from any pleading any insufficient defense or any

10   redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  "[T]he

11   function of a 12(f) motion to strike is to avoid the expenditure of time and money that

12   must arise from litigating spurious issues by dispensing with those issues prior to

13   trial . . . ." Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983).

14   Immaterial matter is that which has no essential or important relationship to the claim for

15   relief or the defenses being pleaded.  Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th

16   Cir. 1993), rev'd on other grounds 510 U.S. 517 (1994) (internal citations and quotations

17   omitted).  Impertinent matter consists of statements that do not pertain, and are not

18   necessary, to the issues in question.  Id.

19

20                                    **ANALYSIS**

21       **A.    Administrative Exhaustion as a Prerequisite to Plaintiffs' Claims**

22       The Local Defendants' most sweeping argument for dismissal of Plaintiffs' claims

23   herein hinges on the allegation that all but one of the claims asserted against them

24   (Plaintiff's First, Third, Fourth, Fifth, Sixth and Eleventh Claims for Relief, respectively)

25   must be dismissed because of Plaintiffs' alleged failure to exhaust available

26   administrative remedies.[4]  Local Defendants point to the fact that under the IDEA,

27       _____
          [4] The only cause of action not subject to exhaustion under the Local Defendants' argument is
28   Plaintiff's Twelfth (and final) Cause of Action, under 42 U.S.C. § 1983.  That claim is asserted against the
     individually named defendants and the CRE, but not against either Dry Creek or its Board of Trustees.

                                        11

1   exhaustion of available administrative remedies is required before filing a civil suit

2   seeking relief that is also available under the IDEA.  20 U.S.C. § 1415(1).  Because

3   Plaintiffs have not pursued a due process hearing in this matter, and because, according

4   to Local Defendants, the above enumerated causes of action all allege harms that can

5   and should be remedied, if at all, under the IDEA, Local Defendants ask that Plaintiffs'

6   claims be dismissed as unexhausted and therefore barred.

7          Local Defendants cite to the Ninth Circuit's decision in Payne v. Peninsula Sch.

8   Dist., 653 F.3d 863 (9th Cir. 2011) for the proposition that Plaintiffs' claims are both

9   unexhausted and subject to dismissal at this juncture.  Defendants correctly cite Payne

10  for the proposition that exhaustion is required: 1) when a plaintiff seeks an IDEA remedy

11  or its functional equivalent; 2) where a plaintiff seeks prospective injunctive relief to alter

12  an IEP or the educational placement of a disabled student; and 3) where a plaintiff is

13  seeking to enforce rights that arise as a result of a denial of FAPE, whether pled as an

14  IDEA claim or otherwise.  Id. at 875.

15         According to Local Defendants, because Plaintiffs seek compensatory education,

16  compensatory damages, declaratory relief and attorneys' fees in their First, Third,

17  Fourth, Fifth, Sixth and Eleventh Causes of Action, exhaustion through a due process

18  hearing under the auspices of the OAH is required.  Local Defendants claim that the

19  CRPs submitted to the CDE cannot suffice in that regard.

20         It is not necessary at this juncture to resolve whether or not the CRPs filed by

21  Plaintiff sufficed for exhaustion purposes inasmuch as Payne makes it clear that

22  exhaustion is not in fact a jurisdictional issue amenable to disposition on a motion to

23  dismiss.  First, with respect to the exhaustion provisions of the IDEA enumerated at

24  20 U.S.C. § 1415(l), the Ninth Circuit observes that nothing [in that statute] mentions the

25  jurisdiction of the federal courts."  Id. at 869.  The Payne court goes on to find nothing in

26  the relevant jurisdictional statutes requiring exhaustion either.  Id. at 870.  Consequently,

27  Payne held the exhaustion requirement to be not jurisdictional:  "It is not clearly labeled

28  jurisdictional, is not located in a jurisdiction-granting provision, and admits of

1    congressionally authorized exceptions."  Id. at 870-71.  The court therefore held that "the

2    IDEA's exhaustion requirement is a claims processing provision that IDEA defendants

3    may offer as an affirmative defense."  Id. at 867.  Joining the approach adopted by the

