1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   EVERETT H,  a minor, by and through        No.  2:13-cv-00889-MCE-DAD
     his Guardians Ad Litem REBECCA
12   HAVEY and HEATH HAVEY;
     REBECCA HAVEY, an individual; and
13   HEATH HAVEY, an individual                  **MEMORANDUM AND ORDER**

14                  Plaintiffs,

15         v.

16   DRY CREEK JOINT ELEMENTARY
     SCHOOL DISTRICT, BOARD OF
17   TRUSTEES OF DRY CREEK JOINT
     ELEMENTARY SCHOOL DISTRICT;
18   MARK GEYER, individually and in his
     official capacity of Superintendent of
19   Dry Creek Joint Elementary School
     District; EVONNE ROGERS,
20   individually in in her official capacity as
     Assistant Superintendent of
21   Educational Services; LYNN
     BARBARIA, individually and in her
22   official capacity as Director of Special
     Education; ANDREW GIANNINI,
23   individually and in his official capacity
     as Principal at Olive Grove Elementary
24   School; CALIFORNIA DEPARTMENT
     OF EDUCATION; and TOM
25   TORLAKSON, individually and in his
     official capacity as State
26   Superintendent of Public Instruction for
     the State of California,
27
                    Defendants.
28

                                    1

1    Through the present action, Plaintiffs Heath and Rebecca Havey, both individually

2    and on behalf of their son Everett H. (hereinafter "Plaintiffs" unless otherwise indicated)

3    allege educational harms based on purported violations of Everett's right as a disabled

4    student to a free and appropriate public education ("FAPE") pursuant to the provisions of

5    the Individuals with Disabilities Education Improvement Act, 20 U.S.C. §§ 1400m et seq.

6    ("IDEA") and various state statutes.  Plaintiffs also assert associated violations of Title II

7    of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. ("ADA") and § 504 of

8    the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("§ 504").  Finally, Plaintiffs assert claims

9    under the auspices of 42 U.S.C. § 1983 ("§ 1983"), which include both failure to

10   accommodate claims and claims for civil rights discrimination and retaliation.  By way of

11   damages, Plaintiffs seek compensatory education and reimbursement, compensatory

12   and punitive damages, and attorneys' fees.

13   The Dry Creek Joint Elementary School District, Everett's local school district, is

14   named as a Defendant by Plaintiffs, along with Dry Creek's Board of Trustees and four

15   individual Dry Creek administrators, Lynn Barbaria, Mark Geyer, Andrew Giannini and

16   Evonne Rogers in their official capacities.  (These Defendants will be collectively referred

17   to as the "Local Defendants" unless otherwise specified).  In addition to the Local

18   Defendants, the California Department of Education (the "CDE") and State

19   Superintendent of Public Instruction Tom Torlakson are also named Defendants in the

20   instant lawsuit (the "State Defendants").

21   Both the Local and State Defendants have now moved to dismiss Plaintiffs'

22   Complaint.  This Memorandum and Order will address only the State Defendants' Motion

23   to Dismiss (ECF No. 18), which is brought as both under Federal Rule of Civil Procedure

24   12(b)(6) and as an unenumerated 12(b) motion.  As set forth below, that Motion will be

25   granted in part and denied in part.[1]

26

27   [1] Because oral argument was not deemed of material assistance, this matter was submitted on the briefing.  E.D. Cal. Local Rule 230(g).  The Court also notes that both sides have requested that the Court judicially notice certain documents pursuant to Federal Rule of Evidence 201.  Neither party has objected

28   to those requests and they are granted.

2

1

2

# STATUTORY AND PROCEDURAL FRAMEWORK

3      The procedural and substantive standards for educating disabled students in this

4   state are delineated within the federal IDEA and California's Education Code § 56000,

5   et seq., along with state and federal implementing regulations.  See 34 C.F.R. § 300

6   et seq.; Cal. Code Regs., tit. 5, § 3000, et seq.

7      The IDEA provides that a state must, in order to receive federal financial

8   assistance, have policies and procedures in effect that assure all students with

9   disabilities the right to a FAPE.  20 U.S.C. § 1412(a)(1).  The FAPE requirement means

10  that special education and related services must be provided at public expense, under

11  public supervision and direction, and without charge to the parent or student.  20 U.S.C.

12  §§ 1401(9) and (29).  Each student's special instruction is based upon the development

13  of an Individualized Education Plan ("IEP") by the school district which, along with

14  parental input, is designed to establish both annual and short term objectives and

15  individually designed instruction and services that will enable the child to meet those

16  objectives.  20 U.S.C. § 1414(d); Honig v. Doe, 484 U.S. 305, 311 (1988).

17      Under the IDEA, the CDE, as the so-called state educational agency ("SEA"), has

18  general supervisory responsibility for the overall provision of special education services

19  within California.  20 U.S.C. §§ 1412 (a)(11)(A); 1401(32).  The IDEA contemplates that

20  each individual state will devise its own systems for providing special education services

21  through local educational agencies ("LEAs").  20 U.S.C. § 1401(19).  LEAs apply for SEA

22  funding by submitting a plan that ensures compliance with the IDEA.  20 U.S.C.

23  § 1413(a).  The SEA can choose, but is not required, to be a direct provider for some of

24  whatever services may be necessary.  20 U.S.C. § 1412(b).

25      California elected to participate in IDEA by adopting a state plan and enacting a

26  series of statutes and regulations designed to comply with the federal requirements.

