1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11  EVERETT H., a minor, by and through          No.  2:13-cv-00889-MCE-DAD
    his Guardians Ad Litem REBECCA
12  HAVEY and HEATH HAVEY;
    REBECCA HAVEY, an individual; and
13  HEATH HAVEY, an individual,                  **MEMORANDUM AND ORDER**

14                    Plaintiffs,

15          v.

16  DRY CREEK JOINT ELEMENTARY
    SCHOOL DISTRICT, BOARD OF
17  TRUSTEES OF DRY CREEK JOINT
    ELEMENTARY SCHOOL DISTRICT;
18  MARK GEYER, individually and in his
    official capacity of Superintendent of
19  Dry Creek Joint Elementary School
    District; EVONNE ROGERS,
20  individually in in her official capacity as
    Assistant Superintendent of
21  Educational Services; LYNN
    BARBARIA, individually and in her
22  official capacity as Director of Special
    Education; ANDREW GIANNINI,
23  individually and in his official capacity
    as Principal at Olive Grove Elementary
24  School; CALIFORNIA DEPARTMENT
    OF EDUCATION; and TOM
25  TORLAKSON, individually and in his
    official capacity as State
26  Superintendent of Public Instruction for
    the State of California,
27
                      Defendants.
28

                                        1

1    Through the present action, Plaintiffs Heath and Rebecca Havey, both individually

2    and on behalf of their son Everett H. (hereinafter "Plaintiffs" unless otherwise indicated)

3    allege educational harms based on purported violations of Everett's right as a disabled

4    student to a free and appropriate public education ("FAPE") pursuant to the provisions of

5    the Individuals with Disabilities Education Improvement Act, 20 U.S.C. §§ 1400m et seq.

6    ("IDEA") and various state statutes. Plaintiffs also assert associated violations of Title II

7    of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. ("ADA") and § 504 of

8    the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("§ 504"). Finally, Plaintiffs assert claims

9    under the auspices of 42 U.S.C. § 1983 ("§ 1983"), which include both failure to

10   accommodate claims and claims for civil rights discrimination and retaliation. By way of

11   damages, Plaintiffs seek compensatory education and reimbursement, compensatory

12   and punitive damages, attorneys' fees and injunctive relief.

13   The Dry Creek Joint Elementary School District, Everett's local school district, is

14   named as a Defendant by Plaintiffs, along with Dry Creek's Board of Trustees and four

15   individual Dry Creek administrators.  In addition, Plaintiffs name the California

16   Department of Education (the "CDE") and State Superintendent of Public Instruction

17   Tom Torlakson ("Torlakson" in his official and individual capacities.

18   Torlakson now moves to dismiss himself as a defendant in both his official and

19   individual capacities from Plaintiff's Second Amended Complaint ("SAC").[1]

20

21   **BACKGROUND[2]**

22

23   Everett H. is a disabled student who, according to the Complaint, suffered from

24   delayed myelination and has been diagnosed with an autism spectrum disorder and

25   resulting motor and neurological delays such as language impairment. Everett attended

26   [1] Because oral argument will not be of material assistance, the Court ordered this matter
submitted on the briefs.  E.D. Cal. Local R. 230(g).

27

28   [2] The allegations in this section are derived from the assertions made by Plaintiffs in their Second
Amended Complaint. SAC, May 23, 2014, ECF No. 45.

school within the Dry Creek Elementary School District ("Dry Creek") for approximately

five years, from 2007 to March 2, 2012. During that period, Plaintiffs and Dry Creek had

disagreements about the special education program provided by the District to Everett.

According to Plaintiffs, Dry Creek made various errors with respect to the provision of

FAPE, including in the IEP process, Everett's disability designation placement and

providing education to Everett in the least restrictive environment ("LRE").

