1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11  | EVERETT H, a minor, by and through | No. 2:13-cv-00889-MCE-DB
his Guardians Ad Litem REBECCA

12  HAVEY and HEATH HAVEY;
REBECCA HAVEY, an individual; and

13  HEATH HAVEY, an individual        **MEMORANDUM AND ORDER**

14              Plaintiffs,

15        v.

16  DRY CREEK JOINT ELEMENTARY
SCHOOL DISTRICT, BOARD OF

17  TRUSTEES OF DRY CREEK JOINT
ELEMENTARY SCHOOL DISTRICT;

18  MARK GEYER, individually and in his
official capacity of Superintendent of

19  Dry Creek Joint Elementary School
District; EVONNE ROGERS,

20  individually in in her official capacity as
Assistant Superintendent of

21  Educational Services; LYNN
BARBARIA, individually and in her

22  official capacity as Director of Special
Education; ANDREW GIANNINI,

23  individually and in his official capacity
as Principal at Olive Grove Elementary

24  School; CALIFORNIA DEPARTMENT
OF EDUCATION; and TOM

25  TORLAKSON, individually and in his
official capacity as State

26  Superintendent of Public Instruction for
the State of California,

27
              Defendants.
28

1

1    Through the present action, Plaintiffs Heath and Rebecca Havey, both individually

2    and on behalf of their son Everett H. (hereinafter "Plaintiffs" unless otherwise indicated)

3    allege educational harms based on purported violations of Everett's right as a disabled

4    student to a free and appropriate public education ("FAPE") pursuant to the provisions of

5    the Individuals with Disabilities Education Improvement Act, 20 U.S.C. § 1400m et seq.

6    ("IDEA") and various state statutes.  Plaintiffs also assert associated violations of Title II

7    of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA") and § 504 of

8    the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504").  By way of damages,

9    Plaintiffs seek compensatory education and reimbursement, compensatory and punitive

10   damages, and attorneys' fees.

11   The Dry Creek Joint Elementary School District, Everett's local school district,

12   was originally named as a Defendant by Plaintiffs, along with Dry Creek's Board of

13   Trustees and four individual Dry Creek administrators, Lynn Barbaria, Mark Geyer,

14   Andrew Giannini and Evonne Rogers in their official capacities (collectively referred to

15   hereafter as "Dry Creek").  On or about November 23, 2014, however, Plaintiffs settled

16   their claims against Dry Creek by accepting its offer of entry of judgment pursuant to

17   Federal Rule of Civil Procedure 68.[1]  Although that terminated all claims against Dry

18   Creek, Plaintiffs also included the California Department of Education (the "CDE") as a

19   named Defendant in the instant lawsuit, and the claims against the CDE remain ongoing.

20   Presently before the Court are motions for summary judgment, or alternatively

21   partial summary judgment, filed by both Plaintiffs and the CDE.  As set forth below, those

22   Motions are DENIED, except with respect to the CDE's request for summary

23   adjudication as to the Third Claim for Relief, which is GRANTED.[2]  Additionally, because

24   _____

     [1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure.

25   [2] Because oral argument would not have been of material assistance, this matter was submitted
26   on the briefing.  E.D. Cal. Local Rule 230(g).  The Court also notes that both sides have requested that the
     Court judicially notice certain documents pursuant to Federal Rule of Evidence 201.  Neither party has
     objected to those requests and they are granted.  Finally, the Court is aware that CDE has filed numerous
27   objections to certain statements made by Plaintiff Heath Havey in his declaration.  Because the Court has
     not relied on those statements in reaching its decision herein, it need not rule on those objections and
28   declines to do so.

1    the Prayer for Relief contained in Plaintiffs' operative Second Amended Complaint

2    ("SAC") seeks certain damages that are unrecoverable, summary adjudication as to

3    portions of said Prayer will also be GRANTED.

4

5                    **STATUTORY AND PROCEDURAL FRAMEWORK**

6

7            The procedural and substantive standards for educating disabled students in this

8    state are delineated within the federal IDEA and California's Education Code § 56000,

9    et seq., along with state and federal implementing regulations.  See 34 C.F.R. § 300

10   et seq.; Cal. Code Regs., tit. 5, § 3000, et seq.

11           The IDEA provides that a state must, in order to receive federal financial

12   assistance, have policies and procedures in effect that assure all students with

13   disabilities the right to a FAPE.  20 U.S.C. § 1412(a)(1).  The FAPE requirement means

14   that special education and related services must be provided at public expense, under

15   public supervision and direction, and without charge to the parent or student.  20 U.S.

16   §§ 1401(9) and (29).  Each student's special instruction is based upon the development

17   of an Individualized Education Plan ("IEP") by the school district which, along with

18   parental input, is designed to establish both annual and short term objectives and

19   individually designed instruction and services that will enable the child to meet those

20   objectives.  20 U.S.C. § 1414(d); Honig v. Doe, 484 U.S. 305, 311 (1988).

21           Under the IDEA, the CDE, as the so-called state educational agency ("SEA"), has

22   general supervisory responsibility for the overall provision of special education services

23   within California.  20 U.S.C. §§ 1412 (a)(11)(A); 1401(32).  The IDEA contemplates that

24   each individual state will devise its own systems for providing special education services

25   through local educational agencies ("LEAs").  20 U.S.C. § 1401(19).  LEAs apply for SEA

26   funding by submitting a plan that ensures compliance with the IDEA.  20 U.S.C.

27   § 1413(a).  The SEA can choose, but is not required, to be a direct provider for some of

28   whatever services may be necessary.  20 U.S.C. § 1412(b).

                                            3

1    California has elected to participate in IDEA by adopting a state plan and enacting

2    a series of statutes and regulations designed to comply with the federal requirements.

3    Cal. Educ. Code § 56000, et seq., Cal. Code Regs. tit. 5, § 3000, et seq.  California law

4    places primary responsibility the provision of FAPE to eligible students on the LEA,

5    which is defined as a "school district, a county office of education, a charter school

6    participating as a member of a special education local plan area, or a special education

7    local plan area."  Cal. Educ. Code § 56026.3.  An LEA, like Dry Creek in this instance, is

8    generally responsible for providing the requisite FAPE to students within its jurisdictional

9    boundaries.  Cal. Educ. Code § 48200.  That obligation includes both identifying

10   students with disabilities, determining appropriate educational placements and related

11   services through the IEP process, and providing those needed special education and

12   related services.  Cal. Educ. Code §§ 56300, 45302, 56340, 56344(c).

