1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVERETT H, a minor, by and through his Guardians Ad Litem REBECCA HAVEY and HEATH HAVEY; REBECCA HAVEY, an individual; and HEATH HAVEY, an individual<br><br>Plaintiffs,<br><br>v.<br><br>DRY CREEK JOINT ELEMENTARY SCHOOL DISTRICT, BOARD OF TRUSTEES OF DRY CREEK JOINT ELEMENTARY SCHOOL DISTRICT; MARK GEYER, individually and in his official capacity as Superintendent of Dry Creek Joint Elementary School District; EVONNE ROGERS, individually and in her official capacity as Assistant Superintendent of Educational Services; LYNN BARBARIA, individually and in her official capacity as Director of Special Education; ANDREW GIANNINI, individually and in his official capacity as Principal at Olive Grove Elementary School; CALIFORNIA DEPARTMENT OF EDUCATION; and TOM TORLAKSON, individually and in his official capacity as State Superintendent of Public Instruction for the State of California,<br><br>Defendants. | No. 2:13-cv-00889-MCE-DB<br><br>**MEMORANDUM AND ORDER** |

Through the present action, Plaintiffs Heath and Rebecca Havey, both individually and on behalf of their son Everett H. (hereinafter "Plaintiffs" unless otherwise indicated) alleged educational harms based on purported violations of Everett's right as a disabled student to a free and appropriate public education ("FAPE") pursuant to the provisions of the Individuals with Disabilities Education Improvement Act, 20 U.S.C. §§ 1400m et seq. ("IDEA"), and various state statutes. Plaintiffs also asserted associated violations of Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. ("ADA"), and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"). By way of damages, Plaintiffs seek compensatory education and reimbursement, compensatory and punitive damages, and attorneys' fees. Plaintiffs timely demanded a jury trial pursuant to Federal Rule of Civil Procedure 38(b).[1]

The Dry Creek Joint Elementary School District, Everett's local school district, was originally named as a Defendant by Plaintiffs, along with Dry Creek's Board of Trustees and four individual Dry Creek administrators, Lynn Barbaria, Mark Geyer, Andrew Giannini and Evonne Rogers in their official capacities (collectively referred to hereafter as "Dry Creek"). On or about November 23, 2014, however, Plaintiffs settled their claims against Dry Creek by accepting its offer of entry of judgment pursuant to Rule 68. Although that terminated all claims against Dry Creek, Plaintiffs had also included the California Department of Education (the "CDE") as a named Defendant,[2] and on July 24, 2017 the case proceeded to jury trial with respect to Plaintiffs' claims against the CDE.

Following an eleven-day jury trial, the jury reached a unanimous verdict in favor of the defense, finding that Everett had not been denied a FAPE based on any failure on the part of the CDE to monitor, investigate, and enforce the IDEA. The jury further

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

[2] Plaintiffs also initially sued Tom Torlakson, California's State Superintendent of Public Instruction, but all claims against Torlakson were dismissed by Memorandum and Order filed August 6, 2015 (ECF No. 56).

rejected Plaintiffs' discrimination and retaliation claims under the ADA and Section 504. Presently before the Court is Plaintiffs' renewed Motion for Judgment as a Matter of Law (initially presented during the course of trial at the conclusion of the evidence) pursuant to Rule 50(b). Plaintiffs request that the Court, under Rule 52, issue findings of fact and conclusions of law as to Plaintiffs' IDEA-related claims that correct the jury's erroneous verdict, which they now assert should not have been submitted to the jury in the first place. Alternatively, Plaintiffs move for a new trial under Rules 50(b)(2) and 59. For the reasons set forth below, Plaintiffs' Motion is DENIED.

## STANDARDS

**A.     Findings of Fact and Conclusions of Law**

Rule 52 provides that in an action "tried without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately."

**B.     Motion for Judgment as a Matter of Law ("JMOL")**

A JMOL is proper only when "the evidence permits only one reasonable conclusion and the conclusion is contrary to that reached by the jury." Lakeside-Scott v. Multnomah County, 556 F.3d 797, 802 (9th Cir. 2009) (internal quotation marks and citation omitted); White v. Ford Motor Co., 312 F.3d 998, 1010 (9th Cir. 2002). To justify relief through a JMOL, there must be a "complete absence of probative facts to support the conclusion reached so that no reasonable juror could have found for the nonmoving party." Eich v. Board of Regents for Central Missouri State Univ., 350 F.3d 752, 761 (8th Cir. 2003). While the Court should review the evidence comprising the record, it should "not make credibility determinations or weigh the evidence," and further should construe all evidence in the light most favoring the nonmoving party, here the CDE. Reeves v. Sanderson Plumbing Co., 530 U.S. 133, 150-51 (2000); see also E.E.O.C. v. Go Daddy Software, 581 F.3d 951, 961 (9th Cir. 2009). In assessing a motion for JMOL, then, the jury's verdict is entitled to substantial deference. A.D. v. Calif. Highway Patrol,