4    Seventh and Eleventh Circuit, and overruling any statements to the contrary contained in

5    its earlier decisions,[5]  Payne therefore adopted an exhaustion requirement "more

6    flexible" than any "rigid jurisdictional limitation."   It noted that while dismissal may still be

7    had on exhaustion grounds, any assessment in that regard is "better addressed through

8    a fact-specific assessment of the affirmative defense than through an inquiry about

9    whether the court has the power to decide the case at all".  Id. at 870-71.  Such a "fact

10   specific" inquiry cannot be encompassed by the present motion to dismiss.[6]

11        Local Defendants' bid to dismiss the vast majority of Plaintiffs' allegations against

12   them on exhaustion grounds by way of the present motion therefore fails.

13                    **B.    Eleventh Amendment Claim Preclusion**

14        Plaintiffs' Third Claim for Relief seeks redress for Defendants' alleged failure to

15   provide the supplemental instruction required by the IDEA in violation of California

16   Education Code § 37252.2.  The Local Defendants challenge the Third Cause of Action,

17   to the extent it is asserted both against Dry Creek, the Board, and the individually named

18   Creek administrators sued in their official capacities, on grounds that the claim, which

19   seeks both compensatory damages, injunctive and declaratory relief is barred by the

20   Eleventh Amendment to the United States Constitution.

21        Absent unequivocal consent to suit, the Eleventh Amendment "bars suits in

22   federal court, for both retrospective and prospective relief brought against state officials

23        _____

24        [5] Blanchard v. Morton Sch. Dist.,, 420 F.3d 918, 920-21 (9th Cir. 2005); Witte v. Clark County Sch.
     Dist., 197 F.3d 1271, 1274 (9th Cir. 1999); and Dreher v. Ampitheater Unified Sch. Dist., 22 F.3d at 228,
     231 (9th Cir. 1994) are cited in that regard.

25        [6] While the Payne court recognized that dismissal on non-jurisdictional grounds can be sought by
26   way of an unenumerated Rule 12(b) motion (Payne, 653 F.3d at 881), and while the Local Defendants
     argue that a 12(b) motion here is proper, such a motion would still extend beyond the purview of the
27   present motion, which is directed at the pleadings.  An unenumerated 12(b) motion may look beyond the
     pleadings and decide disputed issues of fact.  Wyatt v. Terhune, 315 F.3d 1108, 1119-20 (9th Cir. 2003).
     In that sense, the Rule 12(b) motion utilizes "a procedure closely analogous to summary judgment."  Id. at
28   1119 n.14.

1  acting in their official capacities alleging a violation of state law." Pena v. Gardner,

2  976F.2d 469, 473 (9th Cir. 1992) (citing Pennhurst State Sch. & Hosp. v. Halderman,

3  465 U.S. 89, 101 (1984) (citation omitted).

4       The Local Defendants correctly point out that a school district like Dry Creek

5  herein is deemed an arm of the State entitled to immunity under the Eleventh

6  Amendment.  See, e.g., Belanger v. Madera, 963 F.2d 248, 250-55 (9th Cir. 1992)

7  Defendants are further correct in asserting that claims against District administrators in

8  their official capacities are analogous to suits against the District itself, with such claims

9  also being entitled to Eleventh Amendment protection.  See Will v. Mich. Dept. of State

10  Police, 491 U.S. 58, 71 (1989).

11       Local Defendants claim that they have not consented to suit in federal court

12  relative to Plaintiff's Third Claim for a violation of California Education Code § 37252.2,

13  and that therefore this state law claim is barred.  It is uncontroverted that states receiving

14  federal funding under the IDEA waive sovereign immunity under 20 U.S.C. § 1403.  See

15  Pls.' Compl., ¶ 20; M.A. v. State-Operated Sch. Distr. of the City of Newark, 344 F.3d

16  335, 346 (3rd Cir. 2003) ("One clear and unmistakable component of the IDEA is a

17  state's waiver of Eleventh Amendment immunity.").