27  Cal. Educ. Code § 56000, et seq., Cal. Code Regs. tit. 5, § 3000, et seq.  California law

28  places primary responsibility for the provision of FAPE to eligible students on the LEA,

1    which is defined as a "school district, a county office of education, a charter school

2    participating as a member of a special education local plan area, or a special education

3    local plan area."  Cal. Educ. Code § 56026.3.  An LEA, like Dry Creek in this instance, is

4    generally responsible for providing the requisite FAPE to students within its jurisdictional

5    boundaries.  Cal. Educ. Code § 48200.  That obligation includes both identifying

6    students with disabilities, determining appropriate educational placements and related

7    services through the IEP process, and providing those needed special education and

8    related services.  Cal. Educ. Code §§ 56300, 45302, 56340, 56344(c).

9          Where, as here, a dispute arises regarding a disabled student's education needs,

10   federal and California law provides two distinct procedural mechanisms by which an

11   LEA's educational decisions may be challenged.  First, either the LEA or the parents can

12   request an administrative "due process" hearing.  20 U.S.C. § 1415(b)(6)(A); (f)(1)(a);

13   34 C.F.R. § 300.507(a); Cal Educ. Code § 56501(a), et seq.; Wyner v. Manhattan Beach

14   Unified Sch. Dist., 223 F.3d 1026, 1028-29 (9th Cir. 2000); cert. denied., 534 U.S. 1140

15   (2002).  Because under the IDEA the entity conducting the due process hearing must be

16   impartial and independent from the CDE (20 U.S.C. § 1415(f)(1)(A); (f)(3)(A)), the CDE

17   meets this obligation in California by contracting with the Office of Administration

18   Hearings ("OAH") for the services of Administrative Law Judges ("ALJs") to preside over

19   due process hearings.  20 U.S.C. § 56504.5(a); Cal. Gov't Code § 27727.  Those

20   hearings are formal in nature and include, inter alia, the right to present evidence and

21   arguments, the right to confront and cross-examine witnesses and to compel their

22   attendance, and the right to obtain written findings of fact by the ALJ following the

23   hearing.  20 U.S.C. § 1415(h); Cal. Educ. Code § 56505(e).  The resulting OAH ruling is

24   deemed a final administrative decision.  20 U.S.C. § 1415(i)(1)(A); Cal. Educ. Code

25   § 56505(h).  Either the parents or the LEA, if "aggrieved" by the final administrative

26   decision, may seek de novo judicial review in a court of competent jurisdiction like this

27   one.  20 U.S.C. § 1415(i)(2)(A); 34 C.F.R. § 300.516; Cal. Educ. Code § 56505(k).  The

28   ///

4

1    remedy represented by the administrative due process hearing must be exhausted

2    before filing a civil action in federal court.  20 U.S.C. § 1415 (1).

3         In addition to the formal due process hearing procedures outlined above, parents

4    may also initiate a more informal, and less adversarial, complaint resolution proceeding

5    ("CRP") with an SEA, which, as stated above, is the CDE here in California.  34 C.F.R.

6    §§ 300.151-153; Cal. Educ. Code § 56500.2; Cal. Code Regs., tit. 5, § 4650.  Unlike the

7    due process hearings process that is both expressly provided in the IDEA and detailed in

8    the regulations, the CRP is described only in the federal regulations.  Lucht v. Molalla

9    River Sch. Dist., 225 F.3d 1023, 1026 (9th Cir. 2000).

10        A CRP and the due process hearing substantially differ.  Unlike the IDEA, which is

11   limited to the identification, evaluation, placement and provision of FAPE, a CRP can

12   contain any allegation that the LEA violated the IDEA or its implementing regulations.

13   34 C.F.R. 300.153(b)(1); Cal. Educ. Code § 56500.2(c)(1); Cal. Code Regs. tit 5,

14   § 4650(a)(7)(E).  Additionally, unlike a due process hearing request, a CRP can be

15   initiated by any individual or organization, cannot be initiated by an LEA against a

16   parent, and need not involve an allegation regarding a specific student.  34 C.F.R.

17   §§ 300.153(a); (b)(4); Cal. Code Regs. tit. 5, § 4600(c).  Additionally, the nature of the

18   proceedings differs to the extent that the CRP does not include full procedural

19   protections like the right to confront and cross-examine witnesses.

20        When a party files a CRP in California, the CDE must investigate, request all

21   documentation and other evidence relating to the allegations and issue an investigation

22   report.  Cal. Educ. Code § 56043(p); Cal. Code Regs. tit. 5, §§ 4663-64.  A parent or

23   LEA can initiate a due process hearing even when a CRP is still pending so long as the

24   issues in the due process request are timely, involve the identification, evaluation,

25   placement or provision of FAPE and are accordingly within the jurisdiction of the OAH in

26   California.  See 20 U.S.C. § 1415(b)(6)(A); (f); Cal Educ. Code § 56501(a).

27   ///

28   ///

1                              **FACTUAL BACKGROUND**[2]

2

3       Everett H. is a disabled student who, according to the Complaint, suffered from

4   delayed myelination and has been diagnosed with an autism spectrum disorder and

5   resulting motor and neurological delays such as language impairment.  Everett attended

6   school within the Dry Creek Elementary School District ("Dry Creek") for approximately

7   five years, from 2007 to March 2, 2012.  During that period, Plaintiffs and Dry Creek had

8   disagreements about the special education program provided by the District to Everett.

9   According to Plaintiffs, Dry Creek made various errors with respect to the provision of

10  FAPE, including in the IEP process, Everett's disability designation placement and

11  providing education to Everett in the least restrictive environment ("LRE").