Plaintiffs allege that in order to shoehorn Everett into its special education

agenda, Dry Creek intentionally misrepresented its testing as showing that he was

"mentally retarded" in order to remove Everett from a general education classroom into a

segregated classroom where severely handicapped children were warehoused and

where little education purportedly took place. According to Plaintiffs, beginning in 2010,

they resisted Dry Creek's attempt to provide fewer services than contemplated within

Everett's IEP dated September 9, 2009. Specifically, Plaintiffs claim that the district

withheld some 290 minutes of daily Specialized Academic Services required under the

IEP and failed to rectify that shortcoming even after Plaintiffs demanded that the services

called for under the IEP be provided.

Dry Creek, eventually on September 12, 2011, filed for a special education due

process hearing before the OAH with regard to FAPE and assessment issues.

According to Plaintiffs, once they began advocating for Everett's rights in the summer of

2010, the District began to engage in retaliatory activity which intensified in March of

2012, when Plaintiffs claim they had to remove Everett from school for his own safety.

Plaintiffs assert that the District began delaying the IEP meeting process, began

misrepresenting what occurred at IEP meetings when they did take place, and began

manipulating IEP documentation to delay and mislead Plaintiffs. In addition, Plaintiffs

assert that Dry Creek engaged in retaliatory behavior that endangered Everett's safety,

including depriving him of food and refusing to monitor his food intake, sending him

home disheveled and dirty with feces, and otherwise subjecting Everett to repeated

3

1  humiliation. Plaintiffs further claim that Dry Creek interfered with Plaintiff's attempt to
2  move Everett to another school district.

3       Between January and October of 2012, when the due process hearing between
4  Plaintiffs and Dry Creek was pending at the OAH, and for a short time thereafter,
5  Plaintiffs filed at least five CRPs against Dry Creek with the CDE which alleged that Cry
6  Creek was out of compliance with special educations laws. Plaintiffs claim that the CDE
7  found Dry Creek out of compliance with state and federal laws in both Everett's case and
8  others, and issued a report that Dry Creek was in "systemic non-compliance."  On
9  July 25, 2012, several months after Everett left Dry Creek, the District dismissed the
10  OAH case it had initiated.  Given that dismissal, no final administrative due process
11  hearing decision was ever issued on any of the alleged educational shortcomings raised
12  by Plaintiffs.

13       Plaintiffs allege that the Administrative Law Judge ("ALJ") assigned to the case
14  made errors. They also claim the CDE itself made various errors in handling the CRPs,
15  including, among other claimed mistakes, declining to address and/or investigate some
16  of Plaintiffs' allegations and denying requests for reconsideration.  Plaintiffs sent multiple
17  letters addressed to Torlakson explaining Dry Creek's violations as to their treatment of
18  Everett, their failure to abide by the corrective actions required by the CDE, and the
19  CDE's failure to investigate said violations.

20

21  **STANDARD**

22

23       On a motion to dismiss for failure to state a claim under Federal Rule of Civil
24  Procedure 12(b)(6), all allegations of material fact must be accepted as true and
25  construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins.
26  Co., 80 F.3d 336,337-38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and plain
27  statement of the claim showing that the pleader is entitled to relief" in order to "give the
28  defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell

4

1    Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41,

2    47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require

3    detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of

4    his entitlement to relief requires more than labels and conclusions, and a formulaic

5    recitation of the elements of a cause of action will not do."  Id. (internal citations and

6    quotations omitted).  A court is not required to accept as true a "legal conclusion

7    couched as a factual allegation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009)

8    (quoting Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a right

9    to relief above the speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles Alan

10   Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating

11   that the pleading must contain something more than "a statement of facts that merely

12   creates a suspicion [of] a legally cognizable right of action.")).

13        Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket

14   assertion, of entitlement to relief."  Twombly, 550 U.S. at 556 n.3 (internal citations and

15   quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard

16   to see how a claimant could satisfy the requirements of providing not only 'fair notice' of

17   the nature of the claim, but also 'grounds' on which the claim rests."  Id. (citing 5 Charles

18   Alan Wright & Arthur R. Miller, supra, at § 1202).  A pleading must contain "only enough

19   facts to state a claim to relief that is plausible on its face."  Id. at 570.  If the "plaintiffs . . .