13   The SEA, however, also bears responsibility for ensuring that the LEA fulfills its

14   obligation.  An SEA like the CDE must monitor implementation of the IDEA, make

15   determinations about LEA performance in that regard, enforce the IDEA using

16   appropriate enforcement mechanisms and "ensure that LEAs meet the requirements of

17   the IDEA.  See 34 C.F.R. § 300.600; see also Porter v. CDE, et al., Case no. CV 008402

18   GAF at VI (a) (C.D. Cal. 2004).  Consequently, if an LEA is unable or unwilling to

19   establish and maintain programs in compliance with the IDA, the CDE is responsible for

20   directly providing services to the disabled child.  20 U.S.C. § 1412(a)(12)(B)(ii);

21   20 U.S.C. § 1413 (g)(1) (SEA "shall provide services "directly to children with

22   disabilities"); 34 C.F.R. 300.227 (SEA "must" provide services "directly to children with

23   disabilities").  The Ninth Circuit has also recognized that the IDEA imposes an obligation

24   on the CDE to directly provide services "whenever the local agency refuses or wrongfully

25   neglects to provide a handicapped child with [FAPE]."  Doe v. Maher, 793 F.2d 1470,

26   1492 (9th Cir. 1986).

27   Where, as here, a dispute arises regarding a disabled student's educational

28   needs, federal and California law provides two distinct procedural mechanisms by which

4

1    an LEA's educational decisions may be challenged.  First, either the LEA or the parents

2    can request an administrative "due process" hearing.  20 U.S.C. § 1415(b)(6)(A);

3    (f)(1)(a); 34 C.F.R. § 300.507(a); Cal Educ. Code § 56501(a), et seq.; Wyner v.

4    Manhattan Beach Unified Sch. Dist., 223 F.3d 1026, 1028-29 (9th Cir. 2000); cert.

5    denied., 534 U.S. 1140 (2002).  Because under the IDEA the entity conducting the due

6    process hearing must be impartial and independent from the CDE (20 U.S.C.

7    § 1415(f)(1)(A); (f)(3)(A)), the CDE meets this obligation in California by contracting with

8    the Office of Administration Hearings ("OAH") for the services of Administrative Law

9    Judges ("ALJs") to preside over due process hearings.  20 U.S.C. § 56504.5(a); Cal.

10   Gov't Code § 27727.  Those hearings are formal in nature and include, inter alia, the

11   right to present evidence and arguments, the right to confront and cross-examine

12   witnesses and to compel their attendance, and the right to obtain written findings of fact

13   by the ALJ following the hearing.  20 U.S.C. § 1415(h); Cal. Educ. Code § 56505(e).

14   The resulting OAH ruling is deemed a final administrative decision.  20 U.S.C.

15   § 1415(i)(1)(A); Cal. Educ. Code § 56505(h).  Either the parents or the LEA, if

16   "aggrieved" by the final administrative decision, may seek de novo judicial review in a

17   court of competent jurisdiction like this one.  20 U.S.C. § 1415(i)(2)(A); 34 C.F.R.

18   § 300.516; Cal. Educ. Code § 56505(k).  The

19   remedy represented by the administrative due process hearing must be exhausted

20   before filing a civil action in federal court.  20 U.S.C. § 1415 (1).

21        In addition to the formal due process hearing procedures outlined above, parents

22   may also initiate a more informal, and less adversarial, complaint resolution proceeding

23   ("CRP") with an SEA, which, as stated above, is the CDE here in California.  34 C.F.R.

24   §§ 300.151-153; Cal. Educ. Code § 56500.2; Cal. Code Regs., tit. 5, § 4650.  Unlike the

25   due process hearings process that is both expressly provided in the IDEA and detailed in

26   the regulations, the CRP is described only in the federal regulations.  Lucht v. Molalla

27   River Sch. Dist., 225 F.3d 1023, 1026 (9th Cir. 2000).

28   ///

1    A CRP and the due process hearing substantially differ.  Unlike the IDEA, which is

2    limited to the identification, evaluation, placement and provision of FAPE, a CRP can

3    contain any allegation that the LEA violated the IDEA or its implementing regulations.

4    34 C.F.R. 300.153(b)(1); Cal. Educ. Code § 56500.2(c)(1); Cal. Code Regs. tit 5,

5    § 4650(a)(7)(E).  Additionally, unlike a due process hearing request, a CRP can be

6    initiated by any individual or organization, cannot be initiated by an LEA against a

7    parent, and need not involve an allegation regarding a specific student.  34 C.F.R.

8    §§ 300.153(a); (b)(4); Cal. Code Regs. tit. 5, § 4600(c).  Additionally, the nature of the

9    proceedings differs to the extent that the CRP does not include full procedural

10   protections like the right to confront and cross-examine witnesses.

11   When a party files a CRP in California, the CDE must investigate, request all

12   documentation and other evidence relating to the allegations and issue an investigation

13   report.  Cal. Educ. Code § 56043(p); Cal. Code Regs. tit. 5, §§ 4663-64.  A parent or

14   LEA can initiate a due process hearing even when a CRP is still pending so long as the

15   issues in the due process request are timely, involve the identification, evaluation,

16   placement or provision of FAPE and are accordingly within the jurisdiction of the OAH in

17   California.  See 20 U.S.C. § 1415(b)(6)(A); (f); Cal Educ. Code § 56501(a).

18

19                                   **FACTUAL BACKGROUND**

20

21   Everett H. is a disabled student who, according to the Complaint, suffered from

22   delayed myelination and has been diagnosed with an autism spectrum disorder and

23   resulting motor and neurological delays such as language impairment.  Everett was

24   consequently identified as a disabled student with special needs entitled to special

25   education and related services.  Everett attended school within the Dry Creek Joint

26   Elementary School District for approximately five years, from 2007 to March 2, 2012.

27   During that period, Plaintiffs and Dry Creek had disagreements about the special

28   education program provided by the District to Everett.  According to Plaintiffs, Dry Creek

1   made various errors with respect to the provision of FAPE, including in the IEP process,

2   Everett's disability designation placement and providing education to Everett in the least

3   restrictive environment ("LRE").

4       Plaintiffs allege that in order to shoehorn Everett into its special education

5   agenda, Dry Creek intentionally misrepresented its testing as showing that he was

6   "mentally retarded" in order to remove Everett from a general education classroom into a

7   segregated classroom where severely handicapped children were warehoused and

8   where little education purportedly took place.  According to Plaintiffs, beginning in 2010,

9   they resisted Dry Creek's attempt to provide fewer services than contemplated within

10  Everett's last IEP, dated September 9, 2009.  Specifically, Plaintiffs claim that the district

11  withheld some 290 minutes of daily Specialized Academic Instruction ("SAI") required

12  under the IEP and failed to rectify that shortcoming even after Plaintiffs demanded that

13  the services called for under the IEP be provided.

14      Dry Creek alleges that because Everett began attending a general education full-

15  time in May of 2010, the obligations set forth in the September 9, 2009 IEP were

16  changed through mutual agreement.  Dry Creek eventually, on September 12, 2011,

17  filed for a special education due process hearing before the OAH with regard to FAPE

18  and assessment issues.  That resulted in a "stay put" order of October 3, 2011, which

19  found that because of Everett's general education placement he was not entitled to

20  receive all the SAI contemplated within his September 9, 2009 IEP.