712 F.3d 446, 453 (9th Cir. 2013).  The jury's verdict must be upheld if there is sufficient evidence to support its findings, even where contrary findings are possible.  <u>Escriba v. Foster Poultry Farms, Inc.</u>, 743 F.3d 1236, 1242 (9th Cir. 2014).  Because it is a renewal of a pre-verdict Rule 50(a) motion, a post-verdict Rule 50(b) motion is limited to the grounds asserted in the Rule 50(a) motion.  <u>E.E.O.C.</u>, 581 F.3d at 961.  A party cannot properly raise arguments in its renewed motion for JMOL that it did not raise in its Rule 50(a) motion.  <u>Id.</u>

In order to bring the present post-trial motion under Rule 50(b), Defendants must first have moved for JMOL prior to submission of the case to the jury.  Fed. R. Civ. P. 50(a). Here, the requisite motion for partial judgment as a matter of law was made by Plaintiffs, and submitted by the Court, before evidence closed on August 14, 2017. Plaintiffs' Rule 50(a) motion argued that no reasonable jury could find in favor of the CDE as to: (1) Plaintiffs' claim that Everett was denied FAPE because the so-called Special Academic Instruction ("SAI") was discontinued; (2) Plaintiffs' claim that Everett's erroneous classification as being mentally retarded also denied FAPE; and (3) that various affirmative defenses lacked merit.  ECF No. 243.  That allowed Plaintiffs to renew their motion for JMOL after entry of verdict under Rule 50(b) as to those issues. Partial judgment as a matter of law is also available under the statute.  <u>Ace v. Aetna Life Ins. Co</u>., 139 F.3d 1241 (9th Cir. 1997).

      **C.    Motion for New Trial**

As indicated above, as an alternative to their request for JMOL, Plaintiffs advocate for a new trial on grounds that the verdict ultimately reached by the jury was against the weight of the evidence.  That request is consistent with the language of Rule 50(b), which specifically states than a Rule 50(b) motion may include "an alternative or joint request for a new trial under Rule 59."

A district court has discretion to grant a new trial when the jury's verdict is contrary to the "clear weight of the evidence," is based on false evidence, or would result in a miscarriage of justice.  <u>Silver Sage Partners, Ltd. v. City of Desert Hot Springs</u>,

251 F.3d 814, 819 (9th Cir. 2001); Rattray v. City of Nat'l City, 51 F.3d 793, 800 (9th Cir. 1994). The standard for assessing a motion for new trial differs from that applicable to a motion for JMOL under Rule 50(b) inasmuch as even if the verdict is supported by enough evidence to survive a 50(b) challenge, the Court in ruling on a new trial request has the obligation to set aside the verdict under Rule 59(a) if the verdict runs afoul of the "clear weight" of the evidence that has been presented. See Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007).

A verdict is against the clear weight of the evidence when, after giving full respect to the jury's findings, the judge "is left with the definite and firm conviction that a mistake has been committed" by the jury. Landes Const. Co., Inc. v. Royal Bank of Canada, 833 F.2d 1365, 1371-1372 (9th Cir. 1987) (citations omitted). In ruling on a motion for new trial, "the judge can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party." Air-Sea Forwarders, Inc. v. Air Asia Co., Ltd., 880 F.2d 176, 190 (9th Cir. 1989); see also United States v. Kellington, 217 F.3d 1084, 1095 (9th Cir. 2000).

Defendants can move for a partial new trial as long as the issues on which a new trial is sought are distinct enough that retrial as to those issues is not unjust to the non-moving party, here Plaintiffs. Pumphrey v. K.W. Thompson Tool Co., 62 F.3d 1128, 1133-34 (9th Cir. 1995).

**ANALYSIS**

**A.  Findings of Fact and Conclusions of Law**

Plaintiffs initially argue that their equitable claims under the IDEA were not properly subject to adjudication by the jury, and contend that judgment under Rule 52 is accordingly warranted. See Pls.' Mot, ECF No. 261, 3:16-18. Because Rule 52 only requires that findings of fact and conclusions of law be issued following a bench trial, Plaintiffs appear to be urging this Court to issue findings of fact and conclusions of law

5

that run counter to the jury's findings and mandate that a different judgment be entered as a matter of law. The Court declines to do so.