18       By its terms, § 37252.2 mandates the provision of certain intensive supplemental

19  instructional programs to qualifying students.  Although this would appear to address the

20  same provision of FAPE required under the IDEA, subdivision (i) of the statute, upon

21  which Plaintiffs purportedly rely in bringing their Third Claim for Relief (see Opp'n,

22  24:3-4), in fact relieves school districts of obligations under the statute for "reimbursable"

23  state mandates—an apparent reference to funding available under the federal IDEA.

24  The fact that § 37252.2 is therefore not necessarily coextensive with the IDEA makes

25  unpersuasive any argument that the state (and by extension the Local Defendants)

26  expressly waived its sovereign immunity as to any claim under § 37252.2 by accepting

27  federal funding under the IDEA.  The Third Cause of Action, as against the Local

28  Defendants, is therefore barred by the Eleventh Amendment.

1   **C.      Dismissal of Plaintiffs' Fifth or Sixth Claims for Relief as Duplicative**

2           Plaintiffs' Fifth and Sixth Claims for relief are each made under § 504 of the

3   Rehabilitation Act.  The Fifth Claim asserts that Plaintiff Parents were subjected to

4   retaliation by the Local Defendants for exercising their rights as advocates on Everett's

5   behalf, in violation of § 504.  The Sixth Claim, similarly asserted against Dry Creek and

6   the individual defendants in their official capacities, seeks damages for intentionally

7   interfering with Parents' advocacy rights, also in violation of § 504.  Local Defendants

8   move to dismiss, or alternatively strike as redundant, either the Fifth or Sixth Claims

9   under Rule 12(f).  As enumerated above, Rule 12(f) expressly authorizes a court to

10  dismiss and/or strike redundant allegations from a pleading.  Fed. R. Civ. P. 12(f); <u>see</u>

11  <u>also</u> <u>Reed v. The Arkansas</u>, 88 F. Supp. 993, 993 (S.D. Cal. 1950).

12          While the two claims are indeed similar in nature, the Court agrees with Plaintiffs

13  that they are not identical.  Retaliation claims require proof that: 1) plaintiffs engaged in a

14  protected activity; 2) defendants' retaliatory action was designed to interfere with that

15  right or privilege; and 3) there was a causal connection between the protected activity

16  and  the retaliatory action.  <u>See, e.g., Barker v. Riverside County Office of Educ</u>.,

17  584 F.3d 821, 825 (2009).  An interference action, on the other hand, has a broader

18  scope than retaliation since interference does not necessarily concern discrimination or

19  retaliation for engaging in a protected activity.  <u>See</u> <u>Brown v. City of Tucson</u>, 336 F.3d

20  1181, 1191 (9th Cir. 2003) (anti-interference provisions should be "broadly applied to

21  reach all practices which have the effect of interfering with the exercise of rights under

22  federal law").  As the Third District explained in <u>Callison v. City of Philadelphia</u>, 430 F.3d

23  117 (3rd Cir. 2005), in an interference action, a plaintiff "need not show that he was

24  treated differently than others ….An interference action is not about discrimination, it is

25  only about whether the [defendant]  provided the [plaintiff] with the entitlements

26  guaranteed by the [federal statute]." <u>Id.</u> at 119-20.  In addition, unlike discrimination,

27  interference claimants only have to establish that they were denied a benefit and need

28  not demonstrate any causal nexus.  <u>Spakes v. Broward County Sheriff's Office</u>, 631 F.3d

1    1307, 1309 (11th Cir. 2011).  Given these differences in the requisite elements of proof,

2    the Plaintiffs' Fifth and Sixth claims are distinguishable and Local Defendants' motion to

3    strike and/or dismiss one or the other as redundant is denied.