12      Plaintiffs allege that in order to shoehorn Everett into its special education

13  agenda, Dry Creek intentionally misrepresented its testing as showing that he was

14  "mentally retarded" in order to remove Everett from a general education classroom into a

15  segregated classroom where severely handicapped children were warehoused and

16  where little education purportedly took place.  According to Plaintiffs, beginning in 2010,

17  they resisted Dry Creek's attempt to provide fewer services than contemplated within

18  Everett's IEP dated September 9, 2009.  Specifically, Plaintiffs claim that the district

19  withheld some 290 minutes of daily Specialized Academic Services required under the

20  IEP and failed to rectify that shortcoming even after Plaintiffs demanded that the

21  services called for under the IEP be provided.

22      Dry Creek eventually, on September 12, 2011, filed for a special education due

23  process hearing before the OAH with regard to FAPE and assessment issues.

24      According to Plaintiffs, once they began advocating for Everett's rights in the

25  summer of 2010, the District began to engage in retaliatory activity which intensified in

26  March of 2012, when Plaintiffs claim they had to remove Everett from school for his own

27  _____

28      [2] The allegations in this section are derived from the assertions made by Plaintiffs in their
    Complaint.

safety.  Plaintiffs assert that the District began delaying the IEP meeting process, began misrepresenting what occurred at IEP meetings when they did take place, and began manipulating IEP documentation to delay and mislead Plaintiffs.  In addition, Plaintiffs assert that Dry Creek engaged in retaliatory behavior that endangered Everett's safety, including depriving him of food and refusing to monitor his food intake, sending him home disheveled and dirty with feces, and otherwise subjecting Everett to repeated humiliation.  Plaintiffs further claim that Dry Creek interfered with Plaintiff's attempt to move Everett to another school district.

Between January and October of 2012, when the due process hearing between Plaintiffs and Dry Creek was pending at the OAH, and for a short time thereafter, Plaintiffs filed at least five CRPs against Dry Creek with the CDE which alleged that Cry Creek was out of compliance with special educations laws.  Plaintiffs claim that the CDE found Dry Creek out of compliance with state and federal laws in both Everett's case and others, and issued a report that Dry Creek was in "systemic non-compliance."  On July 25, 2012, several months after Everett left Dry Creek, the District dismissed the OAH case it had initiated.  Given that dismissal, no final administrative due process hearing decision was ever issued on any of the alleged education shortcomings raised by Plaintiffs.

Plaintiffs alleged that Administrative Law Judge ("ALJ") assigned to the case made errors.  They also claim the CDE itself made various errors in handling the CRPs, including, among other claimed mistakes, declining to address and/or investigate some of Plaintiffs' allegations and denying requests for reconsideration.

///

///

///

///

///

///

1                                                   **STANDARD**

2

3        **A.  Rule 12(b)**

4         In the context of alleged IDEA-related violations, failure to exhaust administrative

5 remedies may subject a complaint to an unenumerated 12(b) motion to dismiss.

6 Payne v. Peninsula Sch. Dist., 653 F.3d 863, 881 (9th Cir. 2011).  An unenumerated

7 12(b) motion may go beyond the pleadings and decide disputed issues of fact.  Wyatt v.

8 Terhune, 315 F.3d 1108, 1119-20 (9th Cir. 2003).  Such a motion therefore utilizes "a

9 procedure closely analogous to summary judgment."  Id. at 1119 n. 14.

10        **B.  Rule 12(b)(6)**

11         On a motion to dismiss for failure to state a claim under Federal Rule of Civil

12 Procedure 12(b)(6), all allegations of material fact must be accepted as true and

13 construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins.

14 Co., 80 F.3d 336,337-38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and plain

15 statement of the claim showing that the pleader is entitled to relief" in order to "give the

16 defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell

17 Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41,

18 47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require

19 detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of

20 his entitlement to relief requires more than labels and conclusions, and a formulaic

21 recitation of the elements of a cause of action will not do."  Id. (internal citations and

22 quotations omitted).  A court is not required to accept as true a "legal conclusion

23 couched as a factual allegation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009)

24 (quoting Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a

25 right to relief above the speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles

26 Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)

27 (stating that the pleading must contain something more than "a statement of facts that

28 merely creates a suspicion [of] a legally cognizable right of action.")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief."  Twombly, 550 U.S. at 556 n.3 (internal citations and quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."  Id. (citing 5 Charles Alan Wright & Arthur R. Miller, supra, at § 1202).  A pleading must contain "only enough facts to state a claim to relief that is plausible on its face."  Id. at 570.  If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."  Id.  However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend.  Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend).  Not all of these factors merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight."  Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment."  Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

///

9

1

**ANALYSIS**

2

3      **A.  Administrative Exhaustion as a Prerequisite to Plaintiffs' Claims**

4          By their own admission, State Defendants' "central contention"  underlying this

5  motion rests with the argument that Plaintiffs' claims must be dismissed due to their

6  alleged failure to exhaust administrative remedies.  Defs. Reply, 1:22-25.  State

7  Defendants allege that Plaintiffs' suit is barred in its entirety because of that failure.

8  Since Plaintiffs seek alleged IDEA remedies in the form of compensatory education, the

9  State Defendants assert that as a prerequisite to this civil action, Plaintiffs had to pursue

10  a due process hearing with Dry Creek, as the applicable LEA, to completion.