20   have not nudged their claims across the line from conceivable to plausible, their

21   complaint must be dismissed."  Id.  However, "[a] well-pleaded complaint may proceed

22   even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a

23   recovery is very remote and unlikely.'"  Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S.

24   232, 236 (1974)).

25        A court granting a motion to dismiss a complaint must then decide whether to

26   grant leave to amend.  Leave to amend should be "freely given" where there is no

27   "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice

28   to the opposing party by virtue of allowance of the amendment, [or] futility of the

1   amendment . . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.

2   Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to

3   be considered when deciding whether to grant leave to amend).  Not all of these factors

4   merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . .

5   carries the greatest weight."  Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,

6   185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that

7   "the complaint could not be saved by any amendment."  Intri-Plex Techs. v. Crest Group,

8   Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006,

9   1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir.

10  1989) ("Leave need not be granted where the amendment of the complaint . . .

11  constitutes an exercise in futility . . . .")).

12          .

13                                        **ANALYSIS**

14

15  Defendant Torlakson is sued under § 1983 in his official and individual capacities for

16  violations of equal protection, due process, the First and Fourth Amendments, Plaintiffs'

17  right to a FAPE under IDEA, and Title II of the ADA.[3]  SAC at 46.

18          **A.      § 1983 Official Capacity**

19          Plaintiffs accuse Torlakson of violating Plaintiffs' rights through "an express

20  policy," "making decisions as the person with final policymaking authority," and failure to

21  train and supervise to an extent manifesting deliberate indifference.  SAC at 47.  The

22  allegations that Torlakson personally failed to train the employees that committed the

23  alleged violations is without factual backing, as is the assertion that Torlakson's inaction

24  was pursuant to an express policy.  These allegations are conclusory and do not meet

25  the standard necessary to withstand a motion to dismiss.  See Twombly, 550 U.S. at 555

26  ("a plaintiff's obligation to provide the grounds of his entitlement to relief requires more

27          [3] Despite the ambiguity in Plaintiffs' SAC, Plaintiffs clarify in their Opposition that only the twelfth
    claim for relief, under § 1983, is alleged against Torlakson in his individual or official capacities.  Pl.'s
28  Opp'n at 19, July 10, 2014, ECF No. 51.

1    than labels and conclusions").

2          The only specific factual allegation regarding Torlakson's culpable inaction

3    included in the SAC is his alleged failure to sanction Dry Creek for persistent

4    noncompliance.  SAC at 38-39.  Because the various forms of relief sought in Plaintiffs'

5    prayer are not specifically apportioned between any of the twelve claims in Plaintiffs'

6    SAC, in construing the SAC in the light most favorable to Plaintiffs, the Court assumes

7    all forms of relief are alleged against Torlakson.  See Cahill v. Liberty Mut. Ins. Co.,

8    80 F.3d 336, 337-38 (9th Cir. 1996).  A claimant can sue for both monetary damages

9    and injunctive relief under § 1983.  Lodestar Co. v. Mono Cnty., 639 F. Supp. 1439,

10   1443 (E.D. Cal. 1986).  Plaintiffs' claims against Torlakson in his official capacity are not

11   viable for purposes of seeking either monetary or injunctive relief.

12         As an initial matter, "State officers in their official capacities, like States

13   themselves, are not amenable to suit for damages under § 1983," thus Plaintiffs' claim

14   for monetary damages against Torlakson in his official capacity are barred. Arizonans for

15   Official English v. Arizona, 520 U.S. 43, 69 (1997).  However, this does not bar a claim

16   for injunctive relief against a state officer in their official capacity under § 1983.