21      According to Plaintiffs, once they began advocating for Everett's rights in the

22  summer of 2010, the District began to engage in retaliatory activity which intensified in

23  March of 2012, when Plaintiffs claim they had to remove Everett from school for his own

24  safety.  Plaintiffs assert that the District began delaying the IEP meeting process, began

25  misrepresenting what occurred at IEP meetings when they did take place, and began

26  manipulating IEP documentation to delay and mislead Plaintiffs.  In addition, Plaintiffs

27  assert that Dry Creek engaged in retaliatory behavior that endangered Everett's safety,

28  including depriving him of food and refusing to monitor his food intake, sending him

1  home disheveled and dirty with feces, and otherwise subjecting Everett to repeated

2  humiliation.  Plaintiffs further claim that Dry Creek interfered with Plaintiff's attempt to

3  move Everett to another school district.

4        Between January and October of 2012, when the due process hearing between

5  Plaintiffs and Dry Creek was pending at the OAH, and for a short time thereafter,

6  Plaintiffs filed at least five CRPs against Dry Creek with the CDE which alleged that Cry

7  Creek was out of compliance with special educations laws.   On January 6, 2012, for

8  example, Plaintiff filed a CRP which asked the CDE to remediate Dry Creek's failure to

9  provide required SAI services.  This resulted in an April 3, 2012, finding by the CDE that

10  Everett had indeed "not receive[d] 290 minutes per day, 5 times per week of SAI

11  between January 9, 2011 and October 3, 2011."  Plaintiffs' Statement of Undisputed

12  Material Facts ("PUF") No. 14.  According to Plaintiffs, however, the CDE obtained

13  reconsideration of these findings based on a false argument that they had orally revoked

14  their consent to Everett's SAI services.  Plaintiffs contend that the CDE failed to

15  investigate the illegality of these conclusions despite being informed of their

16  shortcomings by Plaintiffs.  Id. at Nos. 15-16

17        Plaintiffs also filed another CRP on January 6, 2012, which alleged that Dry Creek

18  had misrepresented Everett's classification as mental retardation in order to remove him

19  from his least restrictive environment and placing him in a special day class that resulted

20  in a denial of FAPE to Everett for three years.  Id. at No. 26.  Even after obtaining a

21  report that Everett's overall learning capacity was normal, Plaintiffs claim that the CDE

22  did not investigate their complaint that Everett was being denied FAPE by being

23  misclassified.  Id. at No. 27

24        Plaintiffs filed the present lawsuit on May 6, 2013.  As against CDE, the Second

25  Claim for Relief alleges that the CDE violated Everett's right to a FAPE by failing to

26  ensure that proper services were provided.  Although CDE was required to both

27  "ensure," and where necessary to "directly provide," those services, Plaintiffs claim that

28  in fact Everett was denied FAPE by Dry Creek when it failed to follow the last agreed-

1   upon IEP, which required 1450 minutes per week of SAI, between May 28, 2010, and

2   March 2, 2012.   Despite filing complaints against CDE through the CDP process, and

3   even though the CDE found that SAI services had not been provided, Plaintiffs still claim

4   that the CDE failed to see to it that Everett's needed services were furnished.

5          In addition to failing to ensure the provision of FAPE, through their Ninth Claim for

6   Relief, Plaintiffs also contend that CDE further violated its obligation to "monitor

7   implementation of" and "investigate and enforce the IDEA."  Pls.' SAC, ¶ 238.  Plaintiffs

8   further claim that the CDE is not only responsible for IDEA violations, but also for

9   violations under Section 504 and the ADA, as alleged in their Seventh and Eleventh

10  Claims for Relief, respectively. Finally, Plaintiffs also allege retaliation by the CDE under

11  both Section 504 and the ADA in their Eighth and Eleventh Claims and contend that

12  CDE never required Dry Creek to provide supplemental education, or provide the

13  supplemental education itself, as set forth in the Third Claim for Relief.

14         Both Dry Creek and the CDE filed motions to dismiss in response to Plaintiffs'

15  lawsuit.  Ultimately, the Court denied most of Defendants' claims on March 26, 2015,

16  finding, inter alia, that resort to the CRP process may exhaust administrative remedies,

17  and that the CDE could consequently be sued on the claims identified.   ECF No. 35.

18  The Court found that filing a complaint under the CRP process was sufficient to exhaust

19  administrative remedies, that a private right of action exists for purposes of reviewing a

20  CRP, and that Plaintiffs stated viable claims against the CDE.

21         Plaintiffs' currently operative pleading, the Second Amended Complaint, was

22  subsequently filed with leave of court on May 23, 2014.  Although CDE subsequently

23  asked the Court to reconsider its prior ruling on the Motion to Dismiss, that Motion was

24  denied by Order filed September 1, 2015.  ECF No. 88.

25         On November 24, 2015, as indicated above, Plaintiffs Accepted a Rule 68 Offer of

26  Judgment served by Dry Creek, which terminated Dry Creek's inclusion as a defendant

27  in this matter.

28  ///

1    In now seeking summary judgment, Plaintiffs aver that the CDE violated as a

2    matter of law its obligations to investigate, monitor and enforce the IDEA.  Plaintiff claims

3    they have demonstrated the CDE's liability in this regard by its failure to investigate at

4    least 20 violations by Dry Creek complained of by Plaintiffs. Plaintiffs further claim they

5    have established as a matter of law that the CDE acted with deliberate indifference,

6    thereby justifying damage awards under both Section 504 and the ADA.  Finally, Plaintiff

7    urges the court to find that the CDE promulgated illegal policies and practices and

8    engaged in acts of discrimination and retaliation directly.

9    The CDE, on the other hand, through its corresponding summary judgment

10   request makes several arguments.  First, it argues that Plaintiffs cannot prevail at trial

11   because a necessary party, Dry Creek, is no longer a party to this action.  Second,

12   according to CDE, it is also entitled to summary judgment because Plaintiffs failed to

13   exhaust their administrative remedies as required by law.  Third, the CDE claims that

14   each and every of Plaintiffs' claims is barred by the applicable statute of limitations.

15   Fourth and finally, the CDE claims that Plaintiffs have not stated viable claims in any

16   event.

17

18   **STANDARD**

19

20   The Federal Rules of Civil Procedure provide for summary judgment when "the

21   movant shows that there is no genuine dispute as to any material fact and the movant is

22   entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v.

23   Catrett, 477 U.S. 317, 322 (1986).  One of the principal purposes of Rule 56 is to

24   dispose of factually unsupported claims or defenses.  Celotex, 477 U.S. at 325.