First, with regard to Plaintiffs' request under Rule 52, that request runs counter to the position previously taken by Plaintiffs in this matter and must accordingly fail. Plaintiffs demanded a trial by jury in the very first pleading filed in this action, their own complaint. ECF No. 1, ¶ 5. On November 1, 2016, the CDE moved to strike Plaintiffs' jury demand as to the Second and Ninth Causes of Action, which encompass IDEA violations, on grounds that Plaintiffs were not entitled to a jury trial on IDEA claims. ECF No. 143. The CDE further alleged that Plaintiffs were not entitled to a jury trial as to those portions of the Eleventh and Eighth Causes of Action with respect to the retaliation component of Plaintiffs' claims under the ADA and Section 504. Id. Plaintiffs opposed the CDE's motion on grounds that the claims for which they had a clear right to trial by jury were so "inextricably intertwined" with IDEA and other claims that any bench trial would interfere with that right. As Plaintiffs argued:

> Plaintiffs have a right to a jury trial and compensatory damages on the ADA Title II, Section 504, Constitutional claims, and for the willfulness and deliberate indifference issues alleged in the Second Amended Complaint. The Court did not strike or dismiss any of those claims, and **the IDEA FAPE claims are inextricably intertwined with the other claims, such that a bench trial on any of the claims raises the danger of denying Plaintiffs their right to a jury.**

ECF No. 147, 4:9-14 (emphasis added). Plaintiffs went on to unequivocally represent that "[a] jury trial is appropriate for all causes of action to avoid infringing on Plaintiffs' constitutional rights" for such trial. Id. at 5:14-15.

By Memorandum and Order filed May 15, 2017, the Court found in Plaintiffs' favor. In denying the CDE's Motion to Strike, it found that where, as here, equitable and legal claims joined in a lawsuit raise similar factual issues, the equitable claims (under the IDEA and related statutory provisions) cannot be separated and tried first because the court's determination of the facts on the equitable claims could impair the objecting party's right to a full trial on the legal claims. ECF No. 176, 4:16-20.

Some two months later, on July 11, 2017, Plaintiffs submitted a fifty-page verdict form that included a plethora of fact-finding interrogatories. Plaintiffs argue that the responses to those interrogatories would permit the jury to serve in a non-binding "advisory" capacity. Significantly, in earlier arguing that the jury trial was necessary to avoid impinging on Plaintiffs' rights, Plaintiffs nowhere suggested in any way that the jury's role would merely be an advisory one. Indeed, the Court advised the parties that it would not appoint an advisory jury in accordance with its earlier decision—as advocated by Plaintiffs—that the jury, and not the Court, would make all determinations.[3] Significantly, there is no evidence that Plaintiffs objected to the Court's ultimate decision to prepared jury instructions and verdict forms as to all claims, including the IDEA claims.

Plaintiffs distance themselves still further from their original position in the present Motion. They argue that the Court should have issued findings of fact and conclusions of law in accordance with Rule 52's requirement for a bench trial. Taking a squarely different tack, Plaintiffs now state that "because the IDEA claims are equitable and not subject to a jury trial, findings and conclusions by the Court under Rule 52 [are] warranted to determine violations of the IDEA under the preponderance of the evidence standard." Pls.' Mot., ECF No. 261, 4:9-10.

Plaintiffs' own conduct precludes them from making any such argument at the present juncture. Not only did Plaintiffs request a jury trial in their complaint and fail to object to jury instructions and verdict forms that had the jury decide all issues, they also squarely opposed the CDE's Motion to Strike the jury demand as to the IDEA and related causes of action. Under the common law concept of "invited error" a party, like Plaintiffs herein, who seeks and obtains a particular ruling (that all claims should be decided by a jury) is estopped from complaining about the ruling thereafter. <u>DeLand v. Old Republic Ins. Co.</u>, 758 F.2d 1331, 1336 (9th Cir. 1985). Consequently, the Court

///

---

[3] The verdict form ultimately adopted did not include the multiple interrogatories initially proposed by Plaintiffs.

7

declines to issue findings of fact and conclusions of law in a case already decided by the jury at Plaintiffs' request.