4

5    **D.    Dismissal of Individual Defendants from Plaintiffs' First Claim for Relief**

6        Next, the Local Defendants argue that the individually named Dry Creek

7    administrators (Defendants Geyer, Rogers, Barbaria and Giannini) should be dismissed

8    as defendants to Plaintiffs' First Claim for Relief because only the District, as the relevant

9    LEA, is responsible for insuring FAPE as a precondition for accepting financial

10   assistance under the IDEA.[7]  Local Defendants therefore assert that the administrators,

11   who have been sued in the First Claim only in their official capacities, are improper

12   defendants to Plaintiffs' First Claim for Relief, for failure to provide a FAPE in violation of

13   both the FAPE and California Education Code § 56000, et seq., which implements IDEA

14   standards within California.

15       The Court agrees with Local Defendants that only the LEA, and not its individually

16   named defendants, bears the responsibility for providing FAPE under the IDEA.  The few

17   decisions that have examined this issue have generally recognized that the IDEA does

18   not permit damages for compensatory education or reimbursement against individual

19   defendants.  See, e.g., Blanchard v. Morton Sch. Dist., 2006 WL 2459167 at *2 (W.D.

20   Wash. 2006) (individual defendants "may not be sued in their individual capacities

21   under . . . the IDEA because [the statute does] not provide for individual liability").

22   Although Plaintiffs' First Claim herein is against the individuals in their official rather than

23   their individual capacities, that distinction does not help Plaintiffs since suing the

24   administrators in their official capacity is nothing more than another way of stating a

25   claim against the District itself and is therefore duplicative.  See Kentucky v. Graham,

26   ───────────────
        [7] While Plaintiffs' Motion also requests that Dry Creek's Board of Trustees also be dismissed from
27   the First Claim for Relief, that Claim in fact is asserted against Dry Creek only and not against its Board of
     Trustees as well.  In any event, the term LEA, as defined in the IDEA, includes a "public board of
     education" so would appear to properly encompass the Board had the Board been named as a defendant
28   to the First Claim.  See 20 U.S.C. § 1401(19)(A).

1    473 U.S. 159, 165-66.  Nor is Plaintiffs' attempt to justify the individual's exclusion under

2    the so-called Ex Parte Young doctrine any more successful since that doctrine applies to

3    prospective injunctive relief to enjoin unconstitutional action by state officials, and the

4    First Claim is not making any such constitutional challenge.  See, e.g., Presbyterian

5    Church v. United States, 870 F.2d 518, 525-26 (9th Cir. 1989).

6         In sum, the Local Defendants' request for dismissal as to the individually named

7    Dry Creek administrators is well taken and those administrators are consequently

8    dismissed as Defendants to the First Cause of Action.

9

10         **E.    Dismissal of Individual Defendants from Plaintiff's Fourth, Fifth and
              Sixth Claims for Relief**

11         Plaintiff's Fourth, Fifth and Sixth Claims for all Relief are all based on § 504 of the

12   Rehabilitation Act and are all directed against the Local Defendants only.  Local

13   Defendants move to dismiss all three claims on grounds that the individually named

14   administrators, who are named as defendants in their official capacity, are not viable

15   defendants under § 504.  Local Defendants correctly point out that proper defendants

16   under § 504 "are recipients of federal funding."  29 U.S.C. § 794(a); 34 C.F.R.

17   § 104.4(a); Zukle v. Regents of the Univ. of Cal., 166 F.3d 1041, 1045 (9th Cir. 1999).

18   Among the "program[s] and activit[ies]" that can be a recipient of federal funds under

19   § 504 is a LEA.  29 U.S.C. § 794(b).  Individual school officials are not identified.  As

20   correctly recognized by the court in A.M. v. NYC Dept. of Educ, 840 F. Supp. 2d 660,

21   678 (E.D.N.Y. 2012), "Section 504 does not allow for individual capacity suits." Therefore

22   Defendants Geyer, Rogers, Barbaria and Giannini are named improperly in the Fourth,

23   Fifth and Sixth Claims for Relief and are dismissed from those claims.[8]

24   ///

25   ///

26   _____

27   [8] Although Local Defendants' Motion also ostensibly seeks dismissal of the Dry Creek Board of
     Trustees as a Defendant to the Fourth, Fifth and Sixth Claims, Plaintiffs' Complaint does not name the
     Board as defendants to those claims, which are pled against "Dry Creek" only, with Dry Creek defined as

28   the Dry Creek Joint Elementary School District in paragraph 10 of Plaintiffs' Complaint.