11          Exhaustion of available administrative remedies is required before filing a civil suit

12  seeking relief that is also available under the IDEA.  20 U.S.C. § 1415(1).  State

13  Defendants point to the Ninth Circuit's recent decision in Payne v. Peninsula Sch. Dist.,

14  653 F.3d 863, for the proposition that Plaintiffs' claims are both unexhausted and subject

15  to dismissal at this juncture.  Defendants correctly cite Payne for the proposition that

16  exhaustion is required: 1) when a plaintiff seeks an IDEA remedy or its functional

17  equivalent; 2) where a plaintiff seeks prospective injunctive relief to alter an IEP or the

18  educational placement of a disabled student; and 3) where a plaintiff is seeking to

19  enforce rights that arise as a result of a denial of FAPE, whether pled as an IDEA claim

20  or otherwise.  653 F.3d at 875.  State Defendants assert that the CRPs submitted to the

21  CDE cannot satisfy this exhaustion requirement.

22          It is not necessary at this juncture to resolve whether or not the CRPs filed by

23  Plaintiff sufficed for exhaustion purposes.  As a preliminary matter, Payne makes it clear

24  that exhaustion is not in fact a jurisdictional issue amenable to disposition by the present

25  motion.  First, with respect to the exhaustion provisions of the IDEA enumerated at

26  20 U.S.C. § 1415(l), the Ninth Circuit observes that "nothing [in that statute] mentions the

27  jurisdiction of the federal courts."  Id. at 869.  The Payne court goes on to find nothing in

28  the relevant jurisdictional statutes requiring exhaustion either.  Id. at 870.  Consequently,

1   Payne held the exhaustion requirement to be not jurisdictional:  "It is not clearly labeled

2   jurisdictional, is not located in a jurisdiction-granting provision, and admits of

3   congressionally authorized exceptions."  Id. at 870-71.  The court therefore held that "the

4   IDEA's exhaustion requirement is a claims processing provision that IDEA defendants

5   may offer as an affirmative defense."  Id. at 867.  Joining the approach adopted by the

6   Seventh and Eleventh Circuit, and overruling any statements to the contrary contained in

7   its earlier decisions,[3] Payne therefore adopted an exhaustion requirement "more

8   flexible" than any "rigid jurisdictional limitation."   It noted that while dismissal may still be

9   had on exhaustion grounds, any assessment in that regard is "better addressed through

10  a fact-specific assessment of the affirmative defense than through an inquiry about

11  whether the court has the power to decide the case at all."  Id. at 870.

12      That reasoning is consistent with Payne's recognition that previous Ninth Circuit

13  precedent directs that non-jurisdictional exhaustion deficiencies, like those alleged here,

14  are subject to an unenumerated motion to dismiss under Rule 12(b).  Id. at 881, citing

15  Wyatt v. Terhune, 315 F.3d at 1119 (collecting cases).  Unlike the present motion,

16  however, which is directed solely to the pleadings, an unenumerated motion to dismiss

17  looks beyond the complaint and may decide disputed issues of fact.  Wyatt, 315 F.3d at

18  1119-20.  In that sense, a Rule 12(b) motion utilizes "a procedure closely analogous to

19  summary judgment."  Id. at 1119 n.14.

20      The need to resolve factual issues here is highlighted by the fact that Plaintiffs

21  claim that various exceptions apply to excuse any argument premised on failure to

22  exhaust.  Two principal exceptions have been recognized by the case law.  First,

23  exhaustion may be excused where resort to administrative remedies would be futile.

24  Second, if the educational agency, here the CDE, has adopted a policy or pursued a

25  practice of general applicability that is contrary to law, exhaustion may also be excused.

26

27      [3] Blanchard v. Morton Sch. Dist.,, 420 F.3d 918, 920-21 (9th Cir. 2005); Witte v. Clark County Sch. Dist., 197 F.3d 1271, 1274 (9th Cir. 1999); and Dreher v. Ampitheater Unified Sch. Dist., 22 F.3d at 228, 231 (9th Cir. 1994) are cited in that regard.

28

1   Doe v. Arizona Dep't of Educ., 111 F.3d 678, 681 (9th Cir. 1997).

2        While both sides devote extensive argument as to whether either of these

3   exceptions may apply to the present matter, it is abundantly clear to this Court that such

4   contentions go well beyond the scope of the present motion.  Excuse on the basis of

5   futility, for example, involves the development of a factual record devoid in this matter,

6   which is based solely on the allegations of the Complaint along with argument of counsel

7   proffered by way of the points and authorities submitted in support of, and in opposition

8   to, State Defendants' motion.  The same reasoning applies equally to whether the CDE

9   adopted any policy or practice of general applicability contrary to law.  All those issues

10  are better served by means of summary judgment and even the enumerated Rule 12(b)

11  motion (upon which State Defendants rely) is a procedure that looks beyond the

12  pleadings in a process closely akin to that of summary judgment.  Wyatt, 315 F.3d at

13  1119.  This case is not in a posture to make such determinations.

14        **B.  Dismissal of Plaintiffs' Second and Ninth IDEA Claims for Relief**

15        State Defendants also contend that Plaintiffs cannot bring an IDEA claim against

16  them in the first instance, which Plaintiffs attempt to do in the Second Claim for Relief,

17  for failure to Provide FAPE in violation of the IDEA, and the Ninth Claim for Relief

18  asserting that State Defendants also failed to monitor, investigate and enforce the IDEA.

19  See 20 U.S.C. § 1411(2)(B); 20 U.S.C. § 1416; 34 C.F.R. § 300.601.  In making that

20  contention, State Defendants claim that the CRPs filed by Plaintiffs with the SDE cannot

21  suffice for purposes of exhaustion.