17   Injunctive relief is possible where the officer has "some connection with the enforcement

18   of the [unconstitutional act], or else it is merely making him a party as a representative of

19   the state, and thereby attempting to make the state a party" which the Eleventh

20   Amendment prohibits.  Ex parte Young, 209 U.S. 123, 157, 28 S. Ct. 441, 453, 52 L. Ed.

21   714 (1908).

22         Here, Plaintiffs note that under California law, the State Superintendent of Public

23   Instruction alone has the authority to sanction a noncompliant school district: "The

24   Superintendent may withhold, in whole or in part, state funds or federal funds allocated

25   under [IDEA] from a [school district]  . . . if the Superintendent finds" that the school

26   district failed to comply with the law or an administrative order.  Cal. Educ. Code

27   § 56845.  The Superintendent's authority to sanction in that regard, however, is

28   discretionary, not mandatory.  See id.  In addition, the Superintendent's power to

1   sanction is granted by state law, and "[a] federal court may not grant injunctive relief

2   against state officials on the basis of state law when those officials are sued in their

3   official capacity," else such claims would violate the Eleventh Amendment.  Vasquez v.

4   Rackauckas, 734 F.3d 1025, 1041 (9th Cir. 2013) (quoting Pennhurst State Sch. &

5   Hosp. v. Halderman, 465 U.S. 89, 106 (1984)).

6        Furthermore, suits for injunction can only seek prospective relief.  Papasan v.

7   Allain, 478 U.S. 265, 277-278 (1985).  The Defendant challenges Plaintiff's standing,

8   pointing out that the Plaintiff no longer attends Dry Creek Elementary, where the alleged

9   violations took place.  Mot. to Dismiss at 5.  To show standing, Plaintiff "must

10  demonstrate that he has suffered an injury-in-fact, that the injury is traceable to

11  [Defendant's] actions, and that the injury can be redressed by a favorable decision."

12  Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 946 (9th Cir. 2011).  Additionally,

13  "to establish standing to pursue injunctive relief . . . [Plaintiffs] must demonstrate a real

14  and immediate threat of repeated injury in the future."  Papasan, 468 U.S. at 278.

15       If Plaintiffs sought to attend Dry Creek again in the future, Plaintiffs' alleged

16  injuries might then be repeatable, thus satisfying standing.  See Chapman v. Pier 1

17  Imports (U.S.) Inc., 631 F.3d 939, 946 (9th Cir. 2011) ("to establish standing to pursue

18  injunctive relief, . . . [Plaintiffs] must demonstrate a real and immediate threat of repeated

19  injury in the future") (internal citations omitted).  Yet Plaintiffs, in responding to

20  Defendant's argument that he has no standing, merely argue that "Plaintiffs still reside in

21  California, and the CDE's violative policies and practices affect Plaintiffs without regard

22  to the public school where Everett attends."  Opp'n at 14.  First, this argument is directed

23  at the CDE, not Torlakson in his official or individual capacity.  Second, even if it were

24  directed at Torlakson, the argument that Torlakson's failure to sanction Dry Creek would

25  affect Plaintiffs elsewhere in California is speculative.  Plaintiffs plead no facts to support

26  the conclusion that Torlakson's failure to sanction Dry Creek would cause another school

27  to violate Everett's rights in the way that Dry Creek allegedly has.  Such a speculative

28

1   contention does not meet the standard required to withstand a motion to dismiss

2   pursuant to 12(b)(6).  See Twombly, 550 U.S. at 555.

3   Therefore, Plaintiffs' § 1983 claim against Torlakson in his official capacity is dismissed.

4      **B.      § 1983 Individual Capacity**

5          Plaintiffs' twelfth claim for relief pursuant to § 1983 is also made against

6   Torlakson in his individual capacity as a supervisor, for culpable inaction and deliberate

7   indifference.  SAC at 47-48.  "A defendant may be held liable as a supervisor under

8   § 1983 if there exists either (1) his or her personal involvement in the constitutional

9   deprivation, or (2) a sufficient causal connection between the supervisor's wrongful

10  conduct and the constitutional violation."  Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir.