25   Rule 56 also allows a court to grant summary judgment on part of a claim or

26   defense, known as partial summary judgment.  See Fed. R. Civ. P. 56(a) ("A party may

27   move for summary judgment, identifying each claim or defense—or the part of each

28   claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v.

1   Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995).  The standard that applies to a

2   motion for partial summary judgment is the same as that which applies to a motion for

3   summary judgment.  See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic

4   Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary

5   judgment standard to motion for summary adjudication).

6          In a summary judgment motion, the moving party always bears the initial

7   responsibility of informing the court of the basis for the motion and identifying the

8   portions in the record "which it believes demonstrate the absence of a genuine issue of

9   material fact."  Celotex, 477 U.S. at 323.  If the moving party meets its initial

10  responsibility, the burden then shifts to the opposing party to establish that a genuine

11  issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith

12  Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S.

13  253, 288-89 (1968).

14         In attempting to establish the existence or non-existence of a genuine factual

15  dispute, the party must support its assertion by "citing to particular parts of materials in

16  the record, including depositions, documents, electronically stored information,

17  affidavits[,] or declarations . . . or other materials; or showing that the materials cited do

18  not establish the absence or presence of a genuine dispute, or that an adverse party

19  cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  The

20  opposing party must demonstrate that the fact in contention is material, i.e., a fact that

21  might affect the outcome of the suit under the governing law.  Anderson v. Liberty Lobby,

22  Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and

23  Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).  The opposing party must also

24  demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is

25  such that a reasonable jury could return a verdict for the nonmoving party."  Anderson,

26  477 U.S. at 248.  In other words, the judge needs to answer the preliminary question

27  before the evidence is left to the jury of "not whether there is literally no evidence, but

28  whether there is any upon which a jury could properly proceed to find a verdict for the

1  party producing it, upon whom the <u>onus</u> of proof is imposed." <u>Anderson</u>, 477 U.S. at 251

2  (quoting <u>Improvement Co. v. Munson</u>, 81 U.S. 442, 448 (1871)) (emphasis in original).

3  As the Supreme Court explained, "[w]hen the moving party has carried its burden under

4  Rule [56(a)], its opponent must do more than simply show that there is some

5  metaphysical doubt as to the material facts." <u>Matsushita</u>, 475 U.S. at 586.  Therefore,

6  "[w]here the record taken as a whole could not lead a rational trier of fact to find for the

7  nonmoving party, there is no 'genuine issue for trial.'" <u>Id.</u> at 587.

8      In resolving a summary judgment motion, the evidence of the opposing party is to

9  be believed, and all reasonable inferences that may be drawn from the facts placed

10  before the court must be drawn in favor of the opposing party.  <u>Anderson</u>, 477 U.S. at

11  255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

12  obligation to produce a factual predicate from which the inference may be drawn.

13  <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>,

14  810 F.2d 898 (9th Cir. 1987).

15

16                                    **ANALYSIS**

17

18      **A.  Absence of Indispensable Party**

19      In the event that a person or entity cannot be joined in existing litigation, Rule 19

20  provides that a court must determine whether, in equity and good conscience, the action

21  should proceed among the existing parties or should be dismissed.  Fed. R. Civ. P.

22  19(b).  Among the factors that should be considered in that determination include the

23  extent to which any judgment rendered in that party's absence might prejudice existing

24  parties.  <u>Id.</u>

25      Here, as indicated above, Plaintiffs settled their claims against Dry Creek by

26  accepting, on November 24, 2015, a Rule 68 Offer of Judgment served by Dry Creek.

27  CDE argues that because that acceptance terminated Dry Creek's inclusion as a

28  defendant in these proceeding, any claims still being asserted against the CDE in the

1   wake of that settlement cannot proceed because of the absence of an indispensable

2   party.  The CDE states unequivocally that "Dry Creek is a required party because all

3   claims against the CDE are premised on underlying allegations against Dry Creek."

4   CDE's Reply, ECF No. 127, 1:14-15.  The CDE also asserts that virtually all of Plaintiffs'

5   claims relate back to shortcomings stemming from the September 9, 2009, IEP

6   developed by Dry Creek.  According to the CDE, the fact that Plaintiffs have resolved

7   their claims against Dry Creek by settlement means that there will be no judicial

8   determination between Plaintiffs and Dry Creek as to whether Dry Creek violated their

9   rights.  The CDE argues that such liability must be established against Dry Creek before

10  it can be held accountable for any inadequacies on Dry Creek's part.  The CDE claims it

11  will be clearly prejudiced should it be required to defend not only its own position but

12  also whether or not Dry Creek shirked its own responsibilities to Plaintiffs.

13          The CDE's argument ignores the fact that the CDE has an independent obligation

14  to ensure compliance with the IDEA.  It must monitor implementation of the IDEA, make

15  determinations about LEA performance in that regard, enforce the IDEA using

16  appropriate enforcement mechanisms and ensure that LEAs meet the requirement of the

17  IDEA.   See 34 C.F.R. § 300.600; see also Porter v. CDE, et al., Case no. CV 008402

18  GAF at VI (a) (C.D. Cal. 2004).  Consequently, as indicated above, if an LEA like Dry

19  Creek is unable or unwilling to establish and maintain programs in compliance with the

20  IDA, the CDE is responsible for directly providing services to the disabled child.  20

21  U.S.C. § 1412(a)(12)(B)(ii); 20 U.S.C. § 1413 (g)(1) (SEA "shall provide services "directly

22  to children with disabilities"); 34 C.F.R. 300.227 (SEA "must" provide services "directly to

23  children with disabilities").   The Ninth Circuit itself has made it clear that the IDEA

24  imposes an obligation on the CDE to directly provide services when an LEA is unable or

25  unwilling to provide eligible students  with a FAPE.  Doe v. Maher, 7993 F.2d at 1492.

26          The CDE's claim that all allegations made against it relate solely to the

27  September 9, 2009, IEP is also misplaced.  To the contrary, Plaintiffs have alleged that

28  the CDE has directly failed to investigate at least 20 violations of various kinds identified

1   by Plaintiffs as having been committed by Dry Creek.  Plaintiffs allege that through its

2   own policies and practices, the CDE has created an environment where districts like Dry

3   Creek "can act with impunity because they know they will not be subject to meaningful

4   remediation."  Pls.' Mot., ECF 123-1, 2: 22-24.  Plaintiffs further allege that by acting with

5   deliberate indifference to the violations of their rights by Dry Creek, the CDE further

6   violated Section 504 and the ADA.  All of these purported failures go well beyond the

7   letter of Everett's IEP despite the CDE's arguments otherwise.

8          Significantly, too, the CDE's contention that Dry Creek's own responsibility cannot

9   now be addressed by these proceedings also misses the mark.  The CDE can, should it

10  choose to do so, seek leave to file a cross-claim against Dry Creek based on any of Dry

11  Creek's own shortcomings, or subpoena Dry Creek witnesses to testify in the case as it

12  is now configured.