**B.     JMOL**

The Court now turns to whether Plaintiffs are nonetheless entitled to judgment as a matter of law in their favor under Rule 50(b) despite the jury's defense verdict. Plaintiffs initially claim, in accordance with the Rule 50(a) motion they proffered prior to the close of evidence, that there was no factual basis for the jury to not have concluded that Everett was entitled to a FAPE in the form of SAI services between August 2010 and March 2, 2012. Plaintiffs assert that because the CDE must have policies and procedures in place to ensure that all students with disabilities receive a FAPE, it is responsible for providing the appropriate services if the local educational agency, here Dry Creek, is unable or unwilling to do so. ECF No. 138, p. 4. According to Plaintiffs, because there are no documents signed by Everett's parents revoking their consent to SAI services under the last September 9, 2009 IEP plan signed by the parties, it is entitled to judgment on that issue as a matter of law.

In making that contention, however, Plaintiffs misapprehend the terms of the Stay Put Order issued by California's Office of Administrative Hearings ("OAH") on October 3, 2011. That Order explains the purpose of a stay put order as authorizing a student to remain in his or her then-current educational placement during the pending of due process hearing procedures "unless the parties agree otherwise." ECF No. 116-3, p.1. After analyzing Everett's Motion to Stay Put, the District's response, and supplemental briefing, the hearing officer concluded that "as of May 2010, the parties have through mutual agreement altered the placement set out in the September 9, 2009 IEP [Individualized Educational program]." Id. at p.3. That arrangement included "discontin[uing] the specialized academic instruction that Student had previously received . . . " Id. at p. 2. Consequently, the OAH's Stay Put Order, in describing the provisions of the operative September 9, 2009 "as modified by the parties' actions since May 2010," expressly excluded any mention of ongoing SAI services.

8

The Stay Put Order was introduced into evidence and the CDE argued to the jury that it precluded Plaintiffs from arguing any continued entitlement to SAI after May of 2010 and militated against Plaintiffs' assertion that Everett was entitled to 1450 minutes per week of SAI services between August 2010 and March 2, 2012.

In declining to award Everett any compensatory SAI services, the Court can hardly find that the jury's apparent reliance on the Stay Put Order, as advocated by the CDE, was contrary to the only reasonable conclusion the jury could have made as to that Order so as to justify JMOL. In fact, the Court believes that the CDE's interpretation of the Stay Put Order was a reasonable one, particularly since, in evaluating the merits of a JMOL, the Court should construe all evidence in the light most favoring the nonmoving party, here the CDE. Reeves v. Sanderson Plumbing Co., 530 U.S. at 150-51 (2000). Moreover, in assessing the merits of a Complaint ResolutionPprocess ("CRP"),directed to the CDE, the CDE is bound by an OAH Order on the same issue as to the same parties, and the terms of the Stay Put Order so qualify as to Everett's entitlement to SAI services. See 34 C.F.R. § 300.152(c)(2). It must also be noted that the CDE is not responsible for alleged errors made by the OAH in their determinations. M.M. v. Lafayette School Dist., 767 F.3d 842, 860 (9th Cir. 2014), citing M.M. v. Lafayette School Dist., 681 F.3d 1082, 1092 (9th Cir. 2012).

Plaintiffs next argue, also in accord with their prior Rule 50(a) motion, that they are also entitled to JMOL on grounds that Everett was improperly classified as mentally retarded and consequently denied FAPE based on that alleged misclassification alone. As an initial matter, as the CDE points out, the IDEA does not give the student the legal right to a particular disability classification as long as appropriate IEPs are developed. 20 U.S.C. § 1412(a)(3)(B); Weissburg v. Lancaster Unified School Dist., 591 F.3d 1255, 1259 (9th Cir. 2010).

Here, with respect to the CDE's obligation to investigate the question of Everett's disability classification, the jury heard evidence that Plaintiffs knew or should have known about the alleged disability misclassification as early as 2009, when Dr. Mader

performed testing that yielded scores positive for mild medical retardation, particularly since Everett's neurologist, Dr. Asaikar, diagnosed Everett with global developmental delay the year before and diagnosed mental retardation in August of 2008.[4] The jury further heard evidence that Plaintiffs had this information well over a year before their January 6, 2012, CRP on the disability misclassification was tendered to the CDE. The jury also heard evidence that the CDE denied the disability misclassification of CRP as untimely, and the jury was properly instructed that the CDE was barred from investigating complaints related to events occurring more than one year beforehand. See ECF No. 249-2, Instruction No. 17; see also 34 C.F.R. § 300.153(c). Under those circumstances, and given the deference that must be accorded to the jury's decision, Plaintiffs are not entitled to JMOL on the disability misclassification issue either.