1

2

**F.    Dismissal of Individual Defendants from Plaintiffs' Eleventh Claim for Relief**

3       Local Defendants bring a similar argument on behalf of the individually named

4   defendants with respect to the Eleventh Cause of Action, which asserts violations of Title

5   II of the Americans with Disabilities Act ("ADA") against all Defendants.  Title II provides

6   that no qualified individual with a disability shall, by reason of such disability, be

7   excluded from participation in or be denied the benefits of the services, programs, or

8   activities of a public entity, or be subjected to discrimination by any such entity.

9   42 U.S.C. § 12132.  As the language of the statute makes clear, the proper defendant to

10  an ADA claim is the public entity responsible for the alleged discrimination, Stewart v.

11  D. Bright, 2013 WL 2355450 (N.D. Cal. 2013).  Title II defines the term "public entity" as

12  "any State or local government"  or "any department, agency, special purpose district, or

13  other instrumentality of a State or States or local government."  42 U.S.C. § 12131.

14  Local Defendants maintain that the individually named Dry Creek administrators to not

15  meet this definition and should accordingly be dismissed from the Eleventh Claim.

16      Local Defendants' assertion in this regard is correct and Defendants Geyer,

17  Rogers, Barbaria and Giannini are hereby dismissed from the Eleventh Claim for Relief.

18

19

**G.    Dismissal of Twelfth Claim for Relief on Grounds that Plaintiffs Cannot Predicate a § 1983 Claim on Alleged IDEA, § 504 or ADA Violations**

20      Plaintiffs' Twelfth Claim for Relief is a cause of action against the individually

21  named administrator defendants only (along with CDE Defendant Torlakson) under

22  42 U.S.C. § 1983.   Alleged violations of the IDEA, § 504 and the ADA are cited as

23  support for the § 1983 claim, along with underlying constitutional claims.

24      A § 1983 action may be brought for federal statutory violations if "(1) Congress

25  intended the provision to benefit the plaintiff; (2) the right is not overly 'vague and

26  amorphous'; and (3) the statute unambiguously imposes a binding obligation on the

27  states." Alex G. v. Bd. Of Trustees, 332 F. Supp. 2d 1315, 1317 (E.D. Cal. 2005) (citing

28  Blessing v. Freestone, 520 U.S. 329, 340-41 (1997).  Moreover, even if those

1    requirements are satisfied, § 1983 will not provide an enforcement mechanism for a

2    federal statutory right if Congress has demonstrated a contrary intent. Id. (citing

3    Blessing, 520 U.S. at 341).  Congress does not intend for a federal statutory right to be

4    enforced through § 1983 if the right is part of a "comprehensive enforcement scheme

5    that is incompatible with individual enforcement under § 1983." Id.

6         In Blanchard v. Morton Sch. Dist. 504 F.3d 771 (9th Cir. 2007), the Ninth Circuit

7    joined "the First, Third, Fourth and Tenth Circuits 'in holding' that the comprehensive

8    enforcement scheme of the IDEA evidences Congress' intent to preclude a § 1983 claim

9    for a violation of rights under the IDEA." Id. at 774-75.  Similarly, the Ninth Circuit has

10   also held that Plaintiffs cannot ordinarily vindicate rights created by either § 504 or the

11   ADA through a § 1983 action.  Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002).

12        Significantly, however, as indicated above, Plaintiffs' § 1983 case is not limited to

13   claims based only on the above-described provisions of federal law.  To the contrary, the

14   Claim also asserts that the individual defendants "have acted with bad faith and

15   intentional disregard of Everett's right to equal protection and substantive due process

16   guaranteed by the United States Constitution." Pls.' Compl., ¶ 241.