22        State Defendants' argument fails.  This Court cannot determine as a matter of law

23  based on the information before it that the CRPs presented by Plaintiffs were inadequate

24  for exhaustion purposes.  Plaintiffs allege in their complaint that they filed CRP

25  complaints against the CDE, but that the CDE refused to investigate those claims, and

26  thereby stymied Plaintiffs' attempts to exhaust administrative remedies.  Comp., ¶¶ 48,

27  134.  Plaintiffs go on to allege that the filed additional complaints with both the Office of

28  Civil Rights and the United States Department of Justice regarding both its complaints

12

1   against Dry Creek and its complaints against the CDE.  Id. at ¶¶ 44, 49, 54.

2          The Ninth Circuit has found that CRPs can suffice for exhaustion purposes under

3   several different circumstances.  In Lucht v. Molalla River Sch. Dist., 225 F.3d 1023,

4   1028-29 (9th Cir. 2000), the court found that "the CRP and the due process hearing

5   procedure are simply alternative (or even serial) means of addressing a § 1415

6   complaint" and "[a]lthough different, a CRP is no less a proceeding under § 1415 than a

7   due process hearing."  Then, in Porter v. Bd. of Trustees of Manhattan Beach Unified

8   Sch. Dist., 307 F.3d 1064 (9th Cir. 2002), the Ninth Circuit again confirmed that the CRP

9   can suffice for exhaustion purposes:

10          Our statement in Hoeft that the CRP may serve as a
            substitute for due process system exhaustion is consistent
11          with the traditional exception to exhaustion requirements
            based on futility or inadequacy.  See Honig, 484 U.S. at 327.
12          Where the challenge is to a facially invalid policy, and the
            state refuses to alter the policy after a CRP complaint, then
13          further exhaustion may be excused because the
            administrative body is shown to be biased or has otherwise
14          predetermined the issue before it."  McCarthy, 503 U.S. at
            148.  Exhaustion of a CRP may also render the due process
15          hearing futile where all the educational issues are resolved,
            leaving only issues for which there is no adequate
16          administrative remedy.  See Witte v. Clark County Sch. Dist.,
            197 F.3d 1271, 1275-76 (9th Cir. 1999).  Thus, we agree with
17          the statement in Hoeft that there may be instances when
            exhaustion of the CRP may be a substitute for exhaustion of
18          the due process hearing.

19   Id. at 1073-74, cert. denied, 537 U.S. 1194 (2003) (emphasis added).  Porter further held

20   that because administrative hearing officers are not authorized to adjudicate questions of

21   statutory compliance, and because such non-compliance was alleged by plaintiffs with

22   respect to enforcement of a final order, further administrative exhaustion would have

23   been futile.  Id. at 1074.  Significantly, too, Porter's reference to the instances in which

24   exhaustion can be excused brings up the same factual determinations making the

25   present dismissal request improper as discussed in the previous section of this

26   Memorandum and Order.

27   ///

28   ///

1    Additionally, in their 2004 decision in Christopher S. v. Stanislaus Cnty. Office of

2    Educ., 384 F.3d 1205 (9th Cir. 2004), the Ninth Circuit found the district court to have

3    erred in dismissing for failure to exhaust remedies under the IDEA where CRP

4    complaints had been made, and where the subject school district was out of compliance

5    in its calculations of instructional minutes due autistic students.  The Christopher S. court

6    found that where systemic allegations of this kind were made, the CRP could suffice for

7    exhaustion purposes.  Id. at 1210-11.

8    Not surprisingly, State Defendants argue that these cases are factually

9    distinguishable.  According to Defendants, unlike Christopher S. (where the district was

10   alleged to be out of statutory compliance in the instructional programs it offered autistic

11   students) and Morgan Hill (where a parents' association brought a challenge that CDE

12   was systematically not ensuring FAPE by complying with its monitoring, investigation

13   and enforcement obligations under the IDEA), Plaintiffs seek no similar system-wide

14   relief and focus their grievances on the rights of just one student, Everett.  Although

15   Everett's own rights are unquestionably being pursued, examination of the Complaint

16   shows that additional, more far-reaching, allegations are in fact made.  Paragraphs 58

17   through 60 make this particularly clear:

18          58.  Plaintiffs are excused from initiating further administrative
            proceedings because Plaintiffs allege systemic violations of
19          the administrative complaint process, the State Defendants
            have adopted policies and practices contrary to law, the
20          severity of the State Defendants' violations threaten basic
            statutory goals, and the state policies are challenged in this
21          action, and due process hearing officers are not authorized to
            adjudicate questions of statutory compliance.
22
            59.  Plaintiffs further allege that the CRP process and OAH
23          due process is itself broken, and further pursuing those
            processes would be futile.
24
            60.  The State Defendants have also adopted systemic state
25          policies contravening and in violation of the IDEA and
            [California Education Code] by denying FAPE to Everett,
26          which is a violation severe enough to threaten the basic
            purpose of the IDEA and [the California Education Code].
27

28   Compl., ¶¶ 58-60 (emphasis added).

1        Moreover, as detailed in pages 6 through 8 of Plaintiffs' Opposition, the

2   Complaint specifically identifies 16 illegal policies and practices on CDE's parts, with

3   specific factual examples related to the Plaintiffs' case.  According to the Complaint, the

4   overall policies and practices of the CDE are being challenged, and not simply those

5   related only to a particular student, here Everett.  While the Court recognizes that merely

6   labeling claims as systemic as a way of circumventing the administrative process could

7   make the requirement to exhaust meaningless (see Doe, 111 F.3d at 683), it cannot

8   summarily discount the allegations of the Complaint at this time.  Since the pleadings on

9   their face make a case for systemic violations that, under pertinent case law, bring

10  Plaintiffs' complaint outside individualized FAPE issues applicable to Everett alone, the

11  Court cannot find as a matter of law that exhaustion in general is required, let alone that

12  the CRP procedure resorted to by Plaintiffs under the circumstances was inadequate for

13  that purpose.

14        On a perhaps even more fundamental level, State Defendants allege that there is

15  no private right of action to review a CRP in the first instance.  This argument is

16  incorrect.  As the court in Morgan Hill noted, that position "contradicts Ninth Circuit

17  precedent that entertains parties' appeals from CRP complaints."  Morgan Hill, 2013 WL

18  1326301 at *6 n.3 (citing Christopher S., 384 F.3d at 1211).  Moreover, it bears noting

19  that Plaintiffs assert this matter should not be deemed an appeal at all, since in response

20  to their CRP complaints, the CDE refused to investigate itself, contrary to federal law.

21  This confers, according to Plaintiffs, original jurisdiction against the CDE based on its

22  non-compliant policies and practices, including its failure to investigate itself through the

23  CRP process.  Under either scenario, exhaustion would not be required under its

24  recognized exceptions, including the futility and contrary to law doctrines.

25        In sum, because the Court concludes that Plaintiffs have stated viable IDEA

26  claims against the State Defendants under the circumstances of this case, their

27  dismissal request as to the Second and Ninth Claims for Relief is denied.

28  ///

1
2

### C. Dismissal of Seventh and Eighth Claims for Relief for Failure to State a Claim under § 504

3   Plaintiffs' Seventh and Eighth Claims for Relief both assert violations of § 504 of

4   the Rehabilitation Act.  Section 504 forbids public schools from discriminating against

5   students solely by reason of a disability.  29 U.S.C. § 794(a), (b)(2)(b); 34 C.F.R.

6   § 104.4.  Intentional discrimination, which requires discriminatory animus or deliberate

7   indifference, is required.  Mark H. v. Lemahieu, 513 F.3d 922, 938 (9th Cir. 2008).  The

8   Seventh Claim alleges that the State Defendants "have intentionally discriminated

9   against Everett based on his disability by denying him the benefits of FAPE, by

10   subjecting him to discrimination at school, in violation of § 504 and by refusing and

11   failing to adopt policies, procedure, and practices, or take appropriate measures

12   necessary to ensure that Dry Creek complies with state and federal laws."  Compl.,

13   ¶ 216.  The Eighth Claim is directed to Parents' rights in arguing that the State

14   Defendants have also "intentionally discriminated against Parents based on their right to

15   advocate for Everett in violation of Section 504…"  Id. at ¶ 218.  A retaliation claim under

16   § 504 requires, in addition to knowledge of protection activity, an adverse action along

17   with causal connection between that adverse action and the protected activity.

18   Alex G. v. Bd. of Trustees, 387 F. Supp. 2d 1119, 1128 (E.D. Cal. 2005).

19   State Defendants argue that in both instances Plaintiffs must have exhausted

20   remedies under the IDEA before bringing any § 504 claim for damages that involves an

21   alleged denial of FAPE under either the IDEA or § 504.  While State Defendants cite

22   Payne for that proposition, Payne states only that exhaustion is required where the claim

23   "arises only as a result of a denial of a FAPE, whether under the IDEA or the

24   Rehabilitation Act.  Payne, 653 F.3d at 880 (emphasis added).  As discussed at length

25   above, and as equally applicable here, Payne does not state that exhaustion is

26   jurisdictional in nature, nor can be determined absent factual determinations in a

27   procedure analogous to that employed in assessing the propriety of summary judgment.

28   Nor does Payne state that any claim touching on IDEA issues must be exhausted; it

16

1    recognizes that IDEA exhaustion "does not encompass every challenge concerning a

2    school's treatment of a disabled student," and in particular "does not apply to plaintiffs

3    who claimed that school officials had inflicted physical and emotional abuse on their

4    child…" Id. at 872-73.  Since such allegations are indeed made here, State Defendants'

5    exhaustion argument as to Plaintiffs' § 504 claims is unavailing.

6         State Defendants go on to argue that Plaintiffs have not pled enough facts against

7    them to state a viable § 504 claim in any event.  The gist of State Defendants' argument

8    is that Plaintiffs have pled no facts that they, as opposed to the Local Defendants, either

9    denied Everett meaningful access to any service or program as a result of his disability,

10   or did so with any discriminatory animus or deliberate indifference so as to state a

11   cognizable claim under the Rehabilitation Act.  State Defendants further claim a dearth

12   of any specific allegations against them in the retaliation allegations set forth in the

13   Eighth Claim.  Again, however, the Complaint identified at least 16 alleged instances of

14   discriminatory conduct and retaliation by the State Defendants, as enumerated in pages

15   6-8 of Plaintiffs' complaint.   Those allegations include refusing to provide documents to

16   Plaintiffs as required by law, summarily dismissing requests for reconsideration without

17   considering the evidence submitted, and making various misrepresentations of fact and

18   law to Plaintiffs.  Those allegations are enough to survive a motion to dismiss.  Rule 8(a)

19   requires only a "short and plain statement of the claim showing that the pleader is

20   entitled to relief"; is does not require each and every relevant fact to be included within

21   the complaint.  The State Defendants' Motion to Dismiss the Seventh and Eighth Claims

22   for Relief is denied.

23        **D.  Dismissal of Eleventh Claim for Relief for Failure to State an ADA Claim**

24        Plaintiffs' Eleventh Claim seeks relief from all Defendants for violations of the

25   ADA.  Defendants concede that there is no significant difference in the analysis of rights

26   and obligations created under § 504 and the ADA.  Vinson v. Thomas, 288 F.3d 1145,

27   1152 n.7 (9th Cir. 2002).  This is not surprising since the ADA, like § 504, prohibits denial

28   ///

1   of public services solely by reason of a disability.  Weinreich v. Los Angeles Cnty.

2   Metropolitan Transp. Authority, 114 F.3d 976, 978 (9th Cir. 1997).

3          In moving to dismiss the Eleventh Claim, Plaintiffs rely on the same arguments

4   posited above with respect to § 504.  They contend both that the ADA claim, along with

5   Plaintiffs' § 504 claims, should be dismissed for failure to exhaust administrative

6   remedies and for failure to state a viable claim.  Those arguments fail for the same

7   reasons outlined above with respect to § 504.

8          **E.  Dismissal of Twelfth Claim for Relief under 42 U.S.C. § 1983**

9          Plaintiffs' Twelfth Claim for Relief is a cause of action against State Defendant

10  Tom Torlakson, California's State Superintendent of Public Instruction, in his individual

11  capacity under 42 U.S.C. § 1983 (the individually named Dry Creek administrator

12  defendants are also named as defendants).   Alleged violations of the IDEA, § 504 and

13  the ADA are cited as support for the § 1983 claim, along with underlying constitutional

14  claims.

15         A § 1983 action may be brought for federal statutory violations if "(1) Congress

16  intended the provision to benefit the plaintiff; (2) the right is not overly 'vague and

17  amorphous'; and (3) the statute unambiguously imposes a binding obligation on the

18  states." Alex G. v. Bd. Of Trustees, 332 F. Supp. at 317 (citing Blessing v. Freestone,

19  520 U.S. 329, 340-41 (1997).  Moreover, even if those requirements are satisfied,

20  § 1983 will not provide an enforcement mechanism for a federal statutory right if

21  Congress has demonstrated a contrary intent.  Id. (citing Blessing, 520 U.S. at 341).

22  Congress does not intend for a federal statutory right to be enforced through § 1983 if

23  the right is part of a "comprehensive enforcement scheme that is incompatible with

24  individual enforcement under § 1983."  Id.

25         In Blanchard v. Morton Sch. Dist. 504 F.3d 771 (9th Cir. 2007), the Ninth Circuit

26  joined "the First, Third, Fourth and Tenth Circuits [in holding] that the comprehensive

27  enforcement scheme of the IDEA evidences Congress' intent to preclude a § 1983 claim

28  for a violation of rights under the IDEA."  Id. at 774-75.  Similarly, the Ninth Circuit has

1   also held that Plaintiffs cannot ordinarily vindicate rights created by either § 504 or the

2   ADA through a § 1983 action.  <u>Vinson</u>, 288 F.3d at 1156.

3        Significantly, however, as indicated above, Plaintiffs' § 1983 case is not limited to

4   claims based only on the above described provisions of federal law.  To the contrary,

5   Plaintiffs also assert that Torlakson, along with the other individually named defendants,

6   "acted with bad faith and intentional disregard of Everett's right to equal protection and

7   substantive due process guaranteed by the United States Constitution."  Pls.' Compl.,

8   ¶ 241.

9        Additionally, as Plaintiffs point out, this is not a typical case with respect to IDEA.

10  Plaintiffs' complaint recounts numerous alleged acts of retaliation and misrepresentation

11  which included both physical neglect and psychological humiliation.  Even though that

12  alleged conduct may have originated in an educational setting otherwise falling within

13  the purview of the IDEA, again the Ninth Circuit's <u>Payne</u> decision recognizes that the

14  IDEA "does not encompass every challenge concerning a school's treatment of a

15  disabled student," and in particular may not "apply to plaintiffs who claimed that school

16  official had inflicted physical and emotional abuse on their child."  <u>Payne</u>, 653 F.3d at

17  872-73.  As <u>Payne</u> reasoned, the IDEA and its requirement are not intended to "shield

18  school officials from all liability for conduct that violates constitutional and statutory rights

19  that exist <u>independent</u> of the IDEA and entitles a plaintiff to relief <u>different</u> from what is

20  available under the IDEA."  <u>Id.</u> at 876 (emphasis in original).  Similarly, in the context of

21  alleged § 504 and ADA claims, a § 1983 action may be available under certain

22  circumstances.  <u>See</u> <u>Goleta Union Elem. Sch. Dist., v. Ordway</u>, 166 F. Supp. 2d 1287,

23  1292-93 (C.D. Cal. 2001).

24       The problem with respect to Tom Torlakson's inclusion in the Twelfth Claim for

25  Relief is, according to State Defendants, two-fold.  Defendants first contend that only in

26  limited circumstances does the Eleventh Amendment to the United States Constitution

27  not bar a claim against a state officer sued in his individual capacity.  Defendants then

28  ///

1  argue that the Complaint fails to state facts sufficient to find any liability against

2  Torlakson in any event.

3       Defendants' reliance on the exception to Eleventh Amendment immunity granted

4  under the so-called Ex Parte Young doctrine fails at the onset because the doctrine

5  applies under limited circumstances to state officers sued in their official capacity.

6  Papasan v. Allain, 478 U.S. 265, 277-78 (1986).  Here, the Twelfth Claim is directed

7  against Torlakson only in his individual capacity.  Additionally, application of the Ex Parte

8  Young doctrine requires in any event that the official in question have a connection with

9  the challenged conduct in question as well as direct responsibility for preventing it.

10  Ex Parte Young, 209 U.S. 123, 157 (1908).  That brings us to the question of just what, if

11  any, charging allegations are levied against Torlakson himself.

12       There is no allegation in the Complaint that Defendant Torlakson had any

13  personal role in the events underlying this lawsuit.  As stated above, the Complaint

14  states only generically that Torlakson "acted with bad faith and intentional disregard of

15  Everett's rights" under the United States Constitution, the IDEA and the ADA.  Compl,

16  ¶ 241.  Otherwise the Complaint maintains only that Torlakson "undertook to disregard

17  the oversight and enforcement required of the CDC" and is "therefore individually

18  responsible for the deprivation of rights and malfeasance of permitting the growth of

19  system violations by constituent LEAs such as Dry Creek."  Id. at ¶ 244.  Supervisory

20  liability against Torlakson is therefore claimed.

21       There is no supervisory liability under § 1983, however, absent action by the

22  individual that causes a constitutional deprivation either directly, or by acquiescence

23  through culpable indifference.  Menotti v. City of Seattle, 409 F.3d 1113, 1149 (9th Cir.

24  2005.  Although Plaintiff attempt to assign liability to Torlakson "by virtue of his position

25  over the CDE" (Compl., ¶ 244),  Torlakson cannot be responsible under a "respondeat

26  superior" liability under § 1983 for the claimed malfeasance of others.  Ashcroft v. Iqbal,

27  556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits,

28  ///

1   a plaintiff must plead that each government official, through the official's own individual

2   actions, has violated the Constitution.").

3       The dearth of any allegations that Torlakson participated directly in the events

4   underlying this lawsuit makes the Twelfth Claim fatally insufficient at this time.[4]  Plaintiffs'

5   request to dismiss Torlakson from that claim is therefore granted, with leave to amend.

6       **F.  Dismissal of Third and Tenth Claims for Relief**

7       Plaintiffs' Third Claim for Relief seeks redress for Defendants' alleged failure to

8   provide the supplemental instruction required by the IDEA in violation of California

9   Education Code § 37252.2. The Tenth Claim asserts another state law claim against the

10  State Defendants for violations of California Education Code § 56000, the California

11  statutory scheme that implements IDEA standards in this state.  The State Defendants

12  challenge both claims on grounds that they seek compensatory damages, injunctive and

13  declaratory relief barred by the Eleventh Amendment.

14      Absent unequivocal consent to suit, the Eleventh Amendment "bars suits in

15  federal court, for both retrospective and prospective relief brought against state officials

16  acting in their official capacities alleging a violation of state law." Pena v. Gardner,

17  976 F.2d 469, 473 (9th Cir. 1992) (citing Edelman v. Jordan, 415 U.S. 651, 663 (1974)).

18      State Defendants claim that they have not consented to suit in federal court

19  relative to Plaintiffs' state law claims, and that therefore those claims are barred.  It is

20  uncontroverted, however, that states receiving federal funding under the IDEA waive

21  sovereign immunity under 20 U.S.C. § 1403.  See Pls.' Compl., ¶ 20; M.A. v. State-

22  Operated Sch. Distr. of the City of Newark, 344 F.3d 335, 346 (3rd Cir. 2003) ("One clear

23  and unmistakable component of the IDEA is a state's waiver of Eleventh Amendment

24  immunity.").  Significantly, the CDE admits that "California elected to participate in the

25

26      [4] Although State Defendants also claim that Torlakson is entitled to qualified immunity in any
    event, given the pleadings deficiencies of the Complaint the Court need not make any determination with
27  respect to immunity at this time.  The Court does note, however, that qualified immunity is not generally
    proper at the pleadings state of a case, as opposed to summary judgment by which time a detailed factual
28  record would presumably have been established.  See, e.g., Harlow v. Fitzgerald, 457 U.S. 800, 818
    (1982); St. George v. Pinellas Cnty., 285 F.3d 1334,1337 (11th Cir. 2002).

1    IDEA, adopted a state plan, and enacted a series of statutes and regulations designed to

2    comply with the federal requirements."  Opening  Memo, 4:2-4.  This Court therefore

3    agrees with Plaintiffs that the CDE has waived sovereign immunity as to the California

4    statutes it passed and which it utilizes to ensure compliance with the federal

5    requirements of the IDEA.  This conclusion is underscored by the fact that State

6    Defendants used the IDEA federal funding to implement the California statutes

7    themselves.

8           State Defendants go on to assert that even if Eleventh Amendment immunity

9    does not apply, they are nonetheless entitled to immunity for discretionary acts.  As

10   stated above, however, determining the application of any such immunities at the

11   pleadings stage is disfavored, and the Court declines to do so here.

12

13                                    **CONCLUSION**

14

15          As set forth above, State Defendants' Motion to Dismiss (ECF No. 18) is granted

16   in part and denied in part.  The Motion is GRANTED as to the Twelfth Claim for Relief

17   insofar as that Claim purports to state a claim against Defendant Tom Torlakson in his

18   individual capacity.  In all other respects, the Motion is DENIED.  Plaintiffs may amend

19   their Complaint, should they choose to do so, not later than twenty (20) days after the

20   date this Memorandum and Order is electronically filed.  If no amended complaint is filed

21   within said twenty (20) day period, without further notice to the parties, the causes of

22   action dismissed by virtue of this Memorandum and Order will be dismissed with

23   prejudice

24          IT IS SO ORDERED.

25   Dated:  March 25, 2014

26

27   _____

28   MORRISON C. ENGLAND, JR., CHIEF JUDGE
     UNITED STATES DISTRICT COURT