11  2011).  Plaintiffs must allege that Torlakson "breached a duty to plaintiff which was the

12  proximate cause of the injury."  Id.  This causal connection can be established by alleging

13  that Torlakson "knowingly refus[ed] to terminate a series of acts by others," which

14  Torlakson "knew or reasonably should have known would cause others to inflict a

15  constitutional injury."   Courts in the Ninth Circuit have found that constructive knowledge

16  can suffice.  See Young v. Hawaii, 548 F. Supp. 2d 1151, 1166 (D. Haw. 2008).

17         Plaintiffs claim that Torlakson should be held individually liable because he knew

18  about Dry Creek's violations as Plaintiffs had sent letters addressed to him, because of

19  previous legal actions (one of which involved Dry Creek), and because of the ongoing

20  administrative actions between Everett's parents and Dry Creek.  See SAC at 21, 26, 29,

21  31-32.  Though Plaintiffs assert that Torlakson had actual knowledge of the alleged

22  misconduct perpetrated by the other defendants named in Plaintiffs' SAC, the SAC does

23  not provide any facts as to Torlakson's actual knowledge.  SAC at 47.  Plaintiffs sent

24  Torlakson many letters, but Plaintiffs do not allege that Torlakson read them, nor do they

25  assert any facts supporting that conclusion.  SAC at 35-38.  Neither do Plaintiffs allege

26  that Torlakson was personally familiar with either the related cases that Plaintiffs refer to

27  or the administrative actions that ruled in Plaintiffs' favor.  See SAC at 21, 26, 29, 31-32.

28  Absent any allegations of fact, Plaintiffs' allegations regarding Torlakson's actual

1  knowledge are insufficient to withstand a motion to dismiss.  See Twombly, 550 U.S. at

2  555.

3         Plaintiffs also allege that Torlakson, due to the aforementioned reasons, had

4  constructive knowledge of the alleged constitutional deprivations perpetrated by

5  defendants.  SAC at 47.  That these avenues are sufficient to allege Torlakson's

6  constructive knowledge of the events leading to this action, even taken together, is

7  speculative and insufficient to hold him liable in his individual capacity.  The California

8  system of public education is massive, with over 6.2 million students, 10,000 schools,

9  and over 1,000 distinct school districts.  Torlakson sits at the highest point of this

10 sprawling organization.  The Complaint alleges that the parents sent letters "addressed

11 directly to him," but sending letters to the head of an agency that caters to so many does

12 not suffice for constructive notice in this case.  The very size of the California system of

13 public education renders such a contention speculative.  That legal actions of a similar

14 nature have been filed against the CDE in the past is neither surprising nor enough to

15 suggest that Torlakson should have personal knowledge of their details.  Likewise, the

16 suggestion that Torlakson has or should have personal knowledge of every

17 administrative action filed against the CDE is unrealistic absent facts showing that he

18 knew or should have known of their details.  These allegations do not "raise a right of

19 relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27                                   **CONCLUSION**

28

1       For the reasons set forth above, Defendant Tom Torlakson's Motion to Dismiss

2   Plaintiffs' Second Amended Complaint (ECF No. 48) is GRANTED.  Because Plaintiffs

3   have already been afforded leave to amend, and inasmuch as the Court does not

4   believe that the defects of Plaintiffs' claims against Torlakson can be remedied through

5   additional amendment, no further leave to amend will be permitted.[4]

6       IT IS SO ORDERED.

7   Dated:  August 4, 2014

8

9

10   _____
   MORRISON C. ENGLAND, JR, CHIEF JUDGE
11   UNITED STATES DISTRICT COURT

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27       [4] The Court has reviewed Plaintiffs' Objections to Reply Brief, as well as their request for oral
   argument and/or leave to file surreply, and none of the contentions made in that filing change this result.
28   Plaintiffs' request for oral argument and/or surreply is accordingly denied.

11