13          **B.  Statute of Limitation Concerns**

14          In addition to alleging as a preliminary matter that this action cannot proceed

15  against CDE alone in the absence of Dry Creek as an indispensable party, the CDE

16  further argues that Plaintiffs' claims against it are barred by the applicable statute of

17  limitations in any event.  The IDEA's statute of limitations is two years pursuant to 20

18  U.S.C. § 1415(b)(6)(B).  Although Section 504 and the ADA are silent on their face with

19  respect to any applicable limitations period, case law has generally found the statutory

20  bar in such claims to also be two years, whether by borrowing the IDEA rule or by

21  looking to the most closely analogous state statute of limitations.  P.P. v. West Chester

22  Area Sch. Dist., 585 F.3d 727, 736-37 (3rd Cir. 2009) (using IDEA period); Doran v.

23  Holiday Quality Foods, Inc., 2000 WL 34564100 at *2 (E.D. Cal. 2000), *revd. and*

24  *remanded on other grounds*, 293 F.3d 1133, 1137 n.2 (applying state personal injury

25  statute of limitations).  Because Plaintiffs did not file their initial complaint until May 6,

26  2013, the CDE accordingly argues that it cannot be potentially responsible for any

27  misconduct before May 6, 2011.  That precludes, according to the CDE, Plaintiffs' claim

28  that Everett was misdiagnosed with mental retardation in 2008, which resulted in the boy

1  being improperly relegated to a special education rather than to placement in the less

2  restrictive environment of general education class.

3       The CDE also takes issue with the timeliness of the CRPs that Plaintiffs filed on

4  grounds  that under 34 C.F.R. § 300.153(c) it could review issues going back only one

5  year before the filing of a CRP.  Because Plaintiffs' first CRP was not received in

6  January 6, 2012, more than three and-a-half years after Plaintiffs first registered their

7  disagreement over provision of a FAPE to Everett, the CDE argues that any issues

8  preceding January of 2011 are also time barred.

9       Plaintiffs, on the other hand, point out that the filing of the first CRP, on January 6,

10  2012, was less than two years before the filing of the Complaint on May 6, 2013.

11  Moreover, according to Plaintiffs, once they discovered that Plaintiff was not receiving

12  SAI services provided for by his IEP in January of 2011, they filed their first CRP with the

13  CDE less than a year later.

14        Moreover, the only misconduct alleged against either Dry Creek or the CDE

15  falling outside the applicable statute of limitations in any event rested with the

16  consequences of Everett's misdiagnosis of mental retardation in 2008, and Plaintiffs

17  claim they did not discover that misdiagnosis was incorrect until an IEP meeting until

18  2011.  According to Plaintiffs, Dry Creek did not disclose that it was not providing SAI

19  and related services until January of 2011, after Plaintiffs began questioning in October

20  of 2010 just what services were being provided under the IEP.  Because Plaintiffs claim

21  they relied on misrepresentations by Defendants as to Everett's diagnosis and services,

22  and accordingly neither knew nor should have known of the falsity of those

23  representations until 2011, they allege the statute was equitably tolled during that period.

24  Whether or not equitable tolling indeed applies under the facts of this particular case

25  entails the weighing of disputed issues not amenable to determination on summary

26  judgment, and accordingly the CDE's challenge to Plaintiffs' claims as time barred fails

27  at this juncture.

28  ///

1

### C.  Failure to Exhaust Administrative Remedies

2    Although this Court already rejected, in ruling on the CDE's Motion to Dismiss, the

3    CDE's contention that Plaintiffs failed to exhaust their administrative remedies prior to

4    filing this lawsuit, the CDE reiterates those claims now in moving for summary judgment.

5    In the Court's review, its previous exhaustion analysis is equally applicable here.

6    As before, the CDE alleges that as a prerequisite to filing suit in federal court on

7    special education, Section 504 and ADA claims that seek relief available through an

8    OAH due process hearing, Plaintiffs must first exhaust the OAH process.  Here, since

9    Plaintiffs seek IDEA remedies in the form of compensatory education, the State

10   Defendants assert that as a prerequisite to this civil action, Plaintiffs had to pursue a due

11   process hearing with Dry Creek, as the applicable LEA, to completion.

12   As this Court has already noted, exhaustion of available administrative remedies

13   is required before filing a civil suit seeking relief that is also available under the IDEA.

14   20 U.S.C. § 1415(1).  The CDE points to the Ninth Circuit's recent decision in Payne v.

15   Peninsula Sch. Dist., 653 F.3d 863, for the proposition that Plaintiffs' claims are both

16   unexhausted and subject to dismissal at this juncture.  They correctly cite Payne for the

17   proposition that exhaustion is required: 1) when a plaintiff seeks an IDEA remedy or its

18   functional equivalent; 2) where a plaintiff seeks prospective injunctive relief to alter an

19   IEP or the educational placement of a disabled student; and 3) where a plaintiff is

20   seeking to enforce rights that arise as a result of a denial of FAPE, whether pled as an

21   IDEA claim or otherwise.  653 F.3d at 875.  State Defendants assert that the CRPs

22   submitted to the CDE cannot satisfy this exhaustion requirement.

23   This Court cannot determine as a matter of law that the CRPs presented by

24   Plaintiffs were inadequate for exhaustion purposes under this standard.  Plaintiffs allege

25   that they filed CRP complaints against the CDE, but that the CDE refused to investigate

26   those claims, and thereby stymied Plaintiffs' attempts to exhaust administrative

27   remedies.  SAC, ¶¶ 45, 131.  They further allege that they filed additional complaints

28   with both the Office of Civil Rights and the United States Department of Justice

1  regarding both its complaints against Dry Creek and its complaints against the CDE.  Id.

2  at ¶¶ 41, 46, 51.  Plaintiffs have gone on to point to evidence showing that they

3  repeatedly attempted to complain through the CRP process to the CDE about the CDE,

4  both through CRPs themselves, motions for reconsideration, allegations that the CDE

5  was not following the law, and a detailed letter of July 5, 2012, which stated it was an

6  attempt to exhaust against the CRP.  See Decl. of Jane Canty, ECF No. 116-3,

7  Exhs. 4-13, 15; Decl. of Heath Havey. ECF No. 124-3, Exhs. 1-2.  Admissible evidence

8  also shows that, by way of the CRP process, Plaintiffs exhausted, or tried to exhaust

9  claims pertaining to their contentions under both the IDEA, Section 504 and the ADA, as

10  well as claimed constitutional and California Education Code violations.  Id.   Plaintiffs

11  have also identified the evidence showing their additional exhaustion attempts through

12  the Office of Civil Rights and the Department of Justice.  See Havey Decl., Exhs. 4, 12.

13        The Ninth Circuit has recognized that CRPs can suffice for exhaustion purposes

14  under several different circumstances.  In Lucht v. Molalla River Sch. Dist., 225 F.3d

15  1023, 1028-29 (9th Cir. 2000), the court found that "the CRP and the due process

16  hearing procedure are simply alternative (or even serial) means of addressing a § 1415

17  complaint" and "[a]lthough different, a CRP is no less a proceeding under § 1415 than a

18  due process hearing."  Then, in Porter v. Bd. of Trustees of Manhattan Beach Unified

19  Sch. Dist., 307 F.3d 1064 (9th Cir. 2002), the Ninth Circuit again confirmed that the CRP

20  can suffice for exhaustion purposes:

21           Our statement in Hoeft that the CRP may serve as a
             substitute for due process system exhaustion is consistent
22           with the traditional exception to exhaustion requirements
             based on futility or inadequacy.  See Honig, 484 U.S. at 327.
23           Where the challenge is to a facially invalid policy, and the
             state refuses to alter the policy after a CRP complaint, then
24           further    exhaustion    may    be    excused    because    the
             administrative body is shown to be biased or has otherwise
25           predetermined the issue before it."   McCarthy, 503 U.S. at
             148.  Exhaustion of a CRP may also render the due process
26           hearing futile where all the educational issues are resolved,
             leaving  only  issues  for  which  there  is  no  adequate
27           administrative remedy.  See Witte v. Clark County Sch. Dist.,
             197 F.3d 1271, 1275-76 (9th Cir. 1999).  Thus, we agree with
28           the  statement  in  Hoeft  that  there  may  be  instances  when

1
2

> exhaustion of the CRP may be a substitute for exhaustion of
> the due process hearing.

3
4
5
6
7

Id. at 1073-74, cert. denied, 537 U.S. 1194 (2003) (emphasis added).  Porter further held that because administrative hearing officers are not authorized to adjudicate questions of statutory compliance, and because such non-compliance was alleged by plaintiffs with respect to enforcement of a final order, further administrative exhaustion would have been futile.  Id. at 1074.

8
9
10
11
12
13
14

Because they claim the CDE repeatedly refused to investigate many of their claims as set forth above, Plaintiffs allege that the CDE frustrated their attempts to exhaust administrative remedies and that further attempts to exhaust would have been futile.  To the extent they raise the futility exception to exhaustion, such arguments have been recognized as questions of fact which should not be determined through summary judgment.  See, e.g., Abbott Radiological Associates v. Sullivan, 801 F. Supp. 1012, 1018 (W.D.N.Y. 1992) (whether administrative remedies are futile is a question of fact).

15
16
17
18
19
20
21

Additionally, in their 2004 decision in Christopher S. v. Stanislaus Cnty. Office of Educ., 384 F.3d 1205 (9th Cir. 2004), the Ninth Circuit found the district court erred in dismissing for failure to exhaust remedies under the IDEA where CRP complaints had been made, and where the subject school district was out of compliance in its calculations of instructional minutes due autistic students.  The Christopher S. court found that where systemic allegations of this kind were made, the CRP process could suffice for exhaustion purposes.  Id. at 1210-11.

22
23
24
25

Here, as in Christopher S., the allegations levied against the CDE by Plaintiffs are not limited to Everett's particular case.  Although Everett's own rights are unquestionably being pursued, examination of the SAC shows that additional, more far-reaching, allegations are in fact made.  Paragraphs 55 through 57 make this particularly clear:

26
27
28

> 55. Plaintiffs are excused from initiating further administrative
> proceedings because Plaintiffs allege systemic violations of
> the administrative complaint process, the State Defendants
> have adopted policies and practices contrary to law, the
> severity of the State Defendants' violations threaten basic

1

2

statutory goals, and the state policies are challenged in this action, and due process hearing officers are not authorized to adjudicate questions of statutory compliance.

3

4

56.   Plaintiffs further allege that the CRP process and OAH due process is itself broken, and further pursuing those processes would be futile.

5

6

7

57.   The State Defendants have also adopted systemic state policies contravening and in violation of the IDEA and [California Education Code] by denying FAPE to Everett, which is a violation severe enough to threaten the basic purpose of the IDEA and [the California Education Code].

8    SAC, ¶¶ 58-60 (emphasis added).  The SAC goes on to specifically identify 16 illegal

9    policies and practices on CDE's part, with specific factual examples related to the

10   Plaintiffs' case.  Therefore, the overall policies and practices of the CDE are being

11   challenged, and not just those related to a particular student, here Everett.  Those

12   allegations clearly go beyond the scope of student-specific due process charges over

13   which the OAH could preside.  While the Court recognizes that merely labeling claims as

14   systemic as a way of circumventing the administrative process could make the

15   requirement to exhaust meaningless (see Doe, 111 F.3d at 683), it cannot summarily

16   discount the allegations of the Complaint at this time.  Since the pleadings on their face

17   make a case for systemic violations that, under pertinent case law, bring Plaintiffs'

18   complaint outside individualized FAPE issues applicable to Everett alone, the Court

19   cannot find as a matter of law that exhaustion in general is required, let alone that the

20   CRP procedure resorted to by Plaintiffs under the circumstances was inadequate for that

21   purpose.

22        While the CDE relies on Fairfield-Suisun Unified School Dist. v. California

23   Department of Education, 780 F.3d 968 (9th Cir. 2015) in making an argument to the

24   contrary, that reliance is unavailing.  As a preliminary matter, Fairfield Suisun is factually

25   distinguishable from this case since it involves the right of LEAs, and not parents, to sue

26   the CDE following redisposition of CRP proceedings.  Moreover, while the case did find

27   that the school district, as the LEA, had no implied right of action under § 1415 of the

28   ///

1   IDEA to sue the CDE, the Ninth Circuit limited any extension of its holding in that regard,

2   stating as follows:

3                    Whether parents have an implied right of action to sue state
                    educational agencies for violating the IDEA in the context of
4                    complaint resolution proceedings is a question we need not
                    and do not decide.
5   Id. at 971.

6           On a perhaps even more fundamental level, the CDE continues to claim there is

7   no private right of action to review a CRP in the first instance, despite the Court's

8   rejection of that contention both in ruling on the CDE's Motion to Dismiss and its

9   subsequent request for reconsideration.  The CDE's argument in this respect remains

10  incorrect.  As the court in Morgan Hill noted, such a position "contradicts Ninth Circuit

11  precedent that entertains parties' appeals from CRP complaints."  Morgan Hill, 2013 WL

12  1326301 at *6 n.3 (citing Christopher S., 384 F.3d at 1211).  Neither of the cases cited

13  by the CDE in advocating a contrary finding is persuasive.  As indicated above, the Ninth

14  Circuit in Fairfield-Suisun was careful to avoid any finding that parents like Plaintiffs

15  herein cannot sue the CDE for violating the IDEA in the context of CRP proceedings.

16  Fairfield-Suisun, 780 F.3d at 971.  Additionally, in M.M. v Lafayette School District, 767

17  F.3d 8642 (9th Cir. 2014), while the Ninth Circuit did find that the IDEA did not confer an

18  express right of action on parents to sue the CDE for IDEA violations, it did not make a

19  decision about whether a legally cognizable right could be inferred, stating unequivocally

20  that "we decline to reach whether a private right of action can be implied in §§ 1412 and

21  1415 of the IDEA."  Id. at 861 n.8 (emphasis added).

22          Finally, as Plaintiffs point out, some of Plaintiffs' claims are simply not subject to

23  an exhaustion requirement in any event.  Exhaustion only applies to the extent there is a

24  challenge to the individual identification, evaluation, educational placement, or provision

25  of FAPE to a disabled child.  20 U.S.C. § 1415(b)(6); Christopher S., 384 F.3d at 1210.

26  Exhaustion is not required, for example, on claims related to Everett's parents as

27  opposed to Everett himself, like the Parent's claims under Section 504 for discrimination

28  ///

1   and retaliation for exercising their right to advocate for Everett, or for interference with

2   that right.

3   **D.  California Education Code § 37252.2**

4   Plaintiffs' Third Claim for Relief seeks redress for the CDE's alleged failure to

5   provide, as required by California Education Code § 37252.2, certain supplemental

6   services for students who are recommended for retention at their current grade levels.

7   The CDE argues that unlike the provisions of the IDEA,[3] which obligate the CDE to

8   ensure enforcement with its provisions, there is nothing on the face of §37252.2  which

9   places any implementation responsibility on the CDE as opposed to local school districts

10  only.  The statute, insofar as it pertains here, applies only to the "governing board of

11  each school district maintaining any or all of grades 2 to 9, inclusive."  While there is a

12  provision, at subdivision [h] , which prohibits the State Board of Education from waiving

13  any of the statute's provisions, no such allegation is made here.  In the absence of any

14  direct applicability to the CDE itself, which does appear lacking in this instance, the CDE

15  contends it is not liable for the torts of local school districts or their employees.  Johnson

16  v. San Diego Unified Sch. Dist., 217 Cal. App. 4th 692, 698-700 (1990); Gonzalez v.

17  State, 29 Cal. App. 3d 585, 590-92 (1972).

18  Plaintiffs have offered no opposition to this argument, which appears to be

19  correct.  The CDE's request for summary adjudication as to the Third Cause for Relief is

20  accordingly GRANTED.

21  **E.  Summary Judgment as to Plaintiffs' Remaining Substantive Claims**

22  Plaintiffs move for summary adjudication as to each of their remaining substantive

23  claims.  First, as to their IDEA claims (the Second, Ninth and Tenth Claims for Relief) on

24  grounds that the CDE failed to appropriately  monitor Dry Creek's compliance with

25  special education mandates and to ensure timely correction of noncompliance once

26

27  [3] In ruling on the CDE's Motion to Dismiss, the Court notes it referred to the third Claim for Relief as seeking redress for the failure to provide supplemental instruction as required by the IDEA.  That characterization was incorrect inasmuch as there is no indication that § 37252.2 is a special education

28  statute falling within the purview of the IDEA.

1   identified.  Plaintiffs further claim that the CDE failed to timely and effectively investigate

2   their complaints regarding Everett's failure to receive a FAPE.  According to Plaintiffs,

3   this resulted not only in  failure to receive FAPE in a least restrictive environment, but

4   also abridged Everett's right to be free of discrimination and retaliation.

5          Plaintiffs' main argument as to FAPE is that the CDE failed to ensure that Everett

6   received SAI services in the form of 1450 minutes of instruction per week between May

7   28, 2010 and  March 2, 2012.  Plaintiffs claim that constituted a material failure to

8   implement Everett's IEP.  According to Plaintiffs, it is undisputed that a September 9,

9   2009, agreement was the last agreed-upon IEP, and that said IEP remained in place

10  through March 2, 2012.  Plaintiffs further claim that summary judgment should be

11  granted as to the Second Claim for Relief because the CDE failed to meet its

12  supervisory duties to investigate and remediate Everett's misclassification as mentally

13  retarded despite Plaintiffs' numerous requests, CRPs, and requests for reconsideration.

14  They also argue they are entitled to relief as to their Ninth Cause of Action as well

15  because the CDE, through its acts and omissions, violated Everett's right under the

16  IDEA by failing to appropriately and effectively monitor Dry Creek's compliance with

17  special education mandates and ensure correction of noncompliance once identified.

18  According to Plaintiffs, the CDE failed to appropriately investigate those complaints and

19  to appropriately and effectively enforce the educational mandates of the IDEA.  They

20  similarly contend via their Tenth Claim for Relief, brought under the auspices of the

21  California Education Code, that the CDE has violated Everett's right to receive FAPE in

22  the least restrictive environment and to be free of discrimination and retaliation.

23         Second, Plaintiffs similarly contend they are entitled to judgment on their federal

24  claims for violations of Section 504, as set forth in their Seventh and Eighth Claims,

25  which protect Plaintiffs' right to be free of discrimination and retaliation related to

26  Everett's disability and his parents' rights to freely advocate for those rights.  The

27  Eleventh Claim, for violations of the ADA, affords similar protection for any denial of

28  public services based solely on disability.

1    Resolution of any of these issues requires the Court to weigh innumerable

2    disputed issues.   Between January 6, 2012 and October 9, 2012, Plaintiffs filed at least

3    five CRP complaints with the CDE, along with at least four requests for reconsideration.

4    Just one of those requests for reconsideration, filed on April 12, 2012, made numerous

5    claims that the CDE did not investigate multiple allegations, including claims pertaining

6    to document production and special education records,  allegations that Dry Creek made

7    misrepresentations and manipulated such records, claims that Dry Creek failed to offer

8    the appropriate supplemental instruction, claims that Dry Creek denied Everett FAPE,

9    and claims that Dry Creek deprived Plaintiffs of the opportunity to be meaningful

10   participants in the IEP process and further interfered with Everett's parents' rights to

11   advocate on his behalf during the 2010-2011 and 2011-2012.  Plaintiffs also alleged that

12   Dry Creek refused to discuss Plaintiffs' concerns and recommendations, that they

13   retaliated against Plaintiffs and interfered with Plaintiffs' right to advocate on Everett's

14   behalf, and that Dry Creek denied Plaintiffs the right to challenge misleading information.

15   Finally, Plaintiffs further asserted additional allegations of discrimination under the ADA,

16   claiming that Dry Creek unlawfully coerced, intimidated, threatened and interfered with

17   their rights under the ADA.  See Canty Decl., Exh. 4, pp. CDE 000233-241.

18   Plaintiffs also claim that even where the CDE has addressed allegations made in

19   the CRPs, it has wrongfully interpreted applicable standards in a result-driven effort to

20   find Dry Creek in compliance.  Plaintiffs further contend, in their Seventh Claim for Relief,

21   that the CDE acting in bad faith with gross misjudgment, deliberate indifference and

22   intentional discrimination against Everett by denying him the benefits of FAPE,

23   subjecting him to discrimination at school, and failing to adopt policies, procedures and

24   practices, or take appropriate measures necessary to ensure that Dry Creek complies

25   with state and federal law.  According to Plaintiffs, "there can be no dispute that the CDE

26   knew that its failure to exercise appropriate supervisory authority over Dry Creek was

27   likely to result in a further denial of Everett's right to a FAPE."  Pls.' Mot., ECF No. 123-1,

28   25:3-5.

1    In response to Plaintiffs' numerous filings, the CDE ultimately issued five reports

2  and a reconsideration report relating to Plaintiffs' CRPs.   CDE's Statement of

3  Undisputed Fact Nos. 14-18.  The CDE claims it investigated  Plaintiffs' allegations that

4  Dry Creek had: 1) failed to attach the parent's notes and input to the IEP; 2) failed to

5  consider parental input at a pre-determined IEP; 3) failed to provide records; 4) failed to

6  have a timely IEP in effect; 5) retaliated with respect to observation by an independent

7  assessor; 6) failed to implement the IEP by providing SAI and related services; 7) failed

8  to provide written notice; 8) retaliated with respect to delay in providing Everett's records

9  to a prospective new school; 9) retaliated  having the school's attorney present at a pre-

10  hearing mediation conference with the parents without their consent; and 10) disclosed

11  confidential communications in a pre-hearing mediation conference.  See Canty Decl.,

12  ¶¶ 8, 10-13.   Plaintiffs nonetheless claim that the CDE did not investigate allegations

13  relating to parental input at the IEP as well as other allegations pertaining to retaliation

14  and interference relating to both Section 504 and ADA claims.  On July 5, 2012, for

15  example, Plaintiffs lodged a CRP complaint with the CDE which detailed many of its

16  complaints against the CDE, and a similar follow up complaint was forwarded on

17  September 6, 2012.  See Havey Decl., Exh. 1.

18    Plaintiffs have also identified numerous items of correspondence to the CDE

19  which it claims document facts and evidence that the CDE ignored.  Id. at Exh. 1-3, 6,

20  10-11, 14-15, 17-20, 22-23, 25, 27-30.  In addition, according to Plaintiffs, the CDE has

21  refused to provide documents related to Everett under the Family Educational Rights

22  and Privacy Act ("FERPA') by claiming, contrary to law, that it was not a public agency.

23    The sheer volume of substantive issues, complaints and correspondence

24  presented by this case is, to say the least, voluminous.  Particularly when coupled with

25  intersecting claims under both the IDEA, Section 504 and the ADA, which pertain not

26  only to the provision of FAPE but also to allegations of discrimination and retaliation, the

27  innumerable factual issues that result make any determination on summary judgment

28  impossible.

1

**F.  Prayer for Relief**

2      The CDE argues that it is entitled to summary adjudication as to certain of the

3  remedies sought by Plaintiffs in their Prayer for Relief on grounds that the IDEA limits

4  recoverable damages.

5      Plaintiffs' SAC requests not only injunctive and declaratory relief as to Plaintiffs'

6  entitlement to compensatory education services, but also appropriate compensatory

7  damages and punitive damages.  The CDE points out, however, that compensatory

8  damages may not in fact be awarded as to Plaintiffs' claims made pursuant to the IDEA

9  in the Second, Ninth and Tenth Claims.  C.O. v. Portland Public Schools, 679 F.3d 1162,

10  1166 (9th Cir. 2012); Blanchard v. Morton School Dist., 509 F.3d 934, 938 (9th Cir.

11  2007).  Nor, according to the CDE, can punitive damages be awarded under either the

12  IDEA (Chambers v. School Dist. of Philadelphia, 587 F.3d 176, 185-86 (3d Cir. 2009) or

13  under either Section 504 or the ADA as set forth in the Seventh, Eighth and Eleventh

14  Claims.  Barnes v. Gorman, 536 U.S. 181, 189 (2002).  The CDE further asserts that

15  under Ninth Circuit precedent, compensatory damages are not available for ADA

16  retaliation claims, and, consequently, would appear also unavailable under analogous

17  Section 504 retaliation provisions since the two statutory schemes are generally

18  analyzed in the same manner.  See Alvarado v. Cajun Operating Co., 588 F.3d 1261,

19  1269-70 (9th Cir. 2009).

20      Plaintiffs offer no authority to counter these restrictions on available remedies

21  other than to cite a Third Circuit case, A.W. v. Jersey City Schools, 486 F.3d 791 (3rd

22  Cir. 2007) as to Section 504 that appears contrary to the Ninth Circuit's own Alvarado

23  decision discussed above.

24      Plaintiffs do take issue, however, with the CDE's claim that because Everett left

25  the Dry Creek District nearly four years ago, he has no standing to assert injunctive or

26  declaratory relief since he is currently being home-schooled and consequently cannot

27  show any imminent or threatened injury capable of redress.  Plaintiffs claim they

28  removed Everett from Dry Creek for his own safety, that home-schooling places a "heavy

1  strain and burden" on them as parents, and that, accordingly, assurances by way of

2  injunctive or declaratory relief could permit Everett to return to Dry Creek, where he

3  continues to be geographically zoned, provided that a FAPE can in fact be provided.

4  The Court believes that these considerations mandate a finding that standing to assert

5  injunctive and/or declaratory relief is indeed present.

6

7                                        **CONCLUSION**

8

9          As set forth above, the CDE's Motion for Summary Judgment is GRANTED with

10  respect to Plaintiffs' Third Claim for Relief, which alleges a violation of California

11  Education Code § 37252.2, and with regard to certain relief sought in the prayer to

12  Plaintiffs' Second Amended Complaint.  The CDE's Motion is otherwise DENIED.

13  Plaintiffs' corresponding Cross-Motion for Summary Judgment (ECF No. 123) is also

14  DENIED.  Additionally, because the Court believes this is a matter that may well be

15  amenable at this juncture  to informal resolution, the parties are ordered to participate in

16  a settlement conference with Magistrate Judge Gregory G. Hollows and shall contact

17  Judge Hollows directly within fourteen (14) calendar days from the date this order is

18  electronically signed to schedule that conference.

19          IT IS SO ORDERED.

20  Dated:  September 29, 2016

21

22                                                              MORRISON C. ENGLAND, JR.
                                                                 UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28