Importantly, too, irrespective of whether SAI services were improperly withheld or whether Everett was misclassified as mentally retarded, the jury received evidence that Everett made academic progress during attendance at Dry Creek. The jury further heard evidence that nothing to do with the CDE's handling of Plaintiffs' complaints about either SAI or Everett's disability misclassification denied Everett a FAPE or prevented Dry Creek from providing a FAPE. Because there was sufficient evidence to support the jury's findings in that regard, Plaintiffs' Motion for JMOL must be denied. E.E.O.C., 581 F.3d at 961, Escriba, 743 F.3d at 1242.

In addition to the SAI and disability classification issues enumerated above, which were reiterated in Plaintiffs' Rule 50(b) motion after previously being raised in their initial request under Rule 50(a), Plaintiffs raise a host of other issues for which they assert JMOL is appropriate, including claims for deliberate indifference, reconsideration requests, failure to investigate and take corrective action, and alteration of complaints

///

---

[4] While Plaintiffs raised hearsay objections to admission of the reports of both Dr. Mader and Dr. Asaikar, those objections were properly overruled on grounds that they were relevant to what Plaintiffs knew or should have known for purposes of assessing a statute of limitations defense concerning Everett's alleged misdiagnosis, and not whether the contents of the reports were actually true.

tendered to the CDE.[5]  As indicated above, however, Plaintiffs cannot raise arguments in a renewed motion for JMOL that it did not raise in its initial Rule 50(a) motion, and because the additional arguments enumerated above were not so raised, they need not be considered.  Even were they not so barred, however, the jury received evidence to counter Plaintiffs' assertions.  It received evidence that the CDE properly applied the criteria for identifying a valid special education complaint, that it investigated those complaints that it was legally required to investigate, that in investigating it obtained the necessary information from both parties and prepared both investigative reports and reconsideration reports, and that in two cases it found items of procedural noncompliance and assigned corrective actions with which Dry Creek complied.  As enumerated in the CDE's Opposition, as to all of Plaintiffs' specific additional complaints, evidence was received to counter Plaintiffs' positions.  See CDE's Opp., ECF No. 254, 9:11-11:9.  JMOL is accordingly both procedurally and substantively unwarranted on the additional issues raised by Plaintiffs.

### C. Motion for New Trial

Plaintiffs moved for a new trial as an alternative to JMOL, and with respect to the issues discussed above, the Court cannot say that the verdict reached by the jury was contrary to the clear weight of the evidence, as it must have been in order to justify a new trial under Rule 59(a).  After having presided over the entire trial, and after giving full respect to the jury's findings, this Court is not left with a definite and firm conviction that the jury erred in its decision as required to overturn the verdict based on the clear weight of the evidence.  Landes, 833 F.2d at 1371, 72.  To the contrary, as enumerated above, sufficient evidence supported the jury's determination.

Nor is a new trial indicated on prejudicial error grounds in order to prevent a miscarriage of justice.  Plaintiffs do not allege that they were barred from presenting evidence, and the Court made no findings that the CDE misled or confused the jury.  The

---

[5] Plaintiffs also requested JMOL on a number of affirmative defenses raised by the CDE initially in their Rule 50(a) motion, but those arguments were not renewed, with the possible exception of statute of limitations issues for which, as discussed below, the jury was properly instructed.

Court further finds that no attorney misconduct on the part of the CDE occurred during the course of the trial, let alone misconduct that influenced the jury in any way. As the CDE observed, the fact that the CDE presented a defense that offered the jury a view of the case contrary to that espoused by Plaintiffs does not equate with misconduct. Moreover, and in any event, the jury was properly instructed that arguments and statements of attorneys are not evidence. ECF 249-2, Instruction No. 4.

The Court also rejects any claim that the jury was misled as to the applicable statute of limitations. It was properly instructed that the statute of limitations for the IDEA claims was two years from the date the parent knew or should have known of the alleged action that forms the basis for the complaint (id. at No. 22), and three years for Plaintiffs' Section 504 and ADA claims. Id. at No. 30. In addition, the jury was correctly instructed that a CRP must allege a violation that occurred not more than one year prior to the date the CRP is received. Id. at No. 17. The jury also received instruction on equitable tolling. Id. at Nos. 23-24.

## CONCLUSION

For all the foregoing reasons, Plaintiffs' Motion For Judgment as a Matter of Law, or Alternatively for a New Trial, pursuant to Rules 50(b) and 59 (ECF No. 262), is DENIED. Plaintiffs' request for findings of fact and conclusions of law under Rule 52 is also DENIED.[6]

IT IS SO ORDERED.

Dated: July 30, 2018

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE

---

[6] Having determined that oral argument was not of material assistance, the Court ordered this matter submitted on the briefing in accordance with E.D. Local Rule 230(g).