17        Additionally, as Plaintiffs point out, this is not a typical case with respect to IDEA.

18   Plaintiffs' complaint recounts numerous alleged acts of retaliation and misrepresentation

19   which included both physical neglect and psychological humiliation.  Even though that

20   alleged conduct may have originated in an educational setting otherwise falling within

21   the purview of the IDEA, the Ninth Circuit's Payne decision recognizes that the IDEA

22   "does not encompass every challenge concerning a school's treatment of a disabled

23   student," and in particular may not "apply to plaintiffs who claimed that school official had

24   inflicted physical and emotional abuse on their child." Payne, 653 F.3d at 872-73.  As

25   Payne reasoned, the IDEA and its requirement are not intend to "shield school officials

26   from all liability for conduct that violates constitutional and statutory rights that exist

27   independent of the IDEA and entitles a plaintiff to relief different from what is available

28   under the IDEA." Id. at 876 (emphasis in original).  Similarly, in the context of alleged

19

1    § 504 and ADA claims, a § 1983 action may be available under certain circumstances.

2    See Goleta Union Elem. Sch. Dist., v. Ordway, 166 F. Supp. 2d 1287, 1292-93 (C.D.

3    Cal. 2001).

4         Consequently, Plaintiff's Twelfth Claim for Relief survives as a § 1983 claim given

5    the particular facts that are alleged, along with Plaintiffs' claims of constitutional

6    violations, and Local Defendants' motion to dismiss the District administrator defendants

7    from the claim fails.

8         **H.      Propriety of Punitive and/or Compensatory Damages as to Certain**
              **Claims for Relief**
9

10        Local Defendants allege that Plaintiffs' Prayer for Relief requests "punitive

11   damages according to proof" but does not associate that demand with any particular

12   claim.  That argument is incorrect.  Examination of the body of the Complaint reveals

13   that punitive damages are sought by way of the Twelfth Claim for Relief, wherein

14   Plaintiffs allege that the individual administrator defendants (along with another

15   individual state defendant, Tom Torlakson), committed acts that "were willful, wanton,

16   malicious, and oppressive, and justify the awarding of punitive damages."  Pls.' Compl.,

17   ¶ 246.  Plaintiffs do not allege that punitive damages apply to any other claim. Punitive

18   damages have been properly pled as to the Twelfth Claim and Local Defendants' effort

19   to strike those claimed damages at this pleading stage fails.

20        Local Defendants also assert that compensatory damages are not available in a

21   civil action brought pursuant to the IDEA.  They cite Ninth Circuit precedent to support

22   that contention.  Blanchard, 504 F.3d at 773 ("We have held that money damages are

23   not available under the IDEA for the pain and suffering of a disabled child."); Witte,

24   197F.3d at 1275 ("Plaintiff seeks only monetary damages, which is not relief that is

25   available under the IDEA. . . "); Alex G., 332 F. Supp. 2d at 1319 ("and most importantly

26   compensatory damages are unavailable [under the IDEA].").  In response, Plaintiffs

27   allege that their Complaint "does not allege [either] compensatory or punitive damages

28   under the IDEA."  Pls.' Opp'n, 27:11-12.  That concession is not necessarily obvious

from the Complaint, however, since the First Claim for Relief (alleging violations under the IDEA) does not specify what damages are sought, and because the Prayer for Relief claims only "appropriate compensatory damages according to proof.. Id. at 44:22. Accordingly, for clarity, Defendants' Motion is granted in this regard.

## CONCLUSION

As set forth above, Local Defendants' Motion to Dismiss (ECF No. 8) will be granted in part and denied in part.  The Motion is GRANTED as to the Third Claim for Relief in its entirety since that claim is barred by Eleventh Amendment immunity.  The Motion is also GRANTED as to the First, Fourth, Fifth, Sixth and Eleventh Claims for Relief as to Defendants Geyer, Rogers, Barbaria and Giannini.  Finally, the Motion is GRANTED with respect to the availability of compensatory damages under the First Claim for Relief.  In all other respects, the Motion is DENIED.  Because the Court does not believe that the deficiencies upon which portions of Local Defendants' Motion were granted can be rectified by amendment, no leave to amend will be permitted.

IT IS SO ORDERED.

Dated:  March 20, 2